**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTOPHER LISOWSKI, on behalf of himself and all others similarly situated, | CIVIL ACTION NO. 2:19-cv-1339 |
| Plaintiff, | **COMPLAINT – CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| HENRY THAYER COMPANY, INC. | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Christopher Lisowski brings this action on behalf of himself and all others similarly situated against Defendant Henry Thayer Company. Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      In an attempt to capitalize on consumer demand for health-focused and "natural" personal care products, Defendant sells its "THAYERS® Natural Remedies" brand of products through major retailers around the country as well as its own e-commerce store. However, as Defendant knows, the vast majority of its "natural" products contain synthetic and abrasive chemical ingredients. Thus, the many statements on Defendant's products' labels claiming that

the products are "natural," including the name of the product line – THAYERS® Natural

Remedies – are false, misleading, and designed to deceive consumers into paying a price

premium and choosing THAYERS® Natural Remedies over a competitor's product.

2.      Additionally, Defendant deceptively markets a segment of its products, the dry

mouth sprays, as "Preservative-Free" when the products actually contain multiple preservatives

which could create potentially dangerous outcomes for consumers. Once again, the goal of this

deception is to trick consumers into paying a premium price over a competitor's product.

3.      This action seeks to remedy the deceptive and misleading business practices of

Defendant with respect to its marketing and sales of the following THAYERS® Natural

Remedies products (hereinafter "Products") throughout the Commonwealth of Pennsylvania and

the United States of America:

- THAYERS® Natural Remedies Cucumber Deodorant;

- THAYERS® Natural Remedies Rose Petal Deodorant;

- THAYERS® Natural Remedies Unscented Deodorant;

- THAYERS® Natural Remedies Rose Petal Facial Toner;

- THAYERS® Natural Remedies Rose Petal Facial Mist;

- THAYERS® Natural Remedies Rose Petal Toning Towelettes;

- THAYERS® Natural Remedies Coconut Water Facial Toner;

- THAYERS® Natural Remedies Coconut Water Facial Mist;

- THAYERS® Natural Remedies Lemon Astringent;

- THAYERS® Natural Remedies Lemon Toning Towelettes;

- THAYERS® Natural Remedies Cucumber Facial Toner;

- THAYERS® Natural Remedies Cucumber Facial Mist;

- THAYERS® Natural Remedies Cucumber Toning Towelettes;

- THAYERS® Natural Remedies Original Facial Toner;

- THAYERS® Natural Remedies Medicated Skin Irritation Relief;

- THAYERS® Natural Remedies Medicated Skin Irritation Relief Pads;

- THAYERS® Natural Remedies Unscented Facial Toner;

- THAYERS® Natural Remedies Unscented Facial Mist;

- THAYERS® Natural Remedies Unscented Toning Towelettes;

- THAYERS® Natural Remedies Lavender Facial Toner;

- THAYERS® Natural Remedies Lavender Facial Mist;

- THAYERS® Natural Remedies Original Astringent;

- THAYERS® Natural Remedies Original Astringent Pads;

- THAYERS® Natural Remedies Peppermint Dry Mouth Spray;

- THAYERS® Natural Remedies Citrus Dry Mouth Spray

4.      Defendant's THAYERS® Natural Remedies brand created and continues to maintain a "natural" myth that is displayed prominently on all of its Products' labels as well as throughout its website and social media accounts to promote and advertise the Products as "natural remedies." For example, the History page on the Thayers Natural Remedies website describes the company: "A legacy brand, Thayers **natural elixirs** have been a fixture in medicine cabinets for generations – for 170 years to be exact. Through a long-standing commitment to creating **pure**, effective, cruelty-free products of the **highest natural quality**, we have built a loyal consumer base."  (emphasis added).

5.       Building upon this deception by labeling and advertising the Products as "Natural Remedies," Defendant creates the impression amongst reasonable consumers that the Products

are natural. However, Defendant fails to adequately inform consumers that the Products contain numerous synthetic, unnatural, and dangerous ingredients. Indeed, Defendant only lists the synthetic, unnatural ingredients in the Products on the back of the Product packaging in small, hard-to-read print and, even then, fails to inform consumers that many of the ingredients listed are synthetic and unnatural. Consumers are not experts in the chemical make-up or names of the ingredients disclosed in fine print on the back of the labels and, based on the "natural" representations headlining the Products' labeling, reasonably believe that the Products contain only natural ingredients.

6.      Even if consumers were experts in chemical compounds, they would not be able to discern the synthetic ingredients that exist in Products because for a period of time, Defendant failed to properly disclose all of the synthetic ingredients present in its Products.

7.      Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign focused on claims that appeal to health-conscious consumers, i.e. that its Products are "natural" and "preservative-free."

8.      These representations lead consumers to believe that the Products contain natural ingredients. However, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products contain synthetic ingredients.

9.      Defendant's representations also lead consumers to believe that a segment of the Products, specifically its dry mouth sprays, contain no preservatives. This is simply not true. Defendant's advertising and marketing campaign is false, deceptive, and misleading because its dry mouth spray line of products contains multiple preservatives.

10. Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "Natural Remedies" and "Preservative-Free" when purchasing the Products.

11. These deceptive "Natural" representations appear prominently on the Products' label. For example, on the principal display panel of all of Defendant's Products, "Natural Remedies" is placed prominently at the top in all capital letters, and on the back panel of its witch hazel astringents, Defendant describes the Products as a "natural, gentile skin astringent" which is "derived from a time-honored Native American formula."

12. This deception is not limited to Defendant's labeling and is omnipresent in its marketing efforts, including on its website and social media accounts, which further perpetuate this deceptive "natural" myth.

13. For example, the terms "naturally sourced ingredients," "natural glow," "natural remedy," and "natural healing powers" are used to describe Products throughout Defendant's official website.

14. In addition to these "natural" descriptions on its website, Defendant uses "natural" hashtags, including #natural, #naturalbeauty, #naturalingredients, #naturalremedies, and #naturalskincare, to further evoke this "natural" myth in almost every one of its social media advertisements and postings.

15. Contrary to representations on the Products' labeling and marketing, instead of receiving natural products, consumers receive products with unnatural and/or synthetic ingredients.

16. Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be "Natural Remedies." Given that Plaintiff and

Class Members paid a premium for the Products based on Defendant's misrepresentations that they are "Natural Remedies" Plaintiff and Class Members suffered an injury in the amount of the premium paid.

17.     Plaintiff and Class Members paid a premium for the dry mouth spray products over and above comparable products that did not purport to be "natural" and "preservative-free." Given that Plaintiff and Class Members paid a premium for these products based on Defendant's misrepresentations that they are "natural" and "preservative-free," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

18.     Defendant's conduct violated and continues to violate, *inter alia*, the Unfair Trade Practices and Consumer Protection Law for the Commonwealth of Pennsylvania and the Magnuson-Moss Warranty Act. Defendant breached and continues to breach its express warranties regarding the Products. Defendant has been and continues to be unjustly enriched. Defendant has and continues to negligently and fraudulently misrepresent its Products. Accordingly, Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

19.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.[1] Companies such as the Defendant have capitalized on consumers' desires

---

[1] Julianna M. Butler & Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017). "Thus, one finding is that most people – 87% of our sample – do appear to attribute meaning to "natural" labelling. The vast majority of respondents stated a belief that "natural" signals no artificial flavors, colors and/or preservatives." *Id.*

for purportedly "natural products." Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients. In 2015, sales of natural products grew 9.5% to $180 billion.[2] Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

20.     In April 2016, the Federal Trade Commission ("FTC") settled with four manufacturers and filed a complaint against a fifth company for representing that its products were "natural" when they contained Phenoxyethanol. The manufacturers agreed to cease marketing the products in question as being "natural."[3]

21.     Despite the Products containing a number of synthetic ingredients, including for example the aforementioned Phenoxyethanol, Defendant markets the Products as being "Natural Remedies" and this false statement appears prominently on the front label of all of its Products.

22.     Defendant's representations that the Products are "Natural" are false, misleading, and deceptive because the Products contain multiple ingredients that are, as set forth and described below, synthetic and artificial.

---

[2] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ*, FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6 ; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025).
[3] *Four Companies Agree to Stop Falsely Promoting Their Personal-Care Products as "All Natural" or "100% Natural"; Fifth is Charged in Commission Complaint*, (April 2016), https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care (last visited Oct. 17, 2019).

a.  **Phenoxyethanol** is a synthetic substance associated with depressing the central nervous system, vomiting, and diarrhea.[4]

b.  **Potassium Sorbate** is a synthetic preservative.[5] It is created by using potassium hydroxide (KOH) to neutralize sorbic acid (C6H802). The resulting potassium sorbate may be crystallized from aqueous ethanol. Studies have shown Potassium Sorbate to have genotoxic effects on humans and other mammals.[6] It causes chromosomal aberrations in cells, which can trigger the development of cancer.[7]

c.  **Polysorbate-20** is a synthetic emulsifier and/or surface-active agent.[8]

d.  **Sodium Benzoate** is a synthetic preservative.[9] Sodium Benzoate is produced by the neutralization of benzoic acid with sodium hydroxide, or by adding benzoic acid to a hot concentrated solution of sodium carbonate until effervescence ceases. The solution is then evaporated, cooled and allowed to crystalize or evaporate to dryness, and then granulated. It does not occur naturally.[10] Sodium

---

[4] 21 C.F.R. §172.515 *and FDA Consumer Update: Contaminated Nipple Cream*, (May 2008), https://web.archive.org/web/20140712202507/https://www.fda.gov/ForConsumers/ConsumerUpdates/ucm049301.htm (last visited Oct. 17, 2019).
[5] U.S. Dept. of Agriculture, CFNP TAP Review, *Potassium Sorbate*, https://www.ams.usda.gov/sites/default/files/media/P%20Sor%20technical%20advisory%20panel%20report.pdf and *see* FDA Warning Letter to Bagels Forever (dated 7/22/2011) (available at: http://wayback.archive-it.org/7993/20170112193358/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm265756.htm): "Your product is manufactured with infused wild dry blueberries that contain potassium sorbate, which is listed in 21 CFR 182.3640 as a chemical preservative; therefore, your product may not make the claims 'All Natural' and 'No Preservatives.'"
[6] Sevcan Mamur et al., Does Potassium Sorbate Induce Genotoxic or Mutagenic Effects in Lymphocytes?, TOXICOLOGY IN VITRO 790, 793 (2010).
[7] *Id.*
[8] *See* 21 C.F.R. § 172.515 and 21 C.F.R. § 178.3400.
[9] 21 C.F.R. § 582.3733.
[10] 21 C.F.R. § 184.1733.

Benzoate has been shown to cause DNA damage and chromosomal aberrations.[11]

When Sodium Benzoate combines with either Ascorbic Acid or Citric Acid (an

ingredient common in many cosmetic and food products), the two substances can

react to produce benzene, which is a highly toxic carcinogen that causes

leukemia.[12]

23.     Moreover, Defendant's website deceptively describes its Unscented Facial Toner

product as "safe for babies and children"[13] and "recommended for babies and children"[14] despite

the fact that this product contains a synthetic ingredient, Phenoxyethanol. This synthetic

chemical concerned the FDA, and the agency warned consumers against using on nursing infants

because it "can depress the central nervous system" and "may cause vomiting and diarrhea,

which can lead to dehydration in infants."[15] Concern for the use of this synthetic ingredient is not

---

[11] N. Zengin et al., The Evaluation of the Genotoxicity of Two Food Preservatives: Sodium Benzoate and Potassium Benzoate, FOOD AND CHEMICAL TOXICOLOGY 763, 764-68 (2011).

[12] U.S. Food and Drug Administration, *Questions and Answers on the Occurrence of Benzene in Soft Drinks and Other Beverages*, (2018), https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q4  (last visited Oct. 17, 2019). *See Gonzalez v. Pepsico, Inc*., 489 F. Supp. 2d 1233, 1238 (D. Kan. 2007): "[P]roducts from defendants which contained sodium benzoate and ascorbic acid, citric acid or erythoribic acid. The Food and Drug Administration ("FDA") has reported that these ingredients may interact to form benzene, a hazardous substance which the Environmental Protection Agency ("EPA") knows to potentially cause anemia, nervous systems disorders and immunosuppression in persons who are exposed..." *and* Robert Snyder, *Leukemia and Benzene*, International Journal of Environmental Research and Public Health vol. 9,8 (2012): 2875-93 *and* Lakshmi Narayanan Venu & Anoop Austin, *Study and Quantification of Preservative (E211) In Carbonated Soft Drink Samples*, International Organization of Scientific Research Journal of Applied Chemistry vol. 12,4 (2019): 17-23 ("Sodium benzoate reacts with citric acid or ascorbic acid to form benzene.").

[13] THAYERS® Natural Remedies, FAQ, https://www.thayers.com/faq/ (last visited Oct. 17, 2019).

[14] *Id.*

[15] U.S. Food and Drug Administration, For Consumers, *Contaminated Nipple Cream*, https://web.archive.org/web/20140712202507/https://www.fda.gov/ForConsumers/ConsumerUpdates/ucm049301.htm (last visited Oct. 17, 2019).

restricted to the United States, and after concerns were raised by the European Commission's

Scientific Committee on Consumer Safety, France prohibited the labeling and marketing of

products containing Phenoxyethanol for use on children that are three years old and younger.[16]

24.     Further, Defendant actively promotes its Products directly to pregnant women:[17]



25.     Defendant's representations that the dry mouth spray products are "Preservative-

Free" are false, misleading, and deceptive because the dry mouth spray products contain multiple

ingredients that are, as set forth and described below, preservatives.

     a.  Potassium Sorbate is a preservative.[18]

     b.  Sodium Benzoate is a preservative.[19]

---

[16] Agence Nationale de Sécurité du Médicament et des Produits de Santé, Decision of 13 Mars 2019, *available at*
https://www.ansm.sante.fr/content/download/158253/2075101/version/1/file/DPS_Phenoxyethanol-200319.pdf.

[17] Names redacted for privacy.

[18] 21 C.F.R. § 182.3640.

26.     While a preservative on its own may not be inherently dangerous, when present in certain combinations, it "can form extremely unhealthy, dangerous chemicals." For example, "Benzene is obtained through the reaction of sodium benzoate with citric acid and/or ascorbic acid."[20]

27.     Defendant's dry mouth spray products contain both Sodium Benzoate and Citric Acid. Therefore, the ingredients present in these products can produce Benzene in their combined state.[21]

28.     Additionally, Defendant's dry mouth lozenge products contain Ascorbic Acid. Therefore, a consumer buying two of Defendants' products that are commonly used in concert, a dry mouth spray product and a dry mouth lozenge product, would create an additional combination of Sodium Benzoate and Ascorbic Acid which can produce Benzene.[22] Exposure to Benzene is a proven cause of leukemia.[23]

29.     Other ingredients in the Products may also be not natural as well. Plaintiff's investigation is ongoing and will seek to amend the Complaint to specify other potential unnatural ingredients in the future.

30.     Whether Defendant's labeling of the Products as "Natural" is deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agency guidance.

---

[19] 21 C.F.R. § 582.3733.
[20] Venu & Austin, *supra* note 12.
[21] *Id.*
[22] *supra* note 12.
[23] Snyder, *supra* note 12.

31.     In 2013, the United States Department of Agriculture ("USDA") issued a Draft

Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural).

In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is

manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or

biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a

substance is transformed into one or more other distinct substances) so that it is chemically or

structurally different than how it naturally occurs in the source material; or (c) the chemical

change was created by a naturally occurring biological process such as composting,

fermentation, or enzymatic digestion or by heating or burning biological matter.[24]

32.     Surveys and other market research, including expert testimony Plaintiff intends to

introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer

because the reasonable consumer believes that the term "natural," when used to describe goods

such as the Products, means that the goods are free of synthetic ingredients. By way of example,

according to a consumer survey, "[e]ighty-six percent of consumers expect a 'natural' label to

mean processed foods do not contain any artificial ingredients."[25]

33.     A reasonable consumer's understanding of the term "Natural" comports with that

of federal regulators and common meaning. That is, the reasonable consumer understands the

---

[24] U.S. Department of Agriculture, Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic, March 26, 2013, available at
https://web.archive.org/web/20140818174458/http://www.ams.usda.gov/AMSv1.0/getfile?dDoc
Name=STELPRDC5103308.

[25] Urvashi Rangan, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 C.F.R. Part 260, Notice of the Federal Trade Commission (2010), available at https://www.ftc.gov/sites/default/files/documents/public_comments/guides-use-environmental-marketing-claims-project-no.p954501-00289%C2%A0/00289-57072.pdf
(also accessible as Comment 58 at http://www.ftc.gov/policy/publiccomments/initiative-353).

representation that a product is "Natural" to mean that it does not contain any synthetic or artificial ingredients.[26]

34.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

35.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer. That is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

36.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent front-of-the-product claims, representations, and warranties that the Products are "Natural Remedies."

37.     Defendant did not disclose that the above listed ingredients are synthetic ingredients anywhere on the product. A reasonable consumer understands Defendant's "Natural Remedies" claims to mean that the Products are "Natural" and do not contain synthetic ingredients.

38.     Plaintiff and members of the classes described below paid a premium for Defendant's Products over comparable products that did not purport to be natural products.

---

[26] Julianna M. Butler & Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017). "The vast majority of respondents stated a belief that "natural" signals no artificial flavors, colors and/or preservatives." *Id.*

Contrary to representations on the Products' labeling and Defendant's marketing thereof, instead of receiving natural products, consumers receive products with unnatural and/or synthetic ingredients.

39.     Defendant has thus violated, *inter alia*, Pennsylvania's Unfair Trade Practices and Consumer Protection Law by falsely representing to Plaintiff that the Products are "natural remedies," "preservative free," "safe for babies and children," and "natural," when in fact they are made with synthetic ingredients or include preservatives.

40.     Consumers rely on label representations and information in making purchasing decisions.

41.     The marketing of the Products as "Natural Remedies" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendant's awareness that "Natural" claims are material to consumers.

42.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

43.     Plaintiff and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

44.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiff and the Class Members.

45.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled "Natural Remedies" over comparable products not so labeled.

46.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured the Plaintiff and the Class Members in that they:

   a.   Paid a sum of money for Products that were not what Defendant represented;

   b.   Paid a premium price for Products that were not what Defendant represented;

   c.   Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

   d.   Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

47.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

48.     Plaintiff and the Class Members paid for Products that were "Natural Remedies" but received Products that were not "Natural Remedies." The products Plaintiff and the Class Members received were worth less than the products for which they paid.

49.     Plaintiff and the Class Members paid for dry mouth products that were "Natural" and "Preservative-Free" but received products that were not "Natural" and "Preservative-Free." The products Plaintiff and the Class Members received were worth less than the products for which they paid.

50.     Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a "Natural Remedies" label.

51.     Additionally, based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the dry mouth spray products over the cost of competitive products not marketed as "Preservative-Free."

52.     Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

53.     This Court has personal jurisdiction over Defendant. Defendant purposefully avails itself of the Pennsylvania consumer market and distributes the Products to many locations within this County and hundreds of retail locations throughout the Commonwealth of Pennsylvania, where the Products are purchased by thousands of consumers every day.

54.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

55.     Venue is proper in this District under 28 U.S.C. § 1391(a). Plaintiff's purchases of Defendant's Products, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District and the Defendant conducts business in this District.

## PARTIES

56.     Plaintiff is a citizen of Pennsylvania, residing in Allegheny County. Within the past six years, he made several purchases of Defendant's Products from various physical retail stores in Pennsylvania and from e-commerce stores that shipped products to his residence in Pennsylvania. Prior to purchasing THAYERS® Natural Remedies Products, Plaintiff saw and read the front of the product packaging, and relied on the representation and warranty that the product would be a "natural remedy" and "natural." Prior to purchasing, Plaintiff also saw, read and relied on the representation and warranty that the product was "natural," a "natural remedy," "safe for babies and children," a "natural, gentile skin astringent," created a "natural glow," offered "natural healing powers," and consisted of "naturally sourced ingredients" and "naturally occurring ingredients." Plaintiff understood these representations to mean that THAYERS® Natural Remedies Products did not contain synthetic chemicals. In addition, Plaintiff had viewed representations on the www.thayers.com website and Defendant's respective social media accounts, prior to making purchase of Products, including, but not limited to "natural," "safe for babies and children," "natural beauty," "natural skincare," "natural remedy," "natural glow," "natural healing powers," "naturally sourced," "naturally occurring," "preservative-free," and "natural, gentile skin astringent" which Plaintiff understood to mean that the Products did not contain synthetic chemicals and preservatives. Plaintiff purchased THAYERS® Natural Remedies Products at a substantial price premium, most recently in October 2019, and would not

have purchased the products had he known that the labeling and marketing he relied on was false, misleading, deceptive and unfair. Plaintiff would purchase the Products again in the future if Defendant changed the composition of the Products so that they conformed to their "natural" and "preservative-free" labeling and marketing.

57.     Defendant Henry Thayer Company, Inc. is a Delaware corporation with its principal place of business in Easton, Connecticut.

     a.     Defendant produces, markets and distributes various consumer skin care products in retail stores across the United States including stores physically located in the Commonwealth of Pennsylvania and this district as well as e-commerce stores that ship to consumers in this district. Defendant knew that the labeling and marketing of the Products is false and misleading to a reasonable consumer, because the Products contain Phenoxyethanol, Potassium Sorbate, Polysorbate 20, and Sodium Benzoate and other synthetic ingredients and preservatives, which are inconsistent with the Product's labeling and other marketing.

58.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

59.     Whenever reference is made in this Complaint to any representation, act, omission, or transaction of a defendant, that allegation shall mean that the defendant did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## FACTS COMMON TO ALL CAUSES OF ACTION

60.     Consumers have become increasingly concerned about the effects of synthetics and chemical ingredients in cosmetic products. As a result, consumers are willing to pay, and have paid, a premium for products labeled "natural" over ordinary products that contain synthetic ingredients.

61.     The FTC has warned marketers that the use of the term "natural" may be deceptive: Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.[27]

62.     Likewise, the Food and Drug Administration ("FDA") warns that any "natural" labeling on cosmetic products must be "truthful and not misleading."[28]

63.     The THAYERS® Natural Remedies brand is manufactured and marketed by Defendant and sold in drug, grocery, and other retail stores nationwide. On its Facebook Page, Defendant underscores the fact that its success comes from "[a] longstanding commitment to making effective, **natural remedies with high-quality ingredients**…" (emphasis added).

64.     THAYERS® Natural Remedies brand products that are the subject of this lawsuit include all Products listed in Paragraph 3.

65.     The front label of every one of the THAYERS® Products state prominently in lettering the words "Natural Remedies."

---

[27] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).
[28] U.S. Food and Drug Administration, Small Business & Homemade Cosmetics: Fact Sheet, available at http://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm#7.

66. The front label of every THAYERS® Natural Remedies Mouth Spray Products state prominently in lettering the words "Natural Remedies." On the THAYERS® Official Website, and throughout other retailers on the Internet, it is additionally marketed as "preservative-free."

67. THAYERS® Products have been labeled "Natural Remedies" at all times during the last six years at a minimum.[29]

68. For example, the following image shows that the representation "Natural Remedies" is prominently made on the front of the THAYERS® Natural Remedies Unscented Facial Mist:[30]



---

[29] Archive of Defendant's Official Website Store from January 12, 2012 *available at* https://web.archive.org/web/20120112034652/http://www.thayers.com/store/index.php?main_page=product_info&cPath=3&products_id=25.

[30] Emphasis added.

69.     Based on the language that appears on the front of each product, Plaintiff reasonably believed that Products contained only natural ingredients.

70.     The phrase "Natural Remedies" is a representation to a reasonable consumer that THAYERS® brand Products contain only natural ingredients. The phrase is misleading to a reasonable consumer because THAYERS® brand Products actually contain synthetic ingredients.

71.     While now presently listed on the Ingredients Declaration section on the product, certain synthetic ingredients, including Phenoxyethanol, were deceptively omitted from this section for many years in the Class Period which deceived customers into purchasing Products:[31]



---

[31] Emphasis added.

72.      Based on the language that appears on Defendant's official website and distributed throughout the internet by Defendant, Plaintiff believed that THAYERS® Natural Remedies dry mouth spray products were natural and free of any preservatives.

73.      THAYERS® dry mouth spray products have been marketed as "Preservative-Free" at all times during the last six years at a minimum.[32]

74.      The following image displays an example of Defendant's deceptive "Preservative Free" marketing:[33]



75.      Online retailers that sell and market the THAYERS® Natural Remedies products also use nearly identical representations emphasizing the purported "Natural" and "Preservative-Free" qualities of the Products. For example, the in the "Product Description" section, under the

---

[32] Archive of Defendant's Official Website Store from August 19, 2011 *available at* https://web.archive.org/web/20110819185140/http://www.thayers.com/store/index.php?main_page=product_info&cPath=2&products_id=23.

[33] Emphasis added.

heading "From the manufacturer," for THAYERS® Natural Remedies Peppermint Dry Mouth

Spray on amazon.com states "Thayers Sugar-Free Citrus Dry Mouth Lozenges stimulates saliva

production. Sugar-Free, Sodium-Free, Gluten-Free, Fat-Free, Lactose-Free, All-Vegetable,

**Preservative-Free**, Fluoride-Free.\*.". (emphasis added). Moreover, on this same listing, the first

bullet point highlighting the product's features prominently states "Preservative-Free."

76.     Defendant knew that consumers will pay more for a product marketed as

"Natural" and "Preservative-Free," and intended to deceive Plaintiff and putative Class Members

by labeling and marketing THAYERS® Natural Remedies brand Products as purportedly natural

and preservative-free products.

## CLASS DEFINITIONS AND ALLEGATIONS

77.     Plaintiff, pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3),

brings this action on behalf of the following classes:

      a.  Pennsylvania Class: All persons who purchased Defendant's Products within the

           Commonwealth of Pennsylvania and within the applicable statute of limitations

           period.

      b.  Nationwide Class: All persons who purchased Defendant's Products within the

           United States and within the applicable statute of limitations period (collectively,

           the "Classes" and "Class Members").

78.     Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates,

officers, and directors, those who purchased the Products for resale, all persons who make a

timely election to be excluded from the Classes, the judge to whom the case is assigned and any

immediate family members thereof, and those who assert claims for personal injury.

79.    The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, tens of thousands of units of the Products to Class Members.

80.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

a.    whether Defendant misrepresented material facts concerning the Products on the label of every product;

b.    whether Defendant misrepresented material facts concerning the Products in print and digital marketing of every product;

c.    whether Defendant's conduct was unfair and/or deceptive;

d.    whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiff and the classes;

e.    whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

f.    whether Defendant breached express warranties to Plaintiff and the classes;

g.    whether Plaintiff and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

81.    Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the classes, purchased Defendant's Products bearing the natural and

preservative-free representations and Plaintiff sustained damages from Defendant's wrongful conduct.

82.     Plaintiff will fairly and adequately protect the interests of the classes and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the classes.

83.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

84.     The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

85.     The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas

another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

## COUNT I
### Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-2 and 201-3, *et seq.*

86.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

87.    Plaintiff brings this Count individually and on behalf of the members of the Pennsylvania Class.

88.    Defendant is a "person," as meant by 73 Pa. Cons. Stat. § 201-2(2).

89.    Plaintiff and Pennsylvania Class Members purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

90.    Defendant engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. § 201-3, including the following: representing that its goods and services have characteristics, uses, benefits, and qualities they do not have (73 Pa. Cons. Stat. § 201-2(4)(v)); representing that its goods and services are of a particular standard or quality if they are another (73 Pa. Cons. Stat. § 201-2(v)(vii)); and advertising its goods and services with intent not to sell them as advertised (73 Pa. Cons. Stat. § 201-2(4)(ix)); and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (73 Pa. Cons. Stat. § 201-2(v)(xxi)).

91.     As alleged more fully above, Defendant has violated the Unfair Trade Practices and Consumer Protection Law by falsely representing to Plaintiff and the other members of the Pennsylvania Class that the Products are "natural," "natural remedies," safe for babies and children," "Preservative-Free," "natural, gentile skin astringent," create a "natural glow," offer "natural healing powers,"  and consist of "naturally sourced ingredients" and "naturally occurring ingredients" when in fact they are made with synthetic ingredients and contain preservatives.

92.     For a period of time in the statutory period, Defendant failed to disclose the presence of certain synthetic ingredients on the Ingredients Declaration section of Products' labels which further deceived consumers into purchasing Products.

93.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

94.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and the Pennsylvania Class have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

95.     Plaintiff and other members of the Pennsylvania Class lost money or property as a result of Defendant's violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products were made with preservatives and unnatural and synthetic ingredients (b) they paid a substantial price premium compared to other skin care and hygiene products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

96.     Plaintiff and the Pennsylvania Class seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief this Court deems necessary or proper.

## COUNT II
### Violation of The Magnuson-Moss Warranty Act,
### 15 U.S.C. 2301 *et seq.*

97.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

98.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against the Defendant.

99.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. 2301 *et seq.*

100.     The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. 2301(1).

101.     Plaintiff and other Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. 2301(3).

102.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. 2301(4) & 2301(5).

103.     Defendant represented in writing that the Products are "Natural Remedies."

104.    Defendant represented in writing that the THAYERS® Natural Remedies Peppermint Dry Mouth Spray and THAYERS® Natural Remedies Citrus Dry Mouth Spray are "Preservative-Free."

105.    These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. 2301(6)(A).

106.    As alleged herein, Defendant breached the written warranty by selling consumers Products that are not "Natural Remedies" because they contain synthetic ingredients.

107.    As alleged herein, Defendant breached the written warranty by selling consumers dry mouth spray products that are not "Preservative-Free" because they contain preservatives.

108.    Defendant was provided notice of these issues by numerous public complaints and inquiries concerning its use of synthetic and preservative ingredients in its products.

109.    Defendant has had a reasonable opportunity to cure its breach of written warranties and any additional opportunity to cure would be unnecessary and futile.

110.    The Products do not conform to the Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. 2301 *et seq*. Consequently, Plaintiff and the other Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III
## Breach of Express Warranty

111.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

112.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against the Defendant.

113.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted and represented that the Products are "natural," "natural remedies," "safe for babies and children," "Preservative-Free," "natural, gentile skin astringent," create a "natural glow," offer "natural healing powers," and consist of "naturally sourced ingredients" and "naturally occurring ingredients."

114.     Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are natural.

115.     Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the THAYERS® Natural Remedies Peppermint Dry Mouth Spray and THAYERS® Natural Remedies Citrus Dry Mouth Spray are free of preservatives.

116.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

117.     Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and Class Members regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Classes, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

118.     The Products do not conform to the express warranty because they contain ingredients that are unnatural and synthetic.

119.    Additionally, the THAYERS® Natural Remedies Citrus Dry Mouth Spray and THAYERS® Natural Remedies Peppermint Dry Mouth Spray Products do not conform to the express warranty because they contain ingredients that are preservatives and ingredients that are unnatural and synthetic.

120.    Defendant was provided notice of these issues by numerous public complaints and inquiries concerning its use of synthetic and preservative ingredients in its products.

121.    Defendant has had a reasonable opportunity to cure its breach of written warranties and any additional opportunity to cure would be unnecessary and futile.

122.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Classes have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural ingredients; (b) they paid a substantial price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised.

## COUNT IV
### Unjust Enrichment

123.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

124.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against the Defendant.

125.    At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiffs and the Classes.

126.    Plaintiff and members of the Classes conferred upon Defendant nongratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising

and marketing. Defendant accepted or retained the nongratuitous benefits conferred by Plaintiff and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

127.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts had been known.

128.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for their unjust enrichment, as ordered by the Court.

**COUNT V**
**Negligent Misrepresentation**

129.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

130.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against the Defendant.

131.    As discussed above, Defendant misrepresented that the Products were natural and preservative-free. In light of these misrepresentations, Defendant had a duty to disclose that many ingredients in its Products were not, in fact, natural and preservative free.

132.     For a period of time in the statutory period, Defendant failed to disclose the presence of certain synthetic ingredients on the Ingredients Declaration section of Products' labels.

133.     At the time Defendant made these representations and omissions, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

134.     At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about Products.

135.     The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and members of the Classes to purchase Products.

136.     Plaintiff and Class Members would not have purchased Products if the true facts had been known.

137.     The negligent actions of Defendant caused damage to Plaintiff and members of the Classes, who are entitled to damages and other legal and equitable relief as a result.

### COUNT VI
### Fraud

138.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

139.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

140.     As discussed above, Defendant provided Plaintiff and Class Members with false or misleading material information and failed to disclose material facts about THAYERS®

Natural Remedies, including but not limited to the fact that Products include ingredients that are not natural and include preservatives. These misrepresentations and omissions were made with knowledge of their falsehood.

141. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

    a.  WHO: Henry Thayer Company made material misrepresentations and/or omissions of fact in selling personal care products marketed and/or labeled as "natural" or "preservative-free."

    b.  WHAT: Defendant made material misrepresentations and/or omissions of fact by:

        i.  Specifically labeling and packaging its Products as if they were "Natural Remedies" when the Products are not natural because they contain synthetic ingredients.

        ii.  Marketing Products as "natural" on its official website, official social media accounts, advertisements, and other forms of marketing.

        iii.  Failing to disclose all synthetic ingredients in the Ingredient Disclosure section of Products' labeling in an attempt to further disguise Products' unnatural composition.

        iv.  Marketing its dry mouth spray products as "preservative-free" when these products contained multiple preservatives.

v.  Marketing its Products as "safe for babies and children" directly to pregnant and nursing mothers despite health concerns, from both United States regulatory bodies and international regulatory bodies, about Products' ingredients being used by pregnant and nursing mothers.

c.  WHEN: Defendant made material misrepresentations and/or omissions detailed herein continuously throughout the Class Period.

d.  WHERE: Defendant's material misrepresentations and/or omissions were made on the labeling and packaging of its Products as well as product descriptions posted on Defendant's website and in Defendant's other forms of marketing Products.

e.  HOW: Defendant made written misrepresentations and/or failed to disclose material facts regarding the true quality and ingredients of the Products on the labeling and packaging of the Products as well as product descriptions posted on Defendant's website and distributed throughout other marketing channels.

f.  WHY: Defendant engaged in the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and/or pay for the Products. Defendant profited by selling the Products to thousands of consumers.

142.    The misrepresentations and omissions made by Defendant, upon which Plaintiff and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and members of the Classes to purchase Products.

143.    Plaintiff and Class Members were unaware that Defendant's statements, descriptions, marketing, and warranties concerning Products were false at the time of purchase.

144.    Personal care products that are not "natural" and "preservative-free" are believed to lack the superior quality and health-focus of true natural and preservative-free products. Defendant knew or should have known this information is material to the reasonable consumer and impacts the purchasing decision. Defendant attempts to confuse consumers by stating that its Products are "natural," when it knows they are not "natural." Defendant deceives consumers into purchasing its dry mouth spray products by stating that they are "preservative-free" when these items consist of multiple preservatives.

145.    All of these misrepresentations and omissions were made with Defendant's knowledge that they were false.

146.    The fraudulent actions of Defendant caused damage to Plaintiff and members of the Classes, who are entitled to damages and other legal and equitable relief as a result.

## RELIEF DEMANDED

147.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the members of the Classes;

b.    For an order declaring the Defendant's conduct violates the statutes and laws referenced herein;

c.    For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Classes for all causes of action;

d.  For an order requiring Defendant to immediately cease and desist from selling their misbranded Products in violation of law; enjoining Defendant from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

e.  For prejudgment and postjudgment interest on all amounts awarded;

f.  For an order awarding punitive damages; and

g.  For an order awarding attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: October 17, 2019

Respectfully submitted,

/s/ Steffan T. Keeton
Steffan T. Keeton, Esq.
(*pro hac vice* forthcoming)
stkeeton@keetonfirm.com
Pa. Id. No. 314635

**The Keeton Firm LLC**
100 S Commons, Ste. 102
Pittsburgh, PA 15212
1-888-412-5291

*Attorney for Plaintiff and the Class*