**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHRISTOPHER LISOWSKI and ROBERT
GARNER, individually and on behalf of all
others similarly situated,

ELECTRONICALLY FILED

CIVIL ACTION NO. 2:19-cv-1339-MJH

Plaintiffs,                                    .

v.

HENRY THAYER COMPANY, INC.

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HENRY THAYER
COMPANY, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF THE AMENDED COMPLAINT ............................................ 3

III.    LEGAL STANDARDS ...................................................................................... 4

        A.    12(b)(1)—Lack of Subject-Matter Jurisdiction. .................................... 4

        B.    12(b)(2)—Lack of Personal Jurisdiction. .............................................. 5

        C.    12(b)(6)—Failure to State a Claim. ....................................................... 5

IV.     ARGUMENT ..................................................................................................... 6

        A.    All Of Garner's Claims Must Be Dismissed Due to Lack of Personal
              Jurisdiction. ........................................................................................... 6

              1.    No General Jurisdiction Exists Over Thayer in Pennsylvania. ................ 6

              2.    No Specific Jurisdiction Exists Over Thayer as to Garner's Claims. ....... 7

        B.    Plaintiffs Lack Standing to Seek Injunctive Relief. ............................... 9

        C.    Plaintiffs' Warranty Claims Are Deficient For Multiple Reasons ...................... 10

              1.    A Trade Name Does Not Create An Express Warranty. ......................... 10

              2.    Even If An Express Warranty Existed, Plaintiffs' Claim Fails For
                    Lack Of Pre-Suit Notice ......................................................................... 11

        D.    Plaintiffs Fail to State a Claim for Relief Under the MMWA. ........................... 14

              1.    The Supposed "Warranties" Are Not "Written Warranties" Under
                    the MMWA. ........................................................................................... 14

              2.    Even if Thayer's Alleged Statements Are "Written Warranties,"
                    The MMWA Claims Must Be Dismissed with Plaintiffs' Express
                    Warranty Claim ...................................................................................... 16

        E.    Plaintiffs Have Not Alleged A Claim For Fraud Or Violation Of The
              UTPCPL Or MCPA. ............................................................................. 16

              1.    Plaintiffs have not alleged facts demonstrating that certain alleged
                    statements were false or misleading and further have failed to
                    plead justifiable reliance. ....................................................................... 17

              2.    Plaintiff fails to allege an actionable loss. ............................................. 20

        F.    The Economic Loss And Gist-Of-The-Action Doctrines Bar Plaintiffs'
              Misrepresentation Claims. .................................................................... 21

        G.    Plaintiff Lisowski's Unjust Enrichment Claim Is Not An Independent
              Cause of Action ..................................................................................... 25

V.      CONCLUSION ................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of State Cty. & Mun. Emps. v. Ortho-McNeil-Janssen Pharm., Inc.*
(*AFSCME*),
No. 08-cv-5904, 2010 WL 891150 (E.D. Pa. March 11, 2010)............................12

*Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, Inc.*,
648 F. Supp. 2d 707 (E.D. Pa. 2009) ...................................................22

*Arrington v. Colortyme, Inc.*,
972 F. Supp. 2d 733 (W.D. Pa. 2013).....................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................5

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,
No. 07-MD-1871, 2011 WL 4007908 (E.D. Pa. Sept. 7, 2011) .............................25

*Baney Corp. v. Agilysys NV, LLC*,
773 F. Supp. 2d 593 (D. Md. 2011) .....................................................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................5

*Bezmenova v. Ocwen Fin. Corp.*,
No. 8:13-CV-00003-AW, 2013 WL 3863948 (D. Md. July 23, 2013) ...................19

*Bhamhani v. Innovative Health Sols., Inc.*,
No. 19-0355, 2020 WL 673180 (D. Md. Feb. 11, 2020).....................................23

*Boyd v. TTI Floorcare N. Am.*,
230 F. Supp. 3d 1266 (N.D. Ala. 2011), *aff'd sub nom. Green v. Bissell
Homecare Inc.*, 476 F. App'x 238 (11th Cir. 2012) ..................................10, 11

*Brazil v. Dole Food Co.*,
935 F. Supp. 2d 947 (N.D. Cal. 2013) .................................................15

*Bristol-Myers Squibb Co. v. Superior Court of California*,
137 S. Ct. 1773 (2017)..............................................................7, 8, 9

*Brown v. Buschman Co.*,
No. CIV. A. 99-108(GMS), 2002 WL 389139 (D. Del. Mar. 12, 2002) ................17

*Bruno v. Erie Ins. Co.*,
106 A.3d 48 (Pa. 2014).............................................................23, 24

*Carteret Sav. Bank, FA v. Shushan*,
    954 F.2d 141 (3d Cir. 1992)........................................................................6

*Cash & Carry Am., Inc. v. Roof Sols., Inc.*,
    117 A.3d 52 (Md. 2015) ........................................................................21, 24

*Chin v. Gen. Mills, Inc.*,
    No. 12-2150, 2013 WL 2420455 (D. Minn. June 3, 2013)........................15

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)........................................................................................9

*Cooper v. Samsung Elecs. Am., Inc.*,
    374 F. App'x 250 (3d Cir. 2010) ...............................................................16

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)....................................................................................6, 7

*Daniyan v. Viridian Energy LLC*,
    No. 14-2715, 2015 WL 4031752 (D. Md. June 30, 2015)..........................19

*Doll v. Ford Motor Co.*,
    814 F. Supp. 2d 526 (D. Md. 2011) ...........................................................14

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)........................................................................18

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007)........................................................................6

*In re Frito-Lay N. Am. All Nat. Litig.*,
    No. 12-MD-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)..............15, 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)....................................................................................6, 7

*Goss v. Bank of Am., N.A.*,
    917 F. Supp. 2d 445 (D. Md.), *aff'd*, 546 F. App'x 165 (4th Cir. 2013) ................16

*Green v. Wells Fargo Bank, N.A.*,
    927 F. Supp. 2d 244 (D. Md. 2013), *aff'd*, 582 F. App'x 246 (4th Cir. 2014) ........19

*Green v. Wells Fargo Bank, N.A.*,
    No. 12-1040, 2014 WL 360087 (D. Md. Jan. 31, 2014), *aff'd*, 582 F. App'x
    246 (4th Cir. 2014)........................................................................6, 17

*Haggart v. Endogastric Sols., Inc.*,
    No. 10-0346, 2011 WL 466684 (W.D. Pa. Feb. 4, 2011)..............................17

*Hanreck v. Winnebago Indus., Inc.*,
--F. Supp. 3d --, No. 16-1163, 2019 WL 1383509 (M.D. Pa. Mar. 27, 2019)........................16

*Hertzog v. WEBTV Networks, Inc.*,
No. 48552-1-I, 2002 WL 1609032 (Wash. App. July 22, 2002) ..............................................11

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab.
Litig.*,
903 F.3d 278 (3d Cir. 2018)..............................................................................................9, 10

*Johnson v. Draeger Safety Diagnostics, Inc.*,
594 F. App'x 760 (3d Cir. 2014) .........................................................................................17

*Kee v. Zimmer, Inc.*,
871 F. Supp. 2d 405 (E.D. Pa. 2012) ...................................................................................19

*Larsen v. Trader Joe's Co.*,
No. 11–5188, 2012 WL 5458396 (N.D. Cal. June 14, 2012) .................................................15

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
800 F.3d 99 (3d Cir. 2015)....................................................................................................4

*Littlehale v. Hain Celestial Grp., Inc.*,
No. C 11-6342, 2012 WL 5458400 (N.D. Cal. July 2, 2012)..................................................15

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..............................................................................................................9

*Lum v. Bank of Am.*,
361 F.3d 217 (3d Cir. 2004).................................................................................................13

*Lynx, Inc. v. Ordnance Prod., Inc.*,
327 A.2d 502 (Md. 1974) ...............................................................................................12, 13

*Mazur v. Milo's Kitchen, LLC*,
No. 12-1011, 2013 WL 3245203 (W.D. Pa. June 25, 2013) ..................................................25

*McKinnis v. Kellogg USA*,
No. CV07–2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)............................................11

*Mielo v. Steak 'n Shake Operations, Inc.*,
897 F.3d 467 (3d Cir. 2018)...................................................................................................9

*Militello v. Allstate Prop. & Cas. Ins. Co.*,
No. 14-CV-00240, 2014 WL 2892386 (M.D. Pa. June 26, 2014)...........................................19

*Miller Yacht Sales, Inc. v. Smith*,
384 F.3d 93 (3d Cir. 2004)....................................................................................................5

*U.S., ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC,*
 812 F.3d 294 (3d Cir. 2016)................................................................................6

*Morris v. Osmose Wood Preserving,*
 667 A.2d 624 (D. Md. 1995)...............................................................................22

*Mortensen v. First Fed. Sav. & Loan Ass'n,*
 549 F.2d 884 (3d Cir. 1977).................................................................................5

*Neri v. State Farm Fire & Cas. Co.,*
 No. CV 19-0355, 2019 WL 3821538 (E.D. Pa. Aug. 13, 2019)........................21

*Novae Corp. Underwriting Ltd. v. Atl. Mut. Ins. Co.,*
 556 F. Supp. 2d 489 (E.D. Pa. 2008) ...........................................................13, 18

*Patterson by Patterson v. F.B.I.,*
 893 F.2d 595 (3d Cir. 1990).................................................................................5

*Peerless Wall & Window Coverings, Inc. v. Synchronics, Inc.,*
 85 F. Supp. 2d 519 (W.D. Pa), *aff'd*, 234 F.3d 1265 (3d Cir. 2000) .......................19

*Pittsburgh Constr. Co. v. Griffith,*
 834 A.2d 572 (Pa. Super. Ct. 2003).....................................................................23

*Post v. Liberty Mut. Grp., Inc.,*
 No. 14-CV-238, 2014 WL 2777396 (E.D. Pa. June 18, 2014).............................16

*REM Coal Co. v. Clark Equip. Co.,*
 563 A.2d 128 (Pa. Super. Ct. 1989).....................................................................22

*Robert Bosch LLC v. Pylon Mfg. Corp.,*
 632 F. Supp. 2d 362 (D. Del. 2009).....................................................................19

*Rosenfield v. Frank,*
 No. 18-CV-00568, 2019 WL 2355588 (M.D. Pa. June 4, 2019)...........................21

*Roy v. Ward Mfg., LLC,*
 No. 13-3878, 2014 WL 4215614 (D. Md. Aug. 22, 2014)....................................22

*Schmidt v. Ford Motor Co.,*
 972 F. Supp. 2d 712 (E.D. Pa 2013) .............................................................13, 14

*In re Shop-Vac Mktg. & Sales Practices Litig.,*
 964 F. Supp. 2d 355 (M.D. Pa. 2013)..................................................................16

*Sicherman v. Nationwide Life Ins. Co.,*
 No. 11-7227, 2012 WL 1122737 (E.D. Pa. Apr. 4, 2012).....................................18

*Silva v. Rite Aid Corp.*,
    416 F. Supp. 3d 394 (M.D. Pa 2019) ........................................................................10, 12, 21

*Steven B. Snyder, M.D., P.A. v. Cynosure, Inc.*,
    No. 18-2049, 2019 WL 1386727 (D. Md. Mar. 27, 2019) .......................................23

*Stewart v. Bierman*,
    859 F. Supp. 2d 754 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528
    F. App'x 297 (4th Cir. 2013) ..................................................................................20

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .................................................................................................9

*Szajna v. Gen. Motors Corp.*,
    503 N.E.2d 760 (Ill. 1986) .....................................................................................11

*Tatum v. Takeda Pharm. N. Am., Inc.*,
    No. 12-1114, 2012 WL 5182895 (E.D. Pa. Oct. 19, 2012) ....................................25

*Time Share Vacation Club v. Atl. Resorts, Ltd.*,
    735 F.2d 61 (3d Cir. 1984) .......................................................................................5

*Werwinski v. Ford Motor Co.*,
    286 F.3d 661 (3d Cir. 2002) ...................................................................................22

*Whitaker v. Herr Foods, Inc.*,
    198 F. Supp. 3d 476, 484 (E.D. Pa. 2016) ...........................................6, 10, 22, 25

**Statutes**

73 Pa. Cons. Stat. Ann. § 201-2 .................................................................................16

73 Pa. Cons. Stat. Ann. § 201-2(4) ............................................................................16

73 Pa. Cons. Stat. Ann. § 201-9.2(a) .........................................................................20

13 Pa. Cons. Stat. Ann. § 2607(c)(1) ...................................................................12, 14

15 U.S.C. § 2301(6) ...................................................................................................14

Md. Code Ann., Com. Law § 2-607 .....................................................................12, 14

Md. Code Ann., Com. Law § 13–301 ........................................................................16

**Other Authorities**

21 C.F.R. § 182.3640 .................................................................................................20

21 C.F.R. § 582.3733 .................................................................................................20

Federal Rule of Civil Procedure 9(b)................................................................5, 6, 17, 19

Federal Rule of Civil Procedure 12(b)(1) ...............................................................1, 2, 4

Federal Rule of Civil Procedure 12(b)(2) ...................................................................1, 5

Federal Rules of Civil Procedure 12(b)(6)..............................................................1, 5, 13

Defendant Henry Thayer Company, Inc. ("Thayer"), by and through counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), hereby files this Memorandum of Law in Support of its Motion To Dismiss Plaintiffs' Amended Complaint.

## I.        INTRODUCTION

Originally founded in 1847, Thayer manufactures a variety of personal care products and product lines under the name THAYERS® Natural Remedies.  According to Plaintiffs, certain of these products are marketed as "natural" even though (Plaintiffs contend) they contain synthetic ingredients, albeit ones actually disclosed on the product label.  Plaintiffs also allege that certain Thayer dry mouth products are marketed as "preservative free" even though they purportedly contain preservatives that Plaintiffs contend are not "natural."

Though Plaintiffs broadly allege that they purchased a number of Thayer products, they do not claim that any Thayer product they purchased failed to perform its intended function.  Yet, according to Plaintiffs, these products were not worth whatever undisclosed amount they paid for them because, in their view, the products were not "natural."  As a result, Plaintiffs filed this putative class action lawsuit asserting claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count I); the Magnusson-Moss Warranty Act ("MMWA") (Count II); breach of express warranty (Count III); unjust enrichment (Count IV); negligent and fraudulent misrepresentation (Counts V & VI); and the Maryland Consumer Protection Act ("MCPA") (Count VII).  Am. Compl. ¶¶ 95–164.  Plaintiffs' claims fail as a matter of law pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) for multiple reasons.

First, all claims by Plaintiff Garner should be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  This Court does not have general jurisdiction over Thayer because it neither is incorporated, nor maintains its principal place of business, in

Pennsylvania.  Garner also has not alleged any relevant contacts with Pennsylvania or any injury emanating from Pennsylvania.

Second, Plaintiffs admittedly ceased purchasing Thayer products, and will not purchase them in the future because of their ingredients.  Plaintiffs consequently lack standing to compel Thayer to change its alleged practices with regard to these products, and any claims for declaratory or injunctive relief should be dismissed under Rule 12(b)(1).

Third, Plaintiffs' warranty claims fail in their entirety.  Plaintiffs erroneously argue that Thayer's use of "natural" in its trade name -- "THAYERS® Natural Remedies" (trademarked by the United States Patent and Trademark Office) -- created a "warranty," but a trade name is not a representation about a quality or characteristic of a specific product.  Plaintiffs further contend that Thayer's various descriptions of its products constitute express warranties and that Thayer breached these warranties with its ingredient compositions.  Even if these statements did constitute "warranties" under the Uniform Commercial Code, Plaintiffs' express warranty claim fails because they did not provide Thayer proper notice of the alleged breach as to their personal experiences or an opportunity to cure that breach before suing.

Fourth, the MMWA claim fails because Thayer's putative representations are not "written warranties" as defined by the Act.  Even if they were, the MMWA does not create an independent cause of action so the failure of the state-law warranty claim dooms the MMWA claim.

Fifth, Plaintiffs' conclusory allegations cannot support their misrepresentation-based claims.  As with the warranty claims, the "Thayers® Natural Remedies" trade name is not a representation about the products.  Moreover, Plaintiffs excerpt several statements while omitting crucial context to create non-existent promises.  The claims fall apart when considering the

statements in their entirety.  Plaintiffs also fail to tie particular representations to their purchases, meaning they have not alleged reliance and causation regarding such representations.

Sixth, in addition to failing to identify a misrepresentation or reliance/causation with regard to certain statements, Plaintiffs' claims for negligent misrepresentation and fraudulent misrepresentation are barred by the economic loss doctrine (because they have not alleged injury to person or property) and by the gist of the action doctrine (because the claims sound in contract) as applicable under Pennsylvania and Maryland law.

Finally, Lisowski alone asserts a claim for unjust enrichment.  He cannot pursue a claim for unjust enrichment as a stand-in for his tort claims and should be dismissed for the same reasons. Even if pled as a quasi-contract claim (and the Amended Complaint includes no such allegation), this claim fails because Lisowski admittedly received a product for whatever benefit he conferred upon Thayer.  Disappointed expectations in a product do not create a claim for unjust enrichment.

The Amended Complaint suffers from fundamental deficiencies further detailed herein. Having already exercised the option to amend following Thayer's preview of these dispositive arguments through the conferral process, the dismissal should be with prejudice.

## II.    SUMMARY OF THE AMENDED COMPLAINT

Thayer markets and sells its THAYERS® Natural Remedies brand personal care products directly through its website and through retailers.  Plaintiffs allege that Thayer improperly markets and labels twenty-five of its products -- ranging from deodorants, to facial toners, to facial astringents, to products that treat dry mouth -- as "natural" and four of its dry mouth products as "preservative free" because these products allegedly contain non-natural ingredients and/or preservatives.  Am. Compl. ¶¶ 1–4.  Plaintiffs admit, however, that Thayer discloses these ingredients on its product labels.  *Id.* ¶ 6.

Plaintiff Lisowski is a resident of Pennsylvania.  He allegedly purchased Thayer Unscented Deodorant, Unscented Facial Mist, Peppermint Dry Mouth Spray, and Tangerine Slippery Elm Lozenges.  *Id.* ¶ 63.  According to him, he made certain of these purchases online and others from retailers located in the Commonwealth.  *See id*.  Plaintiff Garner is a Maryland resident who allegedly purchased Thayer Rose Petal Facial Mist from retail stores in Maryland.  *Id.* ¶ 64.

While Plaintiffs contend that using certain Thayer products in tandem **could** lead to an adverse health effect, ***neither of them*** claim to have used these products in such combinations or, indeed, experienced an adverse side effect from using ***any*** Thayer product.  Am. Compl. ¶ 31.  Nor do Plaintiffs allege that whatever products they did purchase and use failed to work as advertised or fulfill Plaintiffs' expectations from a performance perspective.  Yet, Plaintiffs now claim that the Thayer products they purchased were not of the same quality and characteristic as they initially believed and that they therefore paid too much for them relative to other, unidentified products allegedly on the market.  *See id.* ¶¶ 41, 45.  Plaintiffs are no longer purchasing Thayer products and will not purchase them in the future unless Thayer changes its formulation.  *Id.* ¶¶ 63-64.

### III.    LEGAL STANDARDS

### A.    12(b)(1)—Lack of Subject-Matter Jurisdiction.

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional reach; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction.  *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d

Cir. 2008)).  In either instance, Plaintiff has the burden to establish jurisdiction.  *See Mortensen v.*

*First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

**B.**     **12(b)(2)—Lack of Personal Jurisdiction.**

In ruling on a Rule 12(b) (2) motion, "a court must accept the plaintiff's allegations as true

and draw in the plaintiff's favor all reasonable inferences supported by the well-pleaded factual

allegations." *Arrington v. Colortyme, Inc.*, 972 F. Supp. 2d 733, 739 (W.D. Pa. 2013).  But, "[o]nce

the motion is made, plaintiff must respond with actual proofs [in the form of affidavits or other

competent evidence], not mere allegations." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735

F.2d 61, 66 n. 9 (3d Cir. 1984).  "[A]t no point may a plaintiff rely on the bare pleadings alone in

order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam

jurisdiction." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) Once the

defendant raises a question of personal jurisdiction, the plaintiff bears the burden of establishing

the court's jurisdiction over the defendant. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d

Cir. 2004).

**C.**     **12(b)(6)—Failure to State a Claim.**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state "enough facts to

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires

more than labels and conclusions, and a formulaic recitation of a cause of action's elements will

not do." *Id.* at 555 (internal quotations omitted).  "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must

state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  This

pleading standard applies to Plaintiffs' fraudulent misrepresentation, UTPCPL, MCPA, and negligent misrepresentation claims. *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 484 (E.D. Pa. 2016) (collecting cases); *Green v. Wells Fargo Bank, N.A.*, No. 12-1040, 2014 WL 360087, at *2 (D. Md. Jan. 31, 2014), *aff'd*, 582 F. App'x 246 (4th Cir. 2014) ("Plaintiffs' claims alleging fraud and violations of the MCPA are subject to the heightened pleading standard of Rule 9(b)."). As the Third Circuit has explained, "[t]o satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). In other words, Rule 9(b)'s particularity requirement requires a plaintiff to allege "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where, and how of the events at issue." *U.S., ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quotation omitted).

## IV.   ARGUMENT

### A.   All Of Garner's Claims Must Be Dismissed Due to Lack of Personal Jurisdiction.

Garner resides in Maryland and purchased his Thayer products from "physical retail stores in Maryland." Am. Compl. ¶ 64. To adjudicate a plaintiff's claim against a defendant from another state, the Court must have either general or specific personal jurisdiction over the defendant. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A plaintiff bears the burden of establishing the district court's jurisdiction over a non-resident defendant. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). The Court should dismiss Garner from this suit because it does not have jurisdiction over Thayer with respect to Garner's claims.

#### 1.   No General Jurisdiction Exists Over Thayer in Pennsylvania.

A federal court may assert general personal jurisdiction over a corporate defendant only if the corporation is "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 136-39

(2014).  In *Daimler*, the Supreme Court clarified that a court has general personal jurisdiction over a corporate defendant *only* if it has its domicile, place of incorporation, or principal place of business in the forum state.  *Id.* at 136-37.  Thus, the Supreme Court held that Daimler AG (a German corporation) was not "at home" in California for purposes of general personal jurisdiction, even though the company generated billions of dollars per year in sales in California through its subsidiaries.  *See id.* at 143-44 (Sotomayor, J., concurring).

Thayer is not domiciled in Pennsylvania because, as alleged in the Amended Complaint, it is incorporated in Delaware and maintains its principal place of business in Connecticut.  *See* Am. Compl. ¶ 65 (alleging that Thayer "is a Delaware corporation with its principal place of business in Easton, Connecticut").  Thus, no general jurisdiction exists over Thayer in Pennsylvania.  *See Daimler*, 571 U.S. at 136-39.

## 2.    No Specific Jurisdiction Exists Over Thayer as to Garner's Claims.

Lacking general personal jurisdiction over Thayer, the Court must have specific personal jurisdiction over the company to adjudicate Garner's claims.  *See Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1783 (2017) ("BMS").  Specific personal jurisdiction is "claim-specific" and exists only when the defendant's contacts with the forum state are related to "issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Goodyear*, 564 U.S. at 919 (citations omitted).  When there is no particular connection between the particular plaintiff's claimed injury and either the foreign corporation's contacts with the forum or the particular plaintiff's contacts with the form, specific jurisdiction is lacking, regardless of the extent of the defendant's activities in the forum state that are unrelated to the plaintiff's claim.  *Id.* at 931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").

The Supreme Court's *BMS* decision is instructive.  There, a group of Californian and non-Californian plaintiffs sued BMS in California for injuries allegedly suffered from use of BMS's drug Plavix.  137 S. Ct. at 1778.  BMS argued that the California courts lacked personal jurisdiction over it with regard to the non-residents' claims.  *Id.*  The Supreme Court agreed, emphasizing that the non-resident plaintiffs did not allege that they obtained the drug in California, ingested it there, or were injured there.  *Id.* at 1781.  It did not matter that BMS marketed the drug into California, or that the California-resident plaintiffs could sue BMS in that state, because "[w]hat is needed -- and what [was] missing [t]here -- is a connection between the forum and the specific claims at issue" of the non-resident plaintiffs.  *Id.*  In the Court's words, "[w]hen there is no such connection" with the particular plaintiff's claims, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Id.* (citation omitted).  That was true in *BMS*, even though BMS marketed and sold the drug at issue in California, had a substantial physical presence in California (including five research laboratories, a small state-government advocacy office, and 400 employees), had contracted with a California-based distributor, and generated nearly $1 billion from in-state sales.  *Id.* at 1778, 1781-82.

Applying these principles here, this Court plainly does not have specific jurisdiction over Thayer with respect to Garner's claims.  He has not identified a single contact with Pennsylvania relevant to **his** dispute with Thayer:  Garner (1) does not live in Pennsylvania; (2) does not allege to have purchased any Thayer products in Pennsylvania; and (3) does not allege that he suffered any injury in or emanating from Pennsylvania.  *See generally* Am. Compl.  Rather, he lives in Maryland and admittedly made any Thayer purchases from brick-and-mortar retailers located in Maryland.  *See id.* at ¶ 64.  His claims arise exclusively from alleged conduct occurring **outside**

*Pennsylvania*.  Accordingly, as with the non-resident plaintiffs in *BMS* and the state of California, there is no "specific connection" between Garner's claims and the Commonwealth.

For these reasons, Garner's claims against Thayer should be dismissed for lack of personal jurisdiction.  Nonetheless, even if the Court reaches the merits of Garner's claims, they fail as a matter of law for the additional reasons discussed in the following sections.

**B.**      **Plaintiffs Lack Standing to Seek Injunctive Relief.**

Plaintiffs do not have standing to pursue injunctive relief because they admittedly are no longer purchasing Thayer products and will not do so moving forward.

To establish Article III standing, a plaintiff must show that (1) "he is under threat of suffering 'injury in fact' that is concrete and particularized"; (2) "the threat must be actual and imminent, not conjectural or hypothetical"; (3) "it must be fairly traceable to the challenged action of the defendant"; and (4) "it must be likely that a favorable judicial decision will prevent or redress the injury."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (identifying requirement that injury-in-fact must be "actual or imminent, not conjectural or hypothetical").  In the case of prospective relief, a plaintiff must show that he is "likely to suffer future injury" from the defendant's conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

Even in class actions, the Court's standing inquiry focuses solely on the named plaintiff, not absent putative class members.  *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018).  Plaintiffs, however, are not under threat of future injury because they no longer are using or purchasing Thayer products.

The Third Circuit has held that former customers "who [are] already aware of . . . allegedly deceptive business practices from which they sought future protection" lack standing to pursue injunctive relief regarding the marketing of a product.  *See, e.g.*, *In re Johnson & Johnson Talcum*

*Powder Prod. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 292–93 (3d Cir. 2018) (citing *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 225 (3d Cir. 2012)).  As the Third Circuit explained, "the law accords people the dignity of assuming that they act rationally, in light of the information they possess."  *Id.*

Courts routinely find that a consumer who learns the alleged "truth" about a product cannot maintain a claim for injunctive relief because he or she cannot personally be deceived by such marketing in the future.  *Silva v. Rite Aid Corp.*, 416 F. Supp. 3d 394, (M.D. Pa 2019) (dismissing injunctive relief claim regarding allegedly deceptive product labeling even where plaintiff allegedly intended to purchase those products in future); *Whitaker*, 198 F. Supp. 3d at 495–96 (finding lack of standing in food labeling case).  Plaintiffs here concede they will no longer purchase Thayer's products, thus negating any claim for injunctive relief.  Am. Comp. ¶¶ 63-64 (admitting they will not purchase products unless "Defendant changed the composition of the Products").  Accordingly, Plaintiffs cannot plausibly allege a likelihood of future harm, precluding the necessary standing to obtain injunctive relief.

## C.   **Plaintiffs' Warranty Claims Are Deficient For Multiple Reasons.**

### 1.   **A Trade Name Does Not Create An Express Warranty.**

Plaintiffs attack the "THAYERS® Natural Remedies" trade name as an alleged express warranty about the products themselves.  *See* Am. Compl. ¶¶ 5, 73–78 ("The front label of every one of the THAYERS® Products state prominently in lettering the words "Natural Remedies.").  (A copy of the print-out from the USPTO identifying the serial numbers and registration numbers is included as Exhibit 1.)  Trade names, however, ***are not*** an express warranty about a product's features or expected performance.  *See*, *e.g.*, *Boyd v. TTI Floorcare N. Am.*, 230 F. Supp. 3d 1266 (N.D. Ala. 2011), *aff'd sub nom. Green v. Bissell Homecare Inc.*, 476 F. App'x 238 (11th Cir. 2012) (dismissing express warranty claim and rejecting notion that trade name created a

"warranty"); *McKinnis v. Kellogg USA*, No. CV07–2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) (holding that trademarked name "FrootLoops®" did not create express warranty that cereal contained real fruit, and noting that "'Froot' . . . appears in the trademarked name of the cereal, not on its own or as a description of the actual ingredients of the cereal itself"); *Hertzog v. WEBTV Networks, Inc.*, No. 48552-1-I, 2002 WL 1609032, at *4–5 (Wash. App. July 22, 2002) (rejecting plaintiff's contention that naming product "universal remote" created express warranty that product is compatible with all types of equipment).[1]

*Boyd* concerned vacuums sold under the "PowerSteamer® and SteamVac®" trade names. *Boyd*, 230 F. Supp. 3d at 1273. According to plaintiff, the inclusion of "steam" in the trade name "create[d] an affirmation of fact that the products will use steam in the cleaning process," and that defendants breached this express warranty because the products did not actually produce or utilize steam and were not worth as much as they cost as a result. *Id.* After surveying the law, the court rejected the argument that a trade name "alone can create an express warranty to a product's quality, functioning, or contents" and dismissed plaintiff's claim. Plaintiffs' express warranty claim likewise fails to the extent predicated on the products' trade-name.

**2.     Even If An Express Warranty Existed, Plaintiffs' Claim Fails For Lack Of Pre-Suit Notice.**

Plaintiffs' claim for breach of express warranty in Count III independently fails because they did not provide Thayer pre-suit notice of any alleged breach so that Thayer had an opportunity to cure.

---

[1] *See also Szajna v. Gen. Motors Corp.*, 503 N.E.2d 760, 771 (Ill. 1986) (affirming dismissal of claim based on vehicle model name and observing absence of support "for the proposition that a trade name is a description creating an express warranty that the product is of a particular quality or that its component parts are of a particular quality").

A buyer "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 13 Pa. Cons. Stat. Ann. § 2607(c)(1); Md. Code Ann., Com. Law § 2-607 (West). It is well-settled in Pennsylvania that "[p]re-suit notification is a condition precedent to recovery, and the buyer has the burden of pleading compliance with Section 2607." *Silva*, 416 F. Supp. 3d at 400; *see also Am. Fed'n of State Cty. & Mun. Emps. v. Ortho-McNeil-Janssen Pharm., Inc.* (*AFSCME*), No. 08-cv-5904, 2010 WL 891150 (E.D. Pa. March 11, 2010) (confirming that plaintiff-specific notice required to allege breach of warranty claim). Maryland law likewise requires notice before suit, with waiver of the right to a remedy the consequence of failing to do so. *Lynx, Inc. v. Ordnance Prod., Inc.*, 327 A.2d 502, 514 (Md. 1974) ("[W]here no notice has been given prior to the institution of the action an essential condition precedent to the right to bring the action does not exist and the buyer-plaintiff has lost the right of his 'remedy.'").

In *Silva*, the defendant sold its products in brick-and-mortar stores and directly to consumers through its website. 416, F. Supp. 3d at 398. Like here, the plaintiffs attempted to allege claims for breach of express warranty due to alleged misrepresentations on the defendant's product labels. *Id.* at 400-01. But because the second amended complaint did not allege facts establishing that plaintiff provided notice to the defendant before commencing litigation, the court dismissed the claim. *Id.* at 401. The same result follows here.

Plaintiffs did not provide the required pre-suit notice. Rather, the purported "notice" referenced in the Amended Complaint (¶ 130) was received mere hours before the Amended Complaint was filed and only ***after*** Thayer's counsel informed Plaintiffs that it would move to

12

dismiss the warranty claims for lack of pre-suit notice.  *See* Exhibit 2.[2]  That necessarily is not pre-suit notice, and the tactic logically frustrates the rule's stated purpose to encourage settlement without the need for judicial intervention or the duress of a putative class action lawsuit.  *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 718 (E.D. Pa 2013) (explaining purpose of pre-suit notice requirement); *see also Lynx, Inc.*, 327 A.2d at 514 (noting that "the institution of an action by the buyer to recover damages cannot by itself be regarded as a notice of the breach contemplated under" Maryland law).  Plaintiffs' attempt to make an end-run around Maryland's and Pennsylvania's pre-suit notice laws should be rejected as a matter of law.

Likely sensitive to their failure to provide pre-suit notice of any breach concerning ***their*** purchases of Thayer products, Plaintiffs attempt an end-run around this requirement by arguing that Thayer is on constructive notice through various public complaints.  Am. Compl. at ¶¶ 117, 129.  This is futile -- "actual or constructive notice of the defect on the part of the manufacturer is irrelevant;" rather, "the plaintiff must provide notification independently."  *Schmidt*, 972 F. Supp. 2d at 718.  In *Schmidt*, plaintiffs tried to excuse their own lack of pre-suit notice by arguing that the defendant had knowledge of the alleged product defect through complaints registered by other consumers.  *Id.* at 719.  The court rejected the argument that third party notice can fulfill the notification requirement, particularly where multiple products are involved.  *Id.*  The court observed that "[e]ven assuming that Defendants were aware that the [product] [was] defective,

---

[2] The Court may consider this document at this stage under Rule 12(b)(6) because it is expressly referenced in his Amended Complaint.  *See* Am. Compl. ¶¶ 118, 130; *see also Novae Corp. Underwriting Ltd. v. Atl. Mut. Ins. Co.*, 556 F. Supp. 2d 489, 494 (E.D. Pa. 2008) ("When deciding a motion to dismiss under Rule 12(b)(6), a court may properly consider the factual allegations contained in the complaint, exhibits attached thereto, documents referenced therein, matters of public record, and undisputedly authentic documents attached as exhibits to the defendant's motion to dismiss if the plaintiff's claims are based on those documents."); *see also Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

Defendants may not have been aware of Plaintiffs' intent to file a class action lawsuit, and were denied the opportunity to negotiate or settle this claim without judicial involvement." *Id.* at 718. The very purpose of the law mandates, and can only be satisfied with, particular pre-suit notice.

Similarly, Maryland law does not recognize constructive notice as a viable alternative to actual notice by the plaintiff of an issue with plaintiff's particular purchase. *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 542 (D. Md. 2011) ("The Maryland Court of Appeals has interpreted this provision to require the buyer to inform the seller of the breach, the particular goods that have been impaired, and set forth the nature of the nonconformity.") (citing *Lynx, Inc.*, 327 A.2d at 513).

Plaintiffs' silence before springing this lawsuit improperly deprived Thayer the opportunity to negotiate or settle a claim without judicial involvement and the pressure of a class action lawsuit. Their "notice" sent ***four months*** after initiating the suit (and mere hours before filing the Amended Complaint) violates this principal and does not satisfy Maryland or Pennsylvania law. Accordingly, Plaintiffs are "barred from any remedy," and their warranty claim must be dismissed with prejudice.  13 Pa. Cons. Stat. Ann. § 2607(c)(1); Md. Code Ann., Com. Law § 2-607 (West).

**D.     Plaintiffs Fail to State a Claim for Relief Under the MMWA.**

**1.     The Supposed "Warranties" Are Not "Written Warranties" Under the MMWA.**

Plaintiffs' MMWA claim in Count II fails as a matter of law because Thayer's marketing and representations are not "written warranties" as defined by the MMWA:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and ***affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time*** . . . .

15 U.S.C. § 2301(6) (emphasis added).

14

Nowhere do Plaintiffs identify any Thayer statement relating to "the material or workmanship" of any Thayer product.  The alleged statements on the product label or online allegedly describing the product and its ingredients do not concern "materials or workmanship," do not promise defect-free operation, and do not promise a "specified level of performance over a specified period of time."  The statements thus are beyond the MMWA's scope.

Courts regularly hold that allegedly misbranded product labels ***are not*** "written warranties" governed by the Act.  *See*, *e.g.*, *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 966 (N.D. Cal. 2013).  To the contrary, "'misbranded' labels . . . constitute mere product descriptions rather than promises of defect-free products."  *Id.*  In particular, describing a product as "natural" does not constitute a warranty under the MMWA.  In *Larsen v. Trader Joe's Co.*, No. 11–5188, 2012 WL 5458396, at *3 (N.D. Cal. June 14, 2012), the court dismissed MMWA claims based on representations that a product was "All Natural" and "100% Natural" because such statements do not warrant that the products are defect-free or will perform at a specified level for a period of time.  *Id.* at *2.  Many courts have similarly ruled in rejecting product-labeling claims under the MMWA.  *See In re Frito-Lay N. Am. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) (rejecting claim because "All Natural" representation not a "written warranty as defined by the MMWA") (collecting cases); *Chin v. Gen. Mills, Inc.*, No. 12-2150, 2013 WL 2420455, at *5 (D. Minn. June 3, 2013) ("Labeling a product '100% Natural' is not a written warranty under the MMWA" and granting motion to dismiss); *Littlehale v. Hain Celestial Grp., Inc.*, No. C 11-6342, 2012 WL 5458400, at *1 (N.D. Cal. July 2, 2012) (declining to find that statements such as "Pure Natural" and "ALL Natural" constitute affirmations or promises that products are defect-free).

Like the statements in these cases, Thayer's alleged representations that the products are "natural" and "preservative free" (or any derivative thereof) are product descriptions beyond the MMWA's reach.  Plaintiffs' MMWA claim fails as a matter of law for this reason alone.

      **2.**      **Even if Thayer's Alleged Statements Are "Written Warranties," The MMWA Claims Must Be Dismissed with Plaintiffs' Express Warranty Claim.**

Plaintiffs' MMWA claim is derivative of his express warranty claim, and cannot proceed without a predicate claim for breach of express warranty. *See*, *e.g.*, *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010); *Hanreck v. Winnebago Indus., Inc.*, --F. Supp. 3d --, No. 16-1163, 2019 WL 1383509, at *4 (M.D. Pa. Mar. 27, 2019) ("The MMWA establishes a remedy under federal law but does not create an independent cause of action from the underlying breach."); *In re Shop-Vac Mktg. & Sales Practices Litig.*, 964 F. Supp. 2d 355, 361 (M.D. Pa. 2013).  Plaintiffs' predicate claim for breach of express warranty should be dismissed as discussed in Section C, prompting dismissal of the MMWA claim as well.

**E.**      **Plaintiffs Have Not Alleged A Claim For Fraud Or Violation Of The UTPCPL Or MCPA.**

Lisowski's UTPCPL claim in Count I cannot proceed without facts substantiating: (1) that Thayer engaged in "unfair methods of competition" or "unfair or deceptive acts or practices;" (2) that he "justifiably relied" on Thayer's unlawful conduct; and (3) that he suffered harm as a result of that justifiable reliance.  *See* 73 Pa. Cons. Stat. Ann. § 201-2, 201-2(4); *Post v. Liberty Mut. Grp., Inc.*, No. 14-CV-238, 2014 WL 2777396, at *2-4 (E.D. Pa. June 18, 2014).

With regard to Garner's claim, the MCPA prohibits unfair or deceptive trade practices. Md. Code Ann., Com. Law § 13–301.  To state a claim under the MCPA, the plaintiff must be a "consumer" who suffered an identifiable loss as a result of his or her reliance on the defendant's

misrepresentation. *Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 450 (D. Md.), *aff'd*, 546 F. App'x 165 (4th Cir. 2013) (citation omitted).

For either claim, a showing of "fraudulent conduct" must meet Rule 9(b)'s stringent pleading standards regarding the specific time, place, and content of each allegedly false statement and the identity of the person who made it, while *both* types of conduct (fraudulent or deceptive conduct) require allegations that the defendant intentionally misled the plaintiff. *Haggart v. Endogastric Sols., Inc.*, No. 10-0346, 2011 WL 466684, at *6 (W.D. Pa. Feb. 4, 2011) ("Rule 9(b) applies 'not only to fraud actions under federal statutes, but to fraud claims based on state law.'") (citation omitted); *Green v. Wells Fargo Bank, N.A.*, No. DKC 12-1040, 2014 WL 360087, at *2 (D. Md. Jan. 31, 2014), *aff'd*, 582 F. App'x 246 (4th Cir. 2014) ("Plaintiffs' claims alleging fraud and violations of the MCPA are subject to the heightened pleading standard of Rule 9(b).").

Plaintiffs' unspecific allegations fall short of satisfying Rule 8 much less the more stringent requirements of Rule 9(b).

1.     **Plaintiffs have not alleged facts demonstrating that certain alleged statements were false or misleading and further have failed to plead justifiable reliance.**

Plaintiffs have not alleged a misrepresentation based on the presence of the term "natural." They point to Thayer's product trade name -- "THAYERS® Natural Remedies" -- but that is not a representation about the composition of the ingredients for any particular product.  Nor do they identify any statement or representation by Thayer that the products are "100% natural" or "all natural" -- a critical distinction between the Thayer products and the products by other manufacturers allegedly the subject of FTC enforcement.  Am. Compl. ¶ 22 n.3; *see also Johnson v. Draeger Safety Diagnostics, Inc.*, 594 F. App'x 760, 766-67 (3d Cir. 2014) (affirming dismissal of plaintiffs' claim for common law fraud where plaintiffs failed to adequately plead that defendant's statements were false); *Brown v. Buschman Co.*, No. CIV. A. 99-108(GMS), 2002

17

WL 389139, at *9 (D. Del. Mar. 12, 2002) (dismissing plaintiff's fraud claim after finding "[m]ore

important, the [plaintiff] has not alleged sufficient facts to demonstrate that the representations"

identified in the complaint "were false").

Moreover, the amalgam of alleged phrases on certain product labels that mention the word

"natural" must be read in the context of the entire label.  Am. Comp. ¶¶ 63–64; *see also Fink v.*

*Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("A plaintiff who alleges that he was

deceived by an advertisement may not misquote or misleadingly excerpt the language of the

advertisement in his pleadings and expect his action to survive a motion to dismiss....").  Plaintiffs

for instance selectively isolate the phrase "naturally sourced ingredients" while omitting that it

appears in the context of a disclosure beneath the list of all ingredients, which states in full: "The

carefully selected, naturally sourced ingredients in this product may have undergone limited

processing."  Exhibit 3 (Facial Mist Witch Hazel Unscented label).[3]  This statement does not

represent that ***all ingredients*** are "naturally sourced," but rather discloses that of the ingredients

that are naturally sourced, some may have undergone processing.  The label further identifies by

an asterisk (*) that only certain ingredients are "Certified Organic Ingredients." (Ex. 3).

Similarly, the phrase "naturally occurring ingredients" appears in the next sentence,

reading "Variations in color, clarity, etc. can be expected from lot to lot due to our use of naturally

occurring ingredients."  *Id.*  Again, this statement does not remotely suggest that ***all*** ingredients

are naturally occurring, it simply communicates that if there are variations in color it is due to

variations in those ingredients that are naturally occurring.[4]  And the label identifies ingredients of

---

[3] The Court may consider this product label on a motion to dismiss because it is expressly
referenced in his Complaint, and the Complaint contains an image of the front of the label.  *See*
Am. Compl. ¶ 76; *Novae Corporate Underwriting Ltd.*, 556 F. Supp. 2d at 494.

[4]  Additionally, Plaintiff cannot maintain claims over allegations that Thayer's facial products
promote a "healthy glow" or that certain other products provide "natural beauty" because they are

which the product is "free"—"Alcohol-Free · Paraben-Free · Phthalate-Free · Gluten-Free." (Ex.

3).  Claims based on these statements should be rejected out of hand.  *Robert Bosch LLC v. Pylon*

*Mfg. Corp.*, 632 F. Supp. 2d 362, 366 (D. Del. 2009) (dismissing claims for false advertising after

finding plaintiff took certain "statements out of context and omitted relevant language.").

In addition, and separate from their failure to properly plead the falsity of the certain

statements discussed earlier in this section, Plaintiffs cannot sustain their pleading burden under

Rule 9(b) or otherwise without also alleging facts establishing that they **personally** were exposed

to and relied in some particular way on an allegedly false statement in making a relevant decision.[5]

---

examples of non-actionable opinions ("puffery") routinely rejected at the pleading stage.  *See* Am.
Compl. ¶ 63; *see also Sicherman v. Nationwide Life Ins. Co.,* No. 11-7227, 2012 WL 1122737, at
*4 (E.D. Pa. Apr. 4, 2012) (dismissing plaintiff's claim under the UTPCPL after finding
defendant's statement "Nationwide is on your side" to be puffery); *Peerless Wall & Window
Coverings, Inc. v. Synchronics, Inc.,* 85 F. Supp. 2d 519, 532 (W.D. Pa) (dismissing breach of
contract and warranty claims after finding defendant's statement "[w]ith SYNCHRONICS Point
of Sale and related software, you'll stay up-to-date. Every minute. Every day. Automatically[,]" to
be non-actionable puffery and noting "[s]uch statements of the sellers' opinion are merely 'sales
talk' and should be recognized as such by a reasonable buyer and appropriately discounted, not
stretched into the basis for a class action lawsuit."), *aff'd*, 234 F.3d 1265 (3d Cir. 2000); *Baney
Corp. v. Agilysys NV, LLC*, 773 F. Supp. 2d 593, 608 (D. Md. 2011) ("Maryland law distinguishes
between statements that relate to material facts—which may give rise to cognizable claims—and
vague generalities, statements of opinion, or puffery—which are deemed non-cognizable.");
*Daniyan v. Viridian Energy LLC*, No. 14-2715, 2015 WL 4031752, at *2 (D. Md. June 30, 2015)
(finding statements that product "competitively priced and often costs less" amounted to "nothing
more than vague generalities and puffery").

[5] *See Kee v. Zimmer, Inc.*, 871 F. Supp. 2d 405, 412 (E.D. Pa. 2012) (citation omitted) ("Plaintiff
fails to allege facts supporting the nature of her reliance or specific representations Defendant
made relating to the reliance.  Plaintiff fails to allege . . . the date, time, and place of the alleged
fraud, or, alternatively, inject any precision or measure of substantiation into her fraud allegations
that would 'place the defendant on notice of the precise misconduct with which it is charged.'");
*Militello v. Allstate Prop. & Cas. Ins. Co.*, No. 14-CV-00240, 2014 WL 2892386, at *4 (M.D. Pa.
June 26, 2014) (granting motion to dismiss UTPCPL claim under catch-all provision for failure to
plead justifiable reliance and causation); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244,
249 (D. Md. 2013) (dismissing claim for lack of direct reliance), *aff'd*, 582 F. App'x 246 (4th Cir.
2014); *see also Bezmenova v. Ocwen Fin. Corp.*, No. 8:13-CV-00003-AW, 2013 WL 3863948, at
*6 (D. Md. July 23, 2013) ("To reiterate, the mere fact that a commercial or legal entity makes a
misrepresentation to a consumer is, in and of itself, insufficient to support a material
misrepresentation claim under the MCPA.  Rather, the plaintiff's allegations, which must be

Plaintiffs have not plausibly connected several alleged misrepresentations to any of their personal purchasing decisions.  For instance, Plaintiff allege that certain products are "recommended for babies and children," "safe for babies and children," and are otherwise marketed to pregnant and nursing women.  Am. Compl. ¶¶ 25, 63, 150(b)(v).  Plaintiffs nowhere allege that they purchased products for these purposes (*i.e.*, for use with babies or children) and, consequently, have not plausibly pled any claim based on these representations.[6]  And, although Plaintiffs allege that certain products are harmful if consumed in certain combination, Am. Compl. ¶ 31, they do not allege that they purchased these products or used them in them such tandem, much less include a single factual allegation suggesting these products actually physically harmed either Plaintiff.  *Id.*

**2.      Plaintiff fails to allege an actionable loss.**

Plaintiffs also have failed to allege facts plausibly demonstrating that they suffered any loss as a result of Thayer's alleged practices.  73 Pa. Cons. Stat. Ann. § 201-9.2(a) (providing that UTPCPL requires "an[] ascertainable loss of money or property as a result of an unlawful method, act or practice"); *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (noting "injury" resulting from detrimental reliance an element of MCPA claim), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013).  Having admitted that Thayer's product labels identify the ingredients in each Product, Plaintiffs' vague complaint -- where they failed to identify the specific prices paid for each product and the amount of the alleged price premium compared to an

---

pleaded with particularity, must support a plausible inference that the statement ***induced the plaintiff*** to make a harmful consumer choice.") (emphasis added).

[6] Moreover, the CFR regulations Plaintiffs cite in support of his claims (Am. Compl. ¶ 27) confirm that these ingredients are "safe," undermining their claims.  21 C.F.R. §§ 182.3640 ("This substance [potassium sorbate] is generally recognized as safe when used in accordance with good manufacturing practice."), 582.3733 ("This substance [sodium benzoate] is generally recognized as safe for use at a level not exceeding 0.1 percent in accordance with good manufacturing or feeding practice").

identifiable alternative product sufficient to show an "ascertainable loss" or resulting "injury" --

warrants dismissal of the UTPCPL and MCPA claims.

**F.     The Economic Loss And Gist-Of-The-Action Doctrines Bar Plaintiffs' Misrepresentation Claims.**

Claiming they allegedly were "deprived of the benefit of [their] bargain," Plaintiffs seek

damages because Thayer negligently or fraudulently misrepresented that the Products were natural

and/or preservative-free.  Am. Compl. 53, 138–46 (negligent misrepresentation); *id.* ¶¶ 147–55

(fraud).  As discussed in the preceding section, Plaintiffs' misrepresentation-based claims fail for

several reasons.   Independent of these grounds, their claims for negligent and fraudulent

misrepresentation are untenable in multiple respects.

Pennsylvania and Maryland recognize versions of the economic loss doctrine barring tort

claims that seek purely economic losses, like Plaintiffs' claims in this case.   *See*, *e.g.*, *Silva*, 416

F. Supp. 3d at 403 (holding Pennsylvania law "forecloses fraudulent misrepresentation claims

under the economic loss doctrine" and dismissing fraudulent misrepresentation claim); *Neri v.

State Farm Fire & Cas. Co.*, No. CV 19-0355, 2019 WL 3821538, at *5-7 (E.D. Pa. Aug. 13,

2019) ("Courts in Pennsylvania and in the Third Circuit have consistently concluded that the gist

of the action and economic loss doctrines bar claims . . . such as: negligence, negligent

misrepresentation, fraud, fraudulent inducement, and negligent infliction of emotional distress.");

*Rosenfield v. Frank*, No. 18-CV-00568, 2019 WL 2355588, at *6 (M.D. Pa. June 4, 2019) ("[The

economic loss doctrine] applies to intentional fraud claims."); *Cash & Carry Am., Inc. v. Roof

Sols., Inc.*, 117 A.3d 52, 60 (Md. 2015) (explaining a plaintiff "cannot recover tort damages for

the loss of value or use of the product itself, and the cost to repair or replace the product") (citation

and internal quotations omitted).

Under Pennsylvania law, "the economic loss doctrine provides that 'no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage.'" *Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, Inc.*, 648 F. Supp. 2d 707, 713 (E.D. Pa. 2009) (citation omitted). Economic loss has been defined to include "damage for inadequate value." *Id.* Where, as here, the customer's injury is "based upon and flow[s] from the purchaser's loss of the benefit of his bargain and his disappointed expectations as to the product he purchased, the harm sought to be redressed is precisely that which a warranty action does redress." *REM Coal Co. v. Clark Equip. Co.*, 563 A.2d 128, 129 (Pa. Super. Ct. 1989).

Notably, Pennsylvania courts have applied the economic loss doctrine to bar claims for negligent and fraudulent misrepresentation where the statements concern the nature or quality of the goods sold. *Whitaker*, 198 F. Supp. 3d at 491 (dismissing negligent misrepresentation claim based on food label and noting "[a]pplication of the economic loss doctrine to the negligent representation claim is straightforward: 'Plaintiff's negligent misrepresentation claim is quickly dispatched; the economic loss doctrine bars claims for negligent misrepresentation'"); *see also Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671, 676, 680 (3d Cir. 2002) (holding intentional misrepresentation claim barred "where the only misrepresentation . . . concerns the quality or character of the goods"). Lisowski's negligent and fraudulent misrepresentation claims seeking to recover some or all of the purchase price of his products should be dismissed under this doctrine as a result.

With regard to Garner's claims, Maryland law recognizes that "economic loss suffered when the product fails to meet the contractual expectations of the purchaser" is not recoverable in tort. *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 631-32 (D. Md. 1995) (granting motion to dismiss); *Roy v. Ward Mfg., LLC*, No. 13-3878, 2014 WL 4215614, at *4 (D. Md. Aug. 22,

2014) (holding economic loss doctrine barred claims for cost to repair or replace allegedly defective pipes).   Garner's claims should be dismissed in accordance with this dispositive Maryland law.  *Bhamhani v. Innovative Health Sols., Inc.*, No. 19-0355, 2020 WL 673180, at *7 (D. Md. Feb. 11, 2020) (dismissing claims for negligent misrepresentation under economic loss doctrine); *Steven B. Snyder, M.D., P.A. v. Cynosure, Inc.*, No. 18-2049, 2019 WL 1386727, at *5 (D. Md. Mar. 27, 2019) (same, and finding "persuasive" argument that "principles underlying the economic loss doctrine apply with equal force to both negligent and intentional misrepresentation claims" but declining to rule on issue in light of dismissal on other grounds).

Similar in nature to the economic loss doctrine, Pennsylvania also recognizes the gist of the action doctrine, which "operates to preclude plaintiff from re-casting ordinary breach of contract claims into tort claims." *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. Ct. 2003).  The gist of the action doctrine will bar tort claims under the following circumstances: (1) where the claim arises solely from a contract between the parties; (2) where the duties allegedly breached were created by a contract; (3) where liability is derived from a contract; or (4) where the success of the tort claim is dependent on the terms of a contract.  *Id.* at 582.

The Pennsylvania Supreme Court reaffirmed that the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract, is "the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract.  If, however, the facts establish that the claim involves the defendant's violation of a broader social

duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." *Id.* (internal citation omitted).

Here, Lisowski admits that he purchased four Thayer products. He claims he "paid a premium for the Products over and above comparable products that did not purport to be 'Natural Remedies.' Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are 'Natural Remedies,' ['natural' and 'preservative-free,'] Plaintiff and Class Members suffered an injury in the amount of the premium paid." Am. Compl., ¶¶ 18–19; *id.*, ¶ 41, 45) (alleging premium theory); *id.*, ¶ 53(a), (c) (alleging that Plaintiff was "deprived of the benefit of the bargain"); *id.*, ¶ 59 ("Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.") Consistent with having entered a purchase contract, Lisowski asserted warranty claims in Counts II and III. The duty breached thus relates to the terms of the sale, a contract pursuant to which Lisowski supposedly paid a premium to Thayer in exchange for a "natural" or "preservative-free" product, and he allegedly lost the benefit of that bargain when he learned that the products he purchased in fact were not "natural" or "preservative free." The gist of the action doctrine therefore bars Lisowski's tort claims.[7]

The Court should dismiss Counts V (negligent misrepresentation) and VI (fraudulent misrepresentation) in their entirety.

---

[7] Maryland does not formally recognize a "gist of the action" doctrine, and instead folds this basic concept into its application of the economic loss rule, further supporting dismissal of Garner's misrepresentation claims because the only alleged obligation sounds in contract -- *e.g.*, Thayer's alleged duty to deliver a product that conformed to the alleged warranty statements. *Cash & Carry Am., Inc.*, 117 A.3d at 60 ("The economic loss doctrine . . . prohibits a plaintiff from recovering tort damages for what in fact is a breach of contract.").

**G.    Plaintiff Lisowski's Unjust Enrichment Claim Is Not An Independent Cause of
<u>Action.</u>**

Only Plaintiff Lisowski seeks to assert a claim for unjust enrichment.  Am. Compl. ¶ 133.

In Pennsylvania, unjust enrichment claims fall into two categories -- a companion claim to a tort

action or a quasi-contract in the alternative to a breach of contract claim.  *Whitaker*, 198 F. Supp.

3d at 494.  Plaintiff Lisowski pleads his unjust enrichment claim as a companion to his tort claims

because it focuses on false and deceptive conduct and includes no allegation of a quasi-contractual

nature.  Am. Compl. ¶ 136.  "[A]n unjust enrichment claim based on wrongful conduct cannot

stand alone as a substitute for the failed tort claim."  *Whitaker*, 198 F. Supp. 3d at 492–93.  The

unjust enrichment claim is not cognizable given the failure of the tort claims.

In the alternative, even assuming Plaintiff Lisowski intended to plead a quasi-contract

claim, he received and used a product in exchange for any alleged benefit conferred upon Thayer.

His claimed disappointment with those products does not support a claim for unjust enrichment.

*See*, *e.g.*, *Mazur v. Milo's Kitchen, LLC*, No. 12-1011, 2013 WL 3245203, at *10 (W.D. Pa. June

25, 2013) (rejecting unjust enrichment claim based on sale of allegedly unhealthy chicken jerky);

*Tatum v. Takeda Pharm. N. Am., Inc.*, No. 12-1114, 2012 WL 5182895, at *5 (E.D. Pa. Oct. 19,

2012) (rejecting unjust enrichment claim over failure to disclose dangers of products because

plaintiff did not allege that defendants "refused to provide a service or goods after Tatum provided

defendants with a benefit"); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, No. 07-

MD-1871, 2011 WL 4007908, at *2 (E.D. Pa. Sept. 7, 2011) (rejecting unjust enrichment based

on purchase of allegedly unsafe product because plaintiff received the product for which he paid).

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Amended Complaint must be dismissed for lack of

jurisdiction and for failing to state a claim upon which relief may be granted.

Dated:  March 5, 2020

Respectfully submitted,

*/s/ John K. Gisleson*
John K. Gisleson, Esq. (PA62511)
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre
Thirty-Second Floor
Pittsburgh, PA  15219-6401
(412) 560-3300 (telephone)
(412) 560-7001 (facsimile)
john.gisleson@morganlewis.com

*Counsel for Defendant Henry Thayer*
*Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of March, 2020, a true and correct copy of

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HENRY THAYER COMPANY, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

was filed electronically and is available for viewing and downloading from the ECF system and

were served upon the following attorneys via the Court's ECF system:

Steffan T. Keeton
The Keeton Firm LLC
100 S. Commons, Ste. 102
Pittsburgh, PA  15212
stkeeton@keetonfirm.com


*/s/ John K. Gisleson*
John K. Gisleson, Esq.

27