**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHRISTOPHER LISOWSKI and ROBERT
GARNER, individually and on behalf of
all others similarly situated,

                Plaintiffs,

    v.

HENRY THAYER COMPANY, INC.
              Defendant

Electronically Filed

CASE NO.:  2:19-CV-1339

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

# Table of Contents

**PAGE**

I.   INTRODUCTION ..................................................................................................... 1

II.   THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS ........................ 2

   A. Garner's Claims Have Personal Jurisdiction Because They Originate from A Common Nucleus of Operative Facts................................................................................2

   B. Plaintiffs Have Standing to Seek Injunctive Relief Because They Face a Threat of Future Harm ......................................................................................................4

   C. Plaintiffs Have Alleged Warranty Claims Because Defendant's Trademarks Do Not Bar Warranty  Claims and Pre-Suit Notice is Properly Pled................................................6

        1.  Plaintiffs Have Alleged State Warranty Claims............................................6

        2.  HTC's Trademark Theory Fails to Persuade................................................8

        3.  Pre-Suit Notice Is Properly Pled for Multiple Reasons................................11

   D.  Plaintiffs State a Claim Under the Magnuson-Moss Warranty Act .........................13

   E. Plaintiffs Have Alleged Claims for Fraud and Violations of the UTPCPL and   MCPA Because Plaintiffs Have Alleged Facts Demonstrating False, Deceptive, and Misleading Conduct While Also Showing Justifiable Reliance.................................................14

        1.  Plaintiffs Allege Facts to Demonstrate HTC's False and Misleading Actions and Plead Justifiable Reliance................................................................................17

        2.  Plaintiffs Allege At Least Two Clear Actionable Losses..........................22

   F. Economic Loss and Gist-Of-The-Action Doctrine Do Not Bar The Misrepresentation Claims .........................................................................................................23

   G. Lisowski Properly Alleges Unjust Enrichment .....................................................24

III.  CONCLUSION...................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004)..................................................................................... 3

*Allen v. ConAgra Foods, Inc.*,
    No. 2018 WL 6460451 (N.D. Cal. Dec. 10, 2018), on reconsideration,
    2019 WL 5191009 (N.D. Cal. Oct. 15, 2019)............................................................. 3

*Am. Fed'n of State Cty. & Mun. Employees v. Ortho-McNeil-Janssen Pharm., Inc.*,
    No. 08-CV-5904, 2010 WL 891150 (E.D. Pa. Mar. 11, 2010)........................... 12, 13

*Angstrom Indus. Grp., LLC v. Blume Honey Water*,
    No. 2:18-CV-01210, 2019 WL 316741 (W.D. Pa. Jan. 24, 2019)........................... 25

*Bednarski v. Hideout Homes & Realty, Inc.*,
    709 F. Supp. 90 (M.D. Pa. 1988)............................................................................. 11

*Boyd v. TTI Floorcare N. Am.*,
    230 F. Supp. 3d 1266 (N.D. Ala. 2011), aff'd sub nom. *Green v. Bissell Homecare Inc.*, 476 F. App'x 238 (11th Cir. 2012).................................................................. 8

*Bral Corp. v. Johnstown Am. Corp.*,
    919 F. Supp. 2d 599 (W.D. Pa. 2013)..................................................................... 25

*Brazil v. Dole Packaged Foods, LLC*,
    660 F. App'x 531 (9th Cir. 2016) ............................................................................ 18

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008)................................................................................. 14

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956, cert. denied, 139 S. Ct. 640, 202 L. Ed. 2d 492 (9th Cir 2018) ..................... 4, 5

*Dittman v. UPMC*,
    196 A.3d 1036 (Pa. 2018) ....................................................................................... 24

*Dixon v. Nw. Mut.*,
    146 A.3d 780 (Pa. Super. Ct. 2016) ........................................................................ 16

*Donachy v. Intrawest U.S. Holdings*, Inc.,
    No. CIV.A. 10-4038 RMB, 2012 WL 869007 (D.N.J. Mar. 14, 2012).................................. 15

*Dwoskin v. Bank of Am., N.A.*,

850 F. Supp. 2d 557 (D. Md. 2012) ............................................................... 25

*Fleisher v. Fiber Composites, LLC*,
No. CIV.A. 12-1326, 2012 WL 5381381 (E.D. Pa. Nov. 2, 2012) ........................................... 8

*Franklin Fueling Sys., Inc. v. Veeder–Root Co.*,
2009 WL 2462505 (E.D.Cal. 2009) ............................................................... 22

*Gernhart v. Specialized Loan Servicing LLC*,
No. CV 18-2296, 2019 WL 1255053 (E.D. Pa. Mar. 18, 2019) ............................................. 24

*Goleman v. York Int'l Corp.*,
No. CIV.A. 11-1328, 2011 WL 3330423 (E.D. Pa. Aug. 3, 2011) ......................................... 15

*Gonzalez v. Pepsico, Inc.*,
489 F. Supp. 2d 1233 (D. Kan. 2007) ............................................................ 22

*Gross v. Stryker Corp.*,
858 F. Supp. 2d 466 (W.D. Pa. 2012) .............................................................. 7

*Hunt v. United States Tobacco Company*,
538 F.3d 217 (3d Cir. 2008) .................................................................. 17

*In re Able Labs. Sec. Litig.*,
2008 WL 1967509 (D.N.J. Mar. 24, 2008) ......................................................... 15

*In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig.*,
82 F. Supp. 3d 608 (D.N.J. 2015) ............................................................... 15

*In re Budge Mfg. Co., Inc.*,
857 F.2d 773 (Fed. Cir. 1988) ................................................................. 10

*In re DNI Holdings Ltd.*,
77 U.S.P.Q.2d 1435, 2005 WL 3492365 (T.T.A.B. 2005) ............................................... 10

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab. Litig.*,
903 F.3d 278 (3d Cir 2018) .................................................................. 4, 5

*In re Milo's Dog Treats Consol. Cases*,
9 F. Supp. 3d 523 (W.D. Pa. 2014) ........................................................... 21, 22

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
311 F.3d 198 (3d Cir. 2002) .................................................................. 15

*Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*,
19 F.3d 125 (3d Cir. 1994) ................................................................... 16

*Jou v. Kimberly-Clark Corp,*
    2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ........................................................ 19

*Kerr v. State Farm Mut. Auto. Ins. Co.*,
    No. CV 18-309, 2018 WL 5809989 (W.D. Pa. Nov. 6, 2018) ............................... 23

*Landau v. Viridian Energy PA LLC*,
    223 F. Supp. 3d 401 (E.D. Pa. 2016) ................................................................... 23

*Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*,
    171 F.3d 818 (3d Cir. 1999).................................................................................... 8

*Martin v. Ford Motor Co.*,
    765 F. Supp. 2d 673 (E.D. Pa. 2011) ............................................................ 11, 12

*New Berry, Inc. v. Manitoba Corp.*,
    No. 2:18-CV-01528-MJH, 2019 WL 452493 (W.D. Pa. Feb. 5, 2019)................... 24

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*,
    290 F.3d 578 (3d Cir. 2002)................................................................................. 17

*Petrosino v. Stearn's Prods., Inc.*,
    2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ...................................................... 21

*Robinson v. Hot Grabba Leaf, LLC*,
    2019 WL 1915759 (T.T.A.B. 2019) ...................................................................... 10

*Robinson v. Penn Cent. Co.*,
    484 F.2d 553 (3d Cir. 1973)................................................................................... 2

*Samuel-Bassett v. Kia Motors Am., Inc.*,
    34 A.3d 1 (Pa. 2011) ..................................................................................... 11, 13

*Schimmer v. Jaguar Cars, Inc.*,
    384 F.3d 402 (7th Cir. 2004)................................................................................ 14

*Shank v. Presidio Brands, Inc.*,
    2018 WL 510169 (N.D. Cal. Jan. 23, 2018) ........................................................ 19

*Smith-Brown v. Ulta Beauty, Inc.*
    No. 18 C 610, 2019 WL 932022(N.D. Ill. Feb. 26, 2019) ....................................... 5

*Stiffel Co. v. Westwood Lighting Group*,
    658 F.Supp. 1103 (D.N.J.1987) .......................................................................... 16

*Suarez v. California Nat. Living, Inc.*,
    No. 17 CV 9847 (VB), 2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) ..................................... 21

*Techinomics, Inc. v. Forest Power & Energy Holding, Inc.*,
    No. 2:16-1859, 2017 WL 2536969 (W.D. Pa. May 11, 2017) ................................ 25

*Tinius Olsen Testing Mach. Co. v. Wolf Co.*,
    146 A. 541 (Pa. 1929) ...................................................................... 13

*Toy v. Metro. Life Ins. Co.*,
    928 A.2d 186 (Pa. 2007) .................................................................. 18

*United Mine Workers v. Gibbs*,
    383 U.S. 726 (1966) ........................................................................ 2

*Vanalt Elec. Const. Inc. v. Selco Mfg. Corp.*,
    233 F. App'x 105 (3d Cir. 2007) ..................................................... 13

*Williams v. Gerber Products*,
    552 F.3d 934 (9th Cir. 2008) .......................................................... 18

**STATUTES**

13 Pa.C.S. § 2312 (a)(2) .......................................................................... 8

13 Pa.C.S. § 2313 (a)(1) .......................................................................... 9

13 Pa.C.S. § 2313 (b) .............................................................................. 9

15 U.S.C. § 2301(6)(A) ......................................................................... 17

15 U.S.C. § 2301(1) ............................................................................... 16

**TREATISES**

3 McCarthy on Trademarks and Unfair Competition § 19:65 (5th ed.) ...................................... 12

**REGULATIONS**

40 Fed. Reg. 25721, 25722 (1975) ...................................................... 16, 17

75 Fed. Reg. 63552, 63586 (Oct. 15, 2010) ............................................. 22

Plaintiffs Christopher Lisowski and Robert Garner respectfully submit this opposition to the Motion to Dismiss Plaintiffs' Amended Complaint filed by Defendant Henry Thayer Company, Inc. ("HTC").

## I.        INTRODUCTION

This is a simple case. Plaintiffs allege that HTC manufactures, advertises and sells an array of products as "Natural," "Natural Remedies," and "preservative-free." Amended Complaint ("A.C."), ¶ 1-8. The front label on each of each item prominently reinforces these claims. *Id.* at ¶ 73-77. While HTC sells many different products with these representations, they all share one common feature. They fail to conform to these representations because the products contain several synthetic, unnatural ingredients and preservatives including phenoxyethanol, sodium benzoate, potassium sorbate, polysorbate-20, and ascorbic acid. *Id.* at ¶ 24, 27.

Defendant's arguments for dismissal fall into seven general categories. First, HTC claims that personal jurisdiction does not exist for Garner's claims, but this fails because all of the factors for pendent personal jurisdiction exist. Simply, it is in HTC's interest to allow all of the claims to be heard before this Court rather than fighting a two-front war over similar issues in neighboring states. Second, HTC claims that Plaintiffs lack standing for injunctive relief, but this too fails, because the Amended Complaint properly alleges future harm. Third, HTC claims that the warranty claims fail, and in support of this, HTC presents a novel trademark defense that fails to persuade for multiple reasons. Additionally, HTC attacks the pre-suit notice despite receiving notice in two distinct formats. Fourth, HTC asserts that its false labeling and marketing representations are not warranties under the MMWA, but the representations are warranties and supported by an underlying state warranty claim.  Fifth, HTC presents a buffet of theories in an attempt to confuse and distract. Plaintiffs, on the other hand, support their assertions with facts,

1

law, and studies supporting their claims of HTC's deceptive behavior. Sixth, HTC argues that the economic loss doctrine and gist of the action bar all fraud and misrepresentation claims. In this instance, they are partially correct but fail on the other claims. Seventh, HTC argues that Lisowski is barred from asserting a claim for unjust enrichment. This too fails.

The key to navigating this array of arguments is to remember that this is a simple case. A simple case where Plaintiffs and other Class members have been deceived and misled by HTC's representations about its products.

## II.        THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS

### A.  Garner's Claims Have Personal Jurisdiction Because They Originate from A Common Nucleus of Operative Facts

Plaintiffs agree that no general jurisdiction exists over HTC in Pennsylvania. However, specific jurisdiction exists over Lisowski's claims, and this is not disputed by HTC. Because Garner's claims arise from the same "common nucleus of operative facts," and judicial economy will be preserved, piecemeal litigation will be avoided, and the defendant will not be burdened, pendent personal jurisdiction allows Garner's claims to be heard before the Court.

Garner's claims can be properly heard in this court. While allowance is discretionary, all of the factors for pendent personal jurisdiction exist. "[T]he Supreme Court recognized that a discretionary approach should be taken in considering whether to entertain pendent claims. Justification for entertaining such claims ". . . lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims . . .."'" 383 U.S. at 726, 86 S.Ct. at 1139. *Robinson v. Penn Cent. Co.*, 484 F.2d 553, 555–56 (3d Cir. 1973) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 726 (1966)).

Building upon the landmark *Robinson* opinion, other courts have summarized it, "Under this doctrine, a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citing *Robinson v. Penn Cent. Co.*, 484 F.2d 553, 555–56 (3d Cir.1973).

Building upon these rulings, and applying them to nationwide class actions, courts have found personal jurisdiction exists over a non-citizen where it serves judicial economy, avoids piecemeal litigation, and maintains overall convenience of the parties. *Allen v. ConAgra Foods, Inc.*, No. 2018 WL 6460451, at *8 (N.D. Cal. Dec. 10, 2018), on reconsideration, 2019 WL 5191009 (N.D. Cal. Oct. 15, 2019) (reconsideration granted after nationwide class was subsequently not certified; the court described the nationwide class factor as the "the foundation" of the prior grant of jurisdiction). In *Allen*, the court noted that the defendant was already present in the court to defend resident plaintiff's claims, and because it was a nationwide class action, the additional burden to the defendant was only *de minimis. Id.*

Here, all of these factors are present. First, Plaintiffs filed this action on behalf of a nationwide class. Second, it supports judicial economy by saving courts from the administrative burden of multiple cases. Third, it avoids piecemeal litigation by avoiding the creation of two overlapping nationwide class actions in neighboring states. Fourth, allowing Garner's claims to be heard in this court presents no additional burden to HTC because HTC is already defending Lisowski's claims which arise from "a common nucleus of operative facts." Any burden, ever so slight, would be *de minimis*. In fact, handling all of the claims in a single action, in a single court,

3

would benefit HTC by not having to spend additional resources defending two actions, in two different courts, located in two different states.

### B. Plaintiffs Have Standing to Seek Injunctive Relief Because They Face a Threat of Future Harm

HTC argues that Plaintiffs lack standing to seek injunctive relief because "Plaintiffs cannot plausibly allege a likelihood of future harm." MTD at ¶ 10. To assert this argument, HTC relies heavily on *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278 (3d Cir 2018). In *Johnson & Johnson*, the Third Circuit analyzed a New Jersey district court's application of California consumer protection laws related to the deceptive marketing of baby powder. Because she knew of the health risks, the court rejected the plaintiff's injunction claim because it found it unlikely that the plaintiff would purchase baby powder in the future.

But that is not always the case under both Article III and the California laws at issue in *Johnson & Johnson*. In *Davidson v. Kimberly-Clark Corp.*, the Ninth Circuit ruled that standing requires a plaintiff to show that "she faces an imminent or actual threat of future harm caused by [defendant's] allegedly false advertising." 889 F.3d 956, 970, cert. denied, 139 S. Ct. 640, 202 L. Ed. 2d 492 (9th Cir 2018). The court defined how a consumer may face "an imminent threat or actual threat of future harm. "We hold that Davidson properly alleged that she faces a threat of imminent or actual harm by not being able to rely on Kimberly–Clark's labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief." *Id.* at 967. The Ninth Circuit concluded:

> Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.

4

*Id.* at 969–70.

Subsequent to *Davidson*, courts in different circuits have adopted the same sound reasoning concerning future harm. *See, e.g.*, *Smith-Brown v. Ulta Beauty, Inc.* No. 18 C 610, 2019 WL 932022, at *14 (N.D. Ill. Feb. 26, 2019) (plaintiff alleged sufficient facts to assert a claim for injunctive relief where she alleged that she face a "threat of future harm" because "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to").

In *Johnson and Johnson*, the Third Circuit focused on the safety of the talc. Because baby powder is composed almost entirely from talc, the core product is "tainted" by the safety concern. In that instance, it might seem irrational for a consumer to purchase the harmful product because the consumer is already on notice. Here, the underlying basic product, without the addition of synthetic ingredients, would likely be free of preservatives and synthetic ingredients. One product, for example, included in the present dispute involves HTC's witch hazel products. While witch hazel may be natural in isolation, it is the addition of synthetic and unnatural chemicals in the purported "natural" composition of the product which creates the case before the court. Further, a dry mouth spray, or lozenge, can exist free of preservatives and synthetic ingredients. Without corrective measures, forcing the Defendant to conform to its labeling and marketing, the Defendant could continue to make false and misleading representations to consumers. Even with prior knowledge of certain synthetic chemicals in the products, Plaintiffs, like all rational consumers, could easily be tricked once again by the defendant simply swapping mere synonyms.[1] Unlike talc-based baby powder, these additives need not be present in the

---

[1] For example, without forcing HTC to adhere to its "natural" representations, the use of Phenoxyethanol could be "changed" in the consumers eye by simply using one of the following

product for it to exist. A natural remedy can exist with solely natural ingredients, whereas the talc-based baby powder cannot exist without the talc.

Likewise, here, Plaintiffs contend that they would like to purchase the products in the future, but will be unable to rely on HTC's advertising and labeling unless HTC changes its composition. A.C. ¶ 63, 64. As a result, Plaintiffs' future purchase is not only contingent on HTC accurately labeling its products, but they have also asked the Court to require HTC to undertake a corrective labeling and marketing campaign. A.C. ¶ 165. Accordingly, because Plaintiffs will not purchase the Products although they would like to, and Plaintiffs have expressed a current desire to purchase the products but lack a way to determine whether the representations on the packaging are true, Plaintiff has established standing to seek injunctive relief.

### C. Plaintiffs Have Alleged Warranty Claims Because Defendant's Trademarks Do Not Bar Warranty Claims and Pre-Suit Notice is Properly Pled

#### 1. Plaintiffs Have Alleged State Warranty Claims

Plaintiffs clearly allege a claim for breach of express warranty. Under Pennsylvania law, a seller, such as HTC, creates an express warranty through "[a]ny description of the goods which is made part of the basis of the bargain…" 13 Pa.C.S. § 2312 (a)(2). Such a description "creates an express warranty that the goods shall conform to the description." *Id.* In addition, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 13 Pa.C.S. § 2313 (a)(1). Moreover, "[a]n express warranty must

---

litany of synonyms for the chemical: 1-Hydroxy-2-phenoxyethane, 2-hydroxyethyl phenyl ether, Arosol, b-Hydroxyethyl phenyl ether, beta-phenoxyethyl alcohol, dowanol ep, dowanol eph, emeressence 1160, emery 6705, Ethylene glycol mono phenyl ether.

be directed at consumers in order to induce purchases of the product." *Gross v. Stryker Corp.*, 858 F. Supp. 2d 4666, 501 (W.D. Pa. 2012) (quotations, citation and footnote omitted). Pennsylvania law carefully distinguishes an express warranty from an opinion or affirmation of value from the seller. *See* 13 Pa.C.S. § 2313 (b) ("It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the opinion of the seller or commendation of the goods does not create a warranty.")

Plaintiffs satisfy these elements by pleading that the labeling of HTC's products and statements and advertisements on HTC's website constitute affirmations of fact (or descriptions) that were part of the basis of the bargain between the parties, and as result, created express warranties. A.C. ¶ 122-131. For example, HTC's packaging and representations made affirmations of fact (and descriptions) that its products are "natural," "natural remedies," "safe for babies and children," "Preservative-Free," "natural, gentile skin astringent," create a "natural glow," offer "natural healing powers," and consist of "naturally sourced ingredients" and "naturally occurring ingredients." A.C. ¶ 63-64, 73-74, 76, 82-83, 122. By including these statements on its labeling and other marketing materials, HTC directed these statements at consumers like the Plaintiffs.

HTC's products did not conform to these natural representations; rather HTC's products contain synthetic and unnatural chemicals. A.C. ¶ 23-25, 27-31, 115, 127. In addition, HTC's dry mouth products contain synthetic preservatives despite being labeled and marketed as natural and preservative-free. A.C. ¶ 27-28, 116, 128. Accordingly, such misrepresentations are enough to form express warranties. Plaintiffs believed in these representations and relied on them in

purchasing HTC's products. A.C. ¶ 63-64. Plaintiffs would not have purchased HTC's products or paid as much as they did if they had been aware that many of the representations contained in HTC's labeling and marketing were false. A.C. ¶ 54, 63-64, 131.  HTC has been aware of this defect but has chosen not to cure it, and as a result, Plaintiffs and Class members have been damaged. A.C. ¶ 26, 79, 117-18, 129-30. Accordingly, Plaintiffs' claim for breach of express warranty is well pled.[2]

### 2.  HTC's Trademark Theory Fails to Persuade

HTC attempts to persuade the court with a novel theory to defend Plaintiffs' well pled express warranty claim. HTC claims that its registered trademarks impede any breach claim because, as they theorize, a trademark cannot create an express warranty. Interestingly, rather than disputing the other warranties presented in the complaint, this theory is only presented as a defense for the breach of the "Natural Remedies" warranty. Because this defense only applies to "Natural Remedies," HTC concedes that all other warranty claims present in the Amended Complaint are properly pled.

In support of its theory, HTC presents a few cases that are easily distinguished from the case *sub judice*. HTC first relies upon *Boyd v. TTI Floorcare N. Am.*, which involved two

---

[2] *See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 824 (3d Cir. 1999) (holding that "an express warranty is created when a promise is made by a seller to a buyer which relates to a good and becomes part of the basis of the bargain[]") (citation omitted); *see also Fleisher v. Fiber Composites, LLC*, No. CIV.A. 12-1326, 2012 WL 5381381, at *4 (E.D. Pa. Nov. 2, 2012) (concluding that representations in promotional materials that relate to the quality and characteristics of decking may be viewed as express warranties). The Third Circuit has also held a promise (or affirmation of fact) "is presumed to be a part of the basis of the bargain . . . once the buyer has become aware of the affirmation of fact or promise...." Liberty Lincoln-Mercury, Inc., 171 F.3d at 825 (quotations and citation omitted). "The defendant may rebut this presumption by clear affirmative proof ... that the buyer knew that the affirmation of fact or promise was untrue." *Id.* (quotations, citation, and footnote omitted).

trademarks, SteamVac and PowerSteamer, concerning products that used hot water instead of

steam. While the court in that case found that no warranty was created by these trademarks, the

court relied on the fact that the plaintiffs failed to "allege and apparently concede that the

advertising and packaging associated with Defendants' products make no mention of steam nor

any claims to use or produce steam." *Boyd v. TTI Floorcare N. Am.*, 230 F. Supp. 3d 1266, 1278

(N.D. Ala. 2011). These two fanciful marks, without any disclaimers or advertising concerning

steam, are far from the case before the court. Here, the HTC's trademark is descriptive rather

than fanciful, and HTC actively markets and advertises the natural composition of its products.

A.C. ¶ 5, 12-16. HTC next relies on a series of cases that are equally unpersuasive. One case

involves the term universal remote, another involves cereal, and the final one involves a car

transmission. Regardless of the product, they all fail because the holdings are not applicable to

the case before the Court.[3]

Additionally, a trademark does not act as a shield when the mark, or a portion of the

mark, is found to be misdescriptive. *In re Budge Mfg. Co., Inc.*, 857 F.2d 773, 774 (Fed. Cir.

---

[3] HTC first relies upon the *Hertzog* case, an unpublished Washington state case, which it believes supports its trade name theory. However, the reason the case failed had little to do with the trade name. In its ruling, the court focused on the plaintiff's failure to offer any authority or evidence to support his contention. This is a far cry from how HTC portrays the case. Next, in *McKinnis*, the court found that the "fanciful" spelling of fruit in the trademark FROOT LOOPS put consumers on notice that it was not a description of the ingredients. *McKinnis v. Kellogg USA*, No. CV07-2611ABC(RCX), 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007). Here, there is no fanciful spelling alerting a consumer that the company is exhibiting creative license with its descriptions. Another example is the leap that HTC makes in its application of *Szajna v. Gen. Motors Corp.*, 503 N.E.2d 760, 771 (Ill. 1986). While the *Szajna* court held that the trade name in question failed to establish an express warranty, the facts are wholly different than the present case. In the cited case, the automaker used the same transmission in two different vehicles that it made and marketed under two fanciful trade names. The plaintiff in that case alleged that the warranty was breached because he did not receive the proper transmission rather than the description of its composition. Here, the issue is not concerning the "Thayer's" aspect of the mark, instead the focus is on the "Natural Remedies" portion of the mark. The paradigm presented in *Szajina* only could fit if the consumer is disputing "Thayer's" aspect of the mark.

1988). In *Budge*, the court held that the company's mark, LOVEE LAMB, was deceptive because it consisted of synthetic fibers despite the trademark falsely implying that it was made from natural lamb or sheep skins. *Id.* at 776.

Nevertheless, even if the court were to follow this ambitious theory, HTC fails to show that its trademarks are covered by its theory's protections. In each of its three registered trademarks, HTC disclaims the exclusive right to use "NATURAL REMEDIES."[4] *See* Exhibit A.  A disclaimer of a part of a composite is a concession that that part is descriptive. § 19:65., 3 McCarthy on Trademarks and Unfair Competition § 19:65 (5th ed.) citing *In re DNI Holdings Ltd.*, 77 U.S.P.Q.2d 1435, 2005 WL 3492365 (T.T.A.B. 2005) ("[I]t has long been held that the disclaimer of a term constitutes an admission of the merely descriptive nature of that term, as applied to the goods or services in connection with which it is registered, and an acknowledgement of the lack of an exclusive right therein at the time of the disclaimer"); *Robinson v. Hot Grabba Leaf, LLC*, 2019 WL 1915759, *7 (T.T.A.B. 2019) (Disclaimer of a part of a composite mark is an admission that the term is merely descriptive of the goods or services).  Because Thayer's Natural Remedies is a composite mark, and HTC has disclaimed the use of Natural Remedies, HTC has conceded that "Natural Remedies" is merely descriptive.

---

[4] In the Motion to Dismiss, HTC attached Exhibit 1 concerning its registered trademarks. Because they are directly referenced and attached in the motion, the two attached exhibits by Plaintiffs are proper at this stage. Exhibit B notes that this is not the first attempt by HTC to register a trademark with natural representations. In 2008, it filed an intent to use application for the mark C'EST NATUREL. Because this foreign phrase translates to "IT IS NATURAL," the USPTO required HTC to amend its filing to disclaim the word NATUREL "because it merely describes a characteristic of the goods." HTC accepted this amendment and disclaimed the descriptive word. *See* Exhibit B.

Therefore, even if the court followed HTC's theory concerning this issue, the mark in question would not be encompassed by this theory.[5]

### 3.  Pre-Suit Notice Is Properly Pled for Multiple Reasons

#### a.  Pre-Suit Notice Was Sufficient Because Class Members Actively Notified HTC of The Breach

There is debate within this circuit concerning Pennsylvania's notice requirement and the specifics required in the context of a class action. In fact, the Pennsylvania Supreme Court has stated that these issues are "neither 'well-settled' nor self-evident" *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 26 (Pa. 2011). HTC relies upon a sample of cases which carefully omit conflicting law in order to make it appear that its stance is "well-settled." It isn't. Some courts have found that the filing of a lawsuit satisfies the pre-suit notice requirement, while other courts have found notice by unnamed class members to satisfy the pre-suit notice requirement. *Bednarski v. Hideout Homes & Realty, Inc.*, 709 F. Supp. 90, 94 (M.D. Pa. 1988) (finding filing of lawsuit satisfied 2607's notice requirement) *and Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 683 (E.D. Pa. 2011) (finding complaints from unnamed class members satisfied pre-suit notice in class action). While not mentioned by HTC, Plaintiffs find the *Martin* ruling tailored to the facts before the Court.

The Court in *Martin* found notice proper where class members actively notified the defendant of the specific issue. In distinguishing *AFSCME*, the court relied on the fact "that class members took the affirmative step of "notifying" Defendant of the breach by complaining "about

_____

[5] Further, even if the court were to subscribe to HTC's theory, and discounting its disclaimed descriptive elements, the theory would still only impede an express warranty claim for only a portion of the statutory period. Defendant includes four trademarks with the most recent registration date of February 18, 2020; one of these four is still classified as 1B ("intent to use") which was filed on January 10, 2020.

this very issue *to* Defendant." (Id. at ¶ 6 (emphasis added).) This "notification" allowed

Defendant, as the seller, the opportunity to cure prior to Plaintiff initiating the lawsuit." *Martin v.*

*Ford Motor Co.*, 765 F. Supp. 2d 673, 683 (E.D. Pa. 2011). Similarly, here, the Amended

Complaint states that HTC was notified of "these issues by numerous public complaints and

inquiries." A.C. ¶ 117, 130. In fact, Plaintiffs include one such complaint in their filing. A.C. ¶

79. Like *Martin*, there is no doubt that notification was sent *to* HTC. In fact, there is no doubt

that notification was *received by* HTC because defendant actively responds to these complaints

on its social media and sales platform. *Id*. This screenshot shows an agent of HTC responding to

the inquiry regarding Phenoxyethanol and actively admitting that HTC failed to disclose its

inclusion "for many years." *Id.* The *Martin* court based its decision on notice being provided *to*

the defendant, here, Plaintiffs improve upon this standard by alleging that it was not only

provided but also received by HTC.

Simply, pre-suit notice is satisfied by numerous complaints, over the course of many

years, on multiple platforms, knowingly received and responded to by Defendant that continually

fail to resolve the underlying breach.

### b. The Written Notice in the Letter, While Sufficient On Its Own, Was Supplemental to the Pre-Existing Notice

Even if the standard presented in *Martin* did not exist, pre-suit notice is still properly pled

by the notification letter. The letter, existing as supplemental notice to the pre-existing notice

previously discussed, stands on its own as properly pled pre-suit notice. Every single case cited

by Defendant on this issue involves a scenario where no written notice was provided - not a

scenario where adequacy is attacked. This is important because the court in *AFSCME* found

"Plaintiffs were not required to allege in the Complaint that the notification occurred in any

substantial form (such as a letter or a formal demand), as the 'reasonableness' of the notice is a

factual matter left for the jury to resolve. However, Plaintiffs needed to allege, at a minimum, that they notified Defendants in some manner 'or be barred from any remedy.'" *Am. Fed'n of State Cty. & Mun. Employees v. Ortho-McNeil-Janssen Pharm., Inc.*, No. 08-CV-5904, 2010 WL 891150, at *7 (E.D. Pa. Mar. 11, 2010). Here, Plaintiffs have alleged that they provided timely notice. A.C. ¶ 118, 130.

Further, HTC confuses the pre-suit requirements of 2607. Rather than focusing on the reasonableness of the notice, which concerns only the amount of time it took purchaser to notify, HTC believes that an opportunity to cure is the key to reasonableness. This is not the case. The statute does not define "what constitutes reasonable notice in the context of a class action. Nor does the statute explicitly require the consumer to provide an opportunity to cure before filing suit for breach of warranty." *Samuel-Bassett v. Kia Motors Am., Inc.*, 613 Pa. 371, 415, 34 A.3d 1, 26 (2011) *and Vanalt Elec. Const. Inc. v. Selco Mfg. Corp.*, 233 F. App'x 105, 110 (3d Cir. 2007) (the buyer is not required "to allow the seller additional time to cure the defect). Understanding that the proper question concerns reasonable time rather than opportunity to cure is essential to the analysis because "a reasonable time is a question of fact for the jury." *Tinius Olsen Testing Mach. Co. v. Wolf Co.*, 146 A. 541, 542 (Pa. 1929). Further, disputes concerning the adequacy of notice is a factual matter resolved by the jury. *Am. Fed'n of State Cty. & Mun. Employees v. Ortho-McNeil-Janssen Pharm., Inc.*, No. 08-CV-5904, 2010 WL 891150, at *7 (E.D. Pa. Mar. 11, 2010).

Even if the court disagrees with the *Martin* court, Plaintiffs written notice satisfies the notice requirements, prior to the filing of the Amended Complaint, and any dispute thereof is a question of fact best held for the jury.

**D.    Plaintiffs State a Claim Under the Magnuson-Moss Warranty Act**

Plaintiffs have alleged warranty claims under state law. The MMWA "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action." *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004). Further, Plaintiffs agree with HTC that this Court's disposition of the state law warranty claims determines the disposition of the MMWA claims. C*lemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (MMWA claims "hinge on the state law warranty claims"). Because Plaintiffs have alleged viable state law warranty claims, their MMWA claims must not be dismissed.

Also, Plaintiffs have alleged a written warranty under the MMWA. HTC, however, argues that the MMWA claim would also fail because the Amended Complaint does not allege a "written warranty" under the MMWA. MTD at 14-15. Defendant is wrong. The MMWA broadly defines covered consumer products as "any tangible personal property . . . normally used for personal, family or household purposes…." 15 U.S.C. §2301(1). Moreover, the Federal Trade Commission, which is vested with rulemaking authority under the MMWA, has made clear that consumer products covered under the MMWA include products used for "personal, family, or household purposes...." 40 Fed. Reg. 25721, 25722 (1975).

Defendant's personal and household products are consumer products covered under the MMWA. 40 Fed. Reg. 25721. Moreover, the representations made by Defendant with respect to the "natural," "naturally sourced," and "preservative-free" contents of its products constitute written warranties under the MMWA insofar as they "relate to the nature of the material" and make promises and affirmations of fact as to the quality and contents of the product — that the products are "natural" and "preservative-free." 15 U.S.C. § 2301(6)(A).

E.     **Plaintiffs Have Alleged Claims for Fraud and Violations of the UTPCPL and MCPA Because Plaintiffs Have Alleged Facts Demonstrating False, Deceptive, and Misleading Conduct While Also Showing Justifiable Reliance**

As a threshold matter, while Plaintiffs' UTPCPL claim implicates fraud, it is not based solely on fraudulent conduct. For example, Plaintiffs allege that HTC engaged in deceptive conduct which misleads reasonable consumers that its products consist solely of natural ingredients. A.C. ¶ 78. Another example, in contrast, Plaintiffs allege that a subset of these products are falsely represented as preservative-free because they contain multiple preservatives. A.C. ¶ 74.

Since not all these practices implicate fraud and to the extent that Plaintiffs' UTPCPL claim is based on them, the UTPCPL claim cannot be dismissed under Rule 9(b). *See Goleman v. York Int'l Corp.*, No. CIV.A. 11-1328, 2011 WL 3330423, at *8 (E.D. Pa. Aug. 3, 2011) ("A plaintiff alleging deceptive conduct may proceed without satisfying the particularity requirement of Federal Rule of Civil Procedure 9(b)."). The same logic applies to Plaintiffs' negligent misrepresentation claim. *See Donachy v. Intrawest U.S. Holdings*, Inc., No. CIV.A. 10-4038 RMB, 2012 WL 869007, at *5 (D.N.J. Mar. 14, 2012) (Where a "negligent misrepresentation claim is specifically alleged as a separate claim, it is not subject to Rule 9(b)'s heightened pleading requirements …"). Rule 9(b) only requires that "Plaintiffs inject sufficient particularity into their fraud [or mistake] allegations to put Defendant on notice as to the specific misconduct at issue." *In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608, 621 (D.N.J. 2015). Rule 9(b) does not require "[e]very material detail of the fraud such as date, location, and time . . ." *In re Able Labs. Sec. Litig.*, 2008 WL 1967509, at *11 (D.N.J. Mar. 24, 2008) (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)).

Plaintiffs' pleading meets these requirements. Plaintiffs plead with particularity three distinct ways that HTC has violated the respective consumer protection acts. First, despite representing to consumers that its products are natural, HTC knowingly includes synthetic and

unnatural ingredients in its products. Second, building on the first deceptive act, HTC also for a period of time carefully omitted certain synthetic ingredients from its labels. A.C. ¶ 7, 101. Third, despite representing to consumers that its dry mouth products are natural and preservative-free, HTC's products actually include multiple synthetic preservatives. A.C. ¶ 21-25, 69-76, 91, 140-44, 161. HTC should not have represented its products as "natural" and "preservative-free," but it intentionally does to "trick consumers into paying a premium price over a competitor's product." A.C. ¶ 2. In sum, Plaintiffs' UTPCPL and MCPA claims are properly pled. Moreover, Lisowski outlines the four provisions of the UTPCPL that prohibit HTC's actions. A.C. ¶ 90. Additionally, Garner outlines all the necessary provisions of the MCPA. A.C. ¶ 160.

The minimum standard required to establish deceptive conduct involves any conduct "which creates a likelihood of confusion or of misunderstanding can constitute a cognizable claim" under the UTPCPL. *Dixon v. Nw. Mut.*, 146 A.3d 780, 790 (Pa. Super. Ct. 2016). The Amended Complaint cites an economic study which found, "most people – 87% of our sample – do appear to attribute meaning to "natural" labelling. The vast majority of respondents stated a belief that "natural" signals no artificial flavors, colors and/or preservatives." A.C. ¶ 21 n.1. In deceptive advertising cases, courts within the Third Circuit have found that when just 20% of consumers are misled by an advertisement, this amount is sufficient to support that "a substantial or significant number of consumers who are misled." *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 134 n.14 (3d Cir. 1994) and *Stiffel Co. v. Westwood Lighting Group*, 658 F.Supp. 1103, 1114 (D.N.J.1987). Later, the Third Circuit held that "we believe that survey evidence demonstrating that 15% of the respondents were misled by the [product] name is sufficient to establish the 'actual deception or at least a tendency to deceive a substantial portion of the intended audience,' *Novartis Consumer Health,*

*Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 594 (3d Cir. 2002).  At a

minimum, Plaintiffs have alleged a misrepresentation based on HTC's "natural" marketing.

### 1. Plaintiffs Allege Facts to Demonstrate HTC's False and Misleading Actions and Plead Justifiable Reliance

HTC's contention that Plaintiffs have not alleged justifiable reliance is not supported by

the facts alleged in the Amended Complaint. Plaintiffs clearly allege they justifiably relied upon

HTC's wrongful conduct, representations and omissions, and suffered harm as a result of this

reliance. A.C. ¶ 11, 50, 63-64. Plaintiffs pled that HTC's labeling and marketing materials

intentionally made false and misleading statements about its products "natural" and

"preservative-free" characteristics. A.C. ¶ 63-64. However, HTC failed to disclose that its

products do not conform to these representations by using multiple synthetic and unnatural

preservatives in almost every product it manufactures, markets, and sells. Plaintiffs justifiably

relied on HTC's false statements and omissions in deciding to purchase HTC's products, and

HTC intended such reliance because it was crucial to commanding a premium price.; *see also*

*Hunt v. United States Tobacco Company*, 538 F.3d 217, 221 (3d Cir. 2008) ("where a seller

deceives a potential purchaser as to the nature, quality or origin of a product, it is easy to

understand the purchaser's later claim that the misrepresented information was important to his

purchasing decision"). HTC knew that its claims and omissions were false and misleading, and

therefore, that its products did not meet the standards to which it represented to consumers.

### a. Whether the Labeling and Marketing Has the Capacity to Deceive or Confuse Reasonable Consumers Is a Factual Issue Not Susceptible to Resolution on the Pleadings

Not only have Plaintiffs alleged reliance but also they have alleged that the reliance is

reasonable. Plaintiffs note that allegations concerning reliance create a highly factual matter ill-

suited for determination under Rule 12(b)(6). *See Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208

(Pa. 2007) (stating that "justifiable reliance is typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction"). This includes "natural" claims. In *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533-34 (9th Cir. 2016), a case cited by HTC, the Ninth Circuit reversed summary judgement in a "natural" labeling case because it concerned a question of fact concerning whether the reliance was reasonable which could not be resolved at the stage. Accordingly, any argument by HTC that reasonable consumers would not be deceived by its labeling and marketing is not appropriate at this stage.

Against the weight of this authority, HTC appears to argue that no reasonable consumer would be deceived by its labeling and marketing statements. The flaw in all of these arguments is that it requires the Court to resolve a question of fact about how a reasonable consumer would construe the labeling and marketing, which is precisely what many courts forbid. *See, e.g.*, *Williams v. Gerber Products,* 552 F.3d 934, 938-39 (9th Cir. 2008) and *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208 (Pa. 2007). In fact, the challenged statements here (e.g. ""Natural Remedies," "natural," "naturally sourced ingredients" or "preservative-free") are not that different from the statements in Williams that the product was "made with 'fruit juice and other all natural ingredients.'" *Id.* at 936 (quoting labeling). *Williams* demonstrates that the while a defendant can propose one plausible interpretation of the labeling, that alone cannot support dismissal because it is not the *only* plausible interpretation. Further, in *Jou,* the court denied a motion to dismiss claims concerning diapers labeled as "pure & natural." *Jou v. Kimberly-Clark Corp*, 2013 WL 6491158 at *1 (N.D. Cal. Dec. 10, 2013). Like Defendant in this case, the defendants in *Jou* claimed that a reasonable consumer could never be misled by the "pure & natural" representation. The court rejected that argument, holding that "[w]hether a reasonable

consumer would agree with Plaintiffs ('natural' means no non-natural ingredients) or with Defendant ('natural' means at least one natural ingredient among other, possibly non-natural ingredients) or with neither is not a question that can be resolved on a Rule 12(b)(6) motion." *Id.* at *7.

**b.      Defendant's Alternative Interpretations of the Challenged Misrepresentations and Labeling Cannot Support Dismissal**

Defendant offers its own interpretations of the challenged statements and labeling. HTC contends that the Court can conclude, without evidence, that all reasonable consumers share its interpretations. That is wrong. Defendant's marketing materials and labels are replete with statements that the Products are "natural." HTC attempts to distinguish the terms "natural" and "all natural."[6] However, many courts have held that this distinction is premature at this stage of the litigation. *See, e.g.*, *Shank v. Presidio Brands, Inc.*, 2018 WL 510169, *8-9 (N.D. Cal. Jan. 23, 2018). Moreover, the FTC has explicitly warned marketers that the use of the term "natural" may be deceptive:

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. *If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.*

75 Fed. Reg. 63552, 63586 (Oct. 15, 2010) (emphasis added).

Further, HTC claims that Plaintiffs are attempting to misquote and mislead the Court by extracting key information from the marketing and labels. MTD at 18. Once again, that is wrong.[7] HTC notes a litany of terms on the label concerning the products being Alcohol-Free,

---

[6] Although, this too is not a wholly helpful argument for HTC because it represents its products as "all-natural" in some instances. A.C. ¶ 16.

[7] The full text presented by HTC adds little value to the Court's understanding of the misrepresentations present in this case. "Variations in color, clarity, etc." language does not

19

Paraben-Free, Phthalate-Free and Gluten-Free, however, those claims are not at issue in this action and are therefore irrelevant to deceptively marketing products that are not "natural" and "preservative-free." *Id.* Further, HTC mentions that certain ingredients are "Certified Organic Ingredients" which is wholly irrelevant to the claims before the Court; HTC is either confused about its products, or attempting to mislead the Court that the term Organic means "natural." *Id.* Organic does not mean natural.  In total, HTC's arguments that these statements are entirely consistent with the presence of purportedly "unnatural" or "synthetic' ingredients" are completely ridiculous. These arguments are merely "smoke-and-mirrors" reflecting a misconstruction of Plaintiffs' claims and based largely on self-serving and conclusory statements. Further, HTC presents additional arguments in an attempt to convince the Court that its labeling and marketing is not false or misleading. Once again, HTC attempts to use its "trademarks act as a shield" defense, and once again it fails to persuade. MTD at 17.

In HTC's amalgam of arguments, it appears that HTC might be raising a defense that all ingredients are disclosed on the label. MTD at 1. However, this is not true for the entire statutory period. For a period of time, the synthetic ingredient phenoxyethanol was not included in the ingredients. A.C. ¶ 79. Further, even when phenoxyethanol was disclosed in the ingredients section on the back of the label, a reasonable consumer is not expected to have an advanced knowledge of chemistry to know which ingredients are synthetic or preservatives. A.C. ¶ 38-39, 42-43. Simply, there is no legal basis to hold, as a matter of law, that reasonable consumers know what phenoxyethanol, sodium benzoate, potassium sorbate, polysorbate-20 and ascorbic

---

change the natural representations. It doesn't state, for example, "we use many ingredients, including multiple synthetic ingredients, and as a result, each product has variations in color and clarity."

acid are, much less whether they are synthetic or natural. In this regard, from its vague reference

to "disclosed on the product label," Plaintiffs predict that HTC is attempting to take the position

that just because an ingredient is listed by a difficult-to-pronounce name, it must be synthetic.

Once again, this is incorrect. For example, whereas phenoxyethanol is synthetic, dihydrous oxide

and titanium dioxide generally are not (and thus are not the basis for this lawsuit).

HTC asserts that certain representations mentioned in the Amended Complaint are non-

actionable puffery. MTD at 18-19. However, courts have held that disputes involving "natural"

descriptions of products are not mere puffery. *Suarez v. California Nat. Living, Inc.*, No. 17 CV

9847 (VB), 2019 WL 1046662, at *7 (S.D.N.Y. Mar. 5, 2019).[8]

Moreover, in referencing the safety of the products, HTC fails to thoroughly read the

complaint. HTC states, "And, although Plaintiffs allege that certain products are harmful if

consumed in certain combination, they do not allege that they purchased these products or used

them in them such tandem…" MTD at 20. The complaint clearly states that the dry mouth

sprays, in isolation and without combination, contain Sodium Benzoate and Citric Acid, which

when combined can produce Benzene. Similarly, due to the ingredients of the lozenges and

sprays, when they are combined, they present a similar issue. Despite HTC's assertion, Lisowski

---

[8] Further, "[t]he term 'natural' is an affirmative claim about a product's qualities and is, therefore, not 'an exaggeration or overstatement expressed in broad, vague, and commendatory language.'" Petrosino v. Stearn's Prods., Inc., 2018 WL 1614349, at *7 n.6 (S.D.N.Y. Mar. 30, 2018) (citations omitted). A similar view has been adopted and expanded in this district with In re Milo's Dog Treats Consol. Cases, 9 F. Supp. 3d 523, 532 (W.D. Pa. 2014). In Milo's, the court found that certain statements may be puffery in isolation, can "contribute 'to the deceptive context of the packaging as a whole.'" Id. at 541 (citation omitted). "[W]here at least some actionable statements have been pled, a claim cannot be dismissed on the ground that some statements constitute mere puffery." Id. (quoting Franklin Fueling Sys., Inc. v. Veeder–Root Co., 2009 WL 2462505, at *7 (E.D.Cal. 2009). Like Milo's, the disputed statements are not puffery, but even if the Court found them to be puffery, when combined with existing actionable statements, they would contribute to the deceptive context of the labeling and marketing as a whole.

pleads that he purchased dry mouth spray and lozenges. A.C. ¶ 63. Additionally, HTC claims

that Sodium Benzoate and Potassium Sorbate are generally recognized as safe. Even if that is

true, HTC confuses the point.[9]  Despite HTC's attempt to distort facts, make leaps of law, and

omit relevant language, Plaintiffs have properly pled facts showing the representations were

misleading and false, and further, that their reliance was justified.

2.    **Plaintiffs Allege At Least Two Clear Actionable Losses**

Plaintiffs allege facts plausibly demonstrating that they have suffered ascertainable losses

resulting from HTC's deceptive practices. Specifically, Lisowski references two ascertainable

losses. A.C. ¶ 103-105. First, if he knew that he was being deceived, Lisowski states that he

would not have purchased the products. This is a clear, ascertainable loss because Lisowski has

lost the money that he used to purchase the items. Second, he alleges that he relied on the false

and misleading representations, and paid a premium over other products due to these

representations. In that second context, Lisowski has an ascertainable loss in the premium paid.

Similarly, Garner alleges the same two ascertainable losses. A.C. ¶ 162. Courts have recognized

that paying higher prices due to deceptive practices is an ascertainable loss. "[T]he measure of

Landau's loss is the difference between what he paid as a Viridian customer and what he would

have paid had he remained with PECO." *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d

401, 419 (E.D. Pa. 2016). The ascertainability of the loss concerns that a loss is alleged and that

it is quantifiable as shown in *Landau*.

---

[9] Two ingredients, in isolation, may be safe, but when combined, the new compound can create
dangerous outcomes. For example, bleach and vinegar are safe in isolation, but when combined,
dangerous chlorine gas is created. Like bleach and vinegar, Sodium Benzoate and Ascorbic
Acid/Citric Acid can react to produce benzene. *See Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d
1233, 1238 (D. Kan. 2007) ("the FDA reported that when the beverages have been exposed to
heat and light, benzene may form as a result of the interaction between sodium benzoate and
ascorbic acid, citric acid or erythoribic acid").

**F.     Economic Loss and Gist-Of-The-Action Doctrine Do Not Bar The Misrepresentation Claims**

The economic loss and gist-of-the action doctrines do not bar Plaintiffs' fraud and

negligent misrepresentation claims. Plaintiffs plead two types of fraud: fraudulent

misrepresentation and fraudulent inducement. A.C. ¶ 150(f). It appears that HTC is only

attacking the fraudulent misrepresentation. MTD at 21-24.  This Court, was faced with a similar

matter when it rejected the assertion that the economic loss doctrine barred UTPCPL claims. *See*

*Kerr v. State Farm Mut. Auto. Ins. Co.*, No. CV 18-309, 2018 WL 5809989 (W.D. Pa. Nov. 6,

2018). Plaintiffs believe a similar application should apply to the common law misrepresentation

claims. The Pennsylvania Supreme Court's recent decision in *Dittman v. UPMC* significantly

reduces the potential scope of Pennsylvania's economic loss doctrine. 196 A.3d 1036, 1054 (Pa.

2018) (Addressing two of its pertinent cases on the economic loss doctrine, the Pennsylvania

Supreme Court held "[h]aving set forth our decisions in [*BiltRite Contractors, Inc. v. The*

*Architectural Studio*, 866 A.2d 270 (Pa. 2005)] and [*Excavation Techs., Inc. v. Columbia Gas*

*Co. of Pennsylvania*, 985 A.2d 840 (Pa. 2009)], we hold that those cases do not stand for the

proposition that the economic loss doctrine, as applied in Pennsylvania, precludes all negligence

claims seeking solely economic damages."). Rather, "[u]nder Pennsylvania's economic loss

doctrine, recovery for purely pecuniary damages is permissible under a negligence theory[,]

provided that the plaintiff can establish the defendant's breach of a legal duty arising under

common law that is independent of any duty assumed pursuant to contract." *Dittman*, 196 A.3d

at 1038. Under *Dittman*, the key to the Court's analysis is the source of the respective duty. See

*New Berry, Inc. v. Manitoba Corp.*, No. 2:18-CV-01528-MJH, 2019 WL 452493, at *4 (W.D.

Pa. Feb. 5, 2019); see also *Gernhart v. Specialized Loan Servicing LLC*, No. CV 18-2296, 2019

WL 1255053, at *4 (E.D. Pa. Mar. 18, 2019). Here, Plaintiffs have sufficiently alleged that HTC

violated a common law duty that is independent of any contractual duty between the parties. Plaintiffs allege that "[d]iscovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer." A.C. ¶ 38-40, 42-44. Defendant as the manufacturer and seller of the products has a specialized knowledge of chemistry in which consumers rely. Further, "Defendant had a duty to disclose that many ingredients in its Products were not, in fact, natural and preservative free." A.C. ¶ 140.  Garner's fraudulent inducement claim is not barred by the economic loss doctrine. In Maryland, fraudulent inducement is an exception to the economic loss doctrine. *Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 569 (D. Md. 2012). However, HTC is correct that Garner's fraudulent misrepresentation claim should be dismissed under the economic loss doctrine.

Additionally, Plaintiffs negligent misrepresentation and fraud claims are not barred by the gist of the action doctrine. They allege that they would not have purchased the products without the misrepresentations. A.C. ¶ 144-45,150-52. "[T]he gist of the action doctrine does not subject Plaintiff's claims for fraudulent inducement and negligent misrepresentation to dismissal." *Angstrom Indus. Grp., LLC v. Blume Honey Water*, No. 2:18-CV-01210, 2019 WL 316741, at *3 (W.D. Pa. Jan. 24, 2019). "[T]he gist of the action doctrine should not be viewed as a bar to ... [claims] for fraudulent inducement and negligent misrepresentation." *Techinomics, Inc. v. Forest Power & Energy Holding, Inc.*, No. 2:16-1859, 2017 WL 2536969, at *3 (W.D. Pa. May 11, 2017).

### G.    Lisowski Properly Alleges Unjust Enrichment

Lisowski alleges unjust enrichment. This claim has three elements: "(1) [the] plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3)

acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit." *Bral Corp. v. Johnstown Am. Corp.*, 919 F. Supp. 2d 599, 620 (W.D. Pa. 2013) (citation omitted). Satisfying these elements, Lisowski pleads that he and the Class conferred benefits on HTC by paying for HTC's products on the expectation that the products would conform with the representations on the labeling and marketing. A.C. ¶ 135. HTC knew it unjustly received these benefits because it knew that its products did not conform to the representations on its products' labels and website. *Id.* As a result, HTC has been unjustly enriched by its omissions and false and misleading statements, and this result violates the fundamental principles of justice and equity that underlie unjust enrichment. HTC argues that Lisowski does not plead facts establishing that it would be inequitable for HTC to retain the benefits conferred by Lisowski. This simply ignores the allegations. HTC made representations about the natural and preservative-free quality of its products to justify a premium price. A.C. ¶ 41. Lisowski paid those premium prices expecting the products to conform to HTC's representations. However, HTC's products failed to conform to these representations. Instead of receiving products that were natural and preservative-free, Lisowski received products that in no way conformed to its advertised quality. Accordingly, Defendants continue to retain a benefit improperly obtained to the detriment of Lisowski and Class members. A.C. ¶ 136. The inequity here is apparent while HTC attempts to downplay this injury, it is nonetheless real. Accordingly, Lisowski's claim is appropriately and plausibly pled, and HTC's Motion should be denied.

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be Denied. Alternatively, if the Court determines the pleadings are deficient, Plaintiffs respectfully request leave to amend.

Dated: March 20, 2020

Respectfully submitted,

<u>/s/ Steffan T. Keeton</u>
Steffan T. Keeton, Esq.
stkeeton@keetonfirm.com
Pa. Id. No. 314635

**The Keeton Firm LLC**
100 S Commons, Ste. 102
Pittsburgh, PA 15212
1-888-412-5291

*Attorney for Plaintiffs and the Class*

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of March, 2020, a true and correct copy of

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT'S**

**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** was filed electronically

and is available for viewing and downloading from the ECF system and was served upon the

following attorney via the Court's ECF system:

John K. Gisleson
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre
Thirty-Second Floor
Pittsburgh, PA 15219-6401
john.gisleson@morganlewis.com

/s/ *Steffan T. Keeton*
Steffan T. Keeton, Esq.