## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER LISOWSKI**, and | ) | |
| **ROBERT GARNER**, *individually and on* | ) | |
| *behalf of all others similarly situated*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | **Civil No. 19-1339** |
| | ) | |
| **HENRY THAYER COMPANY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

Plaintiffs Christopher Lisowski and Robert Garner, individually and on behalf of all others similarly situated, bring the within putative class action against Henry Thayer Company, Inc. (Thayer) under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1 *et seq.*(Count I), the Magnusson-Moss Warranty Act (MMWA) (Count II); breach of express warranty (Count III); unjust enrichment (Count IV); negligent and fraudulent misrepresentation (Counts V & VI); and the Maryland Consumer Protection Act (MCPA) (Count VII).  ECF No.  Am. Compl. ECF No. 5.  Presently before the Court is Thayer's Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).  ECF No. 6.  At the June 24, 2020 oral argument, Plaintiffs moved for dismissal of Counts II, V, and VI, with prejudice, which the Court granted.  ECF No. 14.  For the reasons that follow, Thayer's Motion to Dismiss will be granted, in part, and denied in part, with respect to Counts I, III, IV, and VII.

## I.  Factual Background

Thayer is a Delaware corporation with its principal place of business in Easton, Connecticut.  Am. Compl. ¶ 65.  Thayer manufactures a variety of personal care products and

product lines under the name THAYERS® Natural Remedies.  Id. ¶¶ 3, 65.  Thayer sells its products through major retailers around the country as well as from its own e-commerce store. Id. ¶¶ 1, 67.  Christopher Lisowski is a citizen of Pennsylvania, residing in Allegheny County. Id. ¶ 63.  Mr. Lisowski has made several purchases of Thayer's Products from various physical retail stores in Pennsylvania and from e-commerce stores that shipped products to his residence in Pennsylvania.  Id.  Mr. Lisowki has purchased the following products: THAYERS® Natural Remedies Unscented Deodorant, THAYERS® Natural Remedies Unscented Facial Mist, THAYERS® Natural Remedies Peppermint Dry Mouth Spray, and THAYERS® Natural Remedies Tangerine Slippery Elm Lozenges.  Id.  Robert Garner is a citizen of Maryland, residing in Wicomico County.  Id. ¶ 64.  Mr. Garner has made several purchases of Thayer's Products from various physical retail stores in Maryland.  Id.  Mr. Garner has purchased, at a minimum, THAYERS® Natural Remedies Rose Petal Facial Mist.  Id.

Plaintiffs allege that Thayer manufactures, advertises and sells its THAYERS® Natural Remedies products, representing that the products are "Natural," provide "Natural Remedies," and are "preservative-free."  Id. ¶¶ 1-8. According to Plaintiffs, the front label on each of Thayer's products prominently reinforces said claims.  Id. at ¶¶ 73-77.   Plaintiffs contend that Thayer's claims that its products are "natural" are false, misleading, and designed to deceive consumers to pay a price premium and to choose THAYERS® Natural Remedies over a competitor's product.  Id. ¶ 1.  The alleged false and misleading claims that Thayer's products are "natural" also appear on the trademark name for the product line, "THAYERS® Natural Remedies."  Id.  Plaintiffs also allege that Thayer deceptively markets its dry mouth sprays as "Preservative-Free," when the products actually contain preservatives.  Id. ¶ 2.  Plaintiffs allege that all of Thayer's products identified in the Amended Complaint fail to conform to Thayer's

representations that the products are "natural", because the products contain several synthetic, unnatural ingredients and preservatives, including phenoxyethanol, sodium benzoate, potassium sorbate, polysorbate-20, and ascorbic acid.  Id. ¶¶ 24, 27.

## II.  Standard of Review

Thayer moves for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6).

### A.  12(b)(1)

A court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim.  Fed. R. Civ. P. 12(b)(1).  "A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  Ballentine v. United States, 486 F.3d 806, 810 (3d Cir.2007).  A Rule 12(b)(1) motion may be presented by the movant as either a facial or factual challenge to the court's subject matter jurisdiction. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977).  In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  Gould Elec. Inc. v. United States, 220 F.3d 169, 176 (3d Cir.2000).  In reviewing a factual attack, the court may consider evidence outside the pleadings.  Id. (citing Mortensen, 549 F.2d at 891).  The plaintiff has the burden of establishing that the court has subject matter jurisdiction.  Mortensen, 549 F.2d at 891.

### B.  12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits a party to move for dismissal of a pleading for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  Whether personal jurisdiction may be exercised over an out-of-state defendant is a question of law for the court.  Vetrotex

3

Certainteed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147, 150 (3d Cir. 1996).

The plaintiff bears the burden of establishing personal jurisdiction. O'Connor v. Sandy Lane

Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007). A federal court may exercise personal

jurisdiction over a non-resident defendant to the extent permissible under the law of the forum

state. Fed. R. Civ. P. 4(k)(1)(A). Personal jurisdiction may be either general or specific, and

both the quality and quantity of the necessary contacts differs according to which sort of

jurisdiction applies. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 412

(1984).

### C. 12(b)(6)

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure

12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." Eid v. Thompson, 740 F.3d 118, 122 (3d Cir.

2014) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a

motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal,

556 U.S. at 678. Plaintiff's allegations must be accepted as true and construed in the light most

favorable to plaintiff when determining if the complaint should be dismissed. Trzaska v. L'Oreal

USA, Inc., 865 F.3d 155, 162 (3d Cir. 2017), as amended (Aug. 22, 2017). Nonetheless, a court

need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of

factual averments.  Morse v. Lower Merion School District, 132 F.3d 902, 906, n. 8 (3d Cir.1997).

If the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted.  The United States Court of Appeals for the Third Circuit has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips, 515 F.3d at 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).

"Courts 'generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record' when evaluating whether dismissal under Rule 12(b)(6) [is] proper." Levins v. Healthcare Revenue Recovery Grp. LLC, 902 F.3d 274, 279 (3d Cir. 2018) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). A court, however, may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit., 998 F.2d at 1196.  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Id.  The United States Court of Appeals for the Third Circuit explains that consideration of such documents are proper because "'the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice ... and has relied upon [those] documents in framing the complaint.'" Levins, 902 F.3d at 279-80 (quoting Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (internal quotation marks, alteration, and citation omitted).  Here, Thayer has attached Plaintiffs' "Amended Notice Letter," as purported notice to Defendant of its alleged breach of

warranty to satisfy U.C.C. and state law requirements.  ECF No. 7-2.  Consideration of the letter

is proper because Plaintiffs refer to and rely upon it in their Amended Complaint.

## III.  Discussion

Thayer moves to dismiss all claims asserted by Mr. Garner, a Maryland resident, for lack

of personal jurisdiction.  Thayer also moves to dismiss any claim seeking injunctive relief for

lack of standing.  Next, Thayer argues that Plaintiffs' fail to state claims upon which relief can be

granted, as alleged in Count I (UTPCPL), Count III (express warranty breach), and Count VII

(MCMA).  Finally, Thayer argues that Mr. Lisowski's unjust enrichment claim (Count IV) must

be dismissed because it is not an independent cause of action.  The Court addresses Defendants'

arguments in turn.

### A.  Mr. Garner's Claims and Personal Jurisdiction

As regards personal jurisdiction over Thayer in Pennsylvania for Mr. Garner's claims,

Mr. Garner concedes that personal jurisdiction does not exist.  Pltfs.' Br. Opp. 2-4, ECF No. 8.

There is no basis to assert general jurisdiction over Thayer.  As regards specific jurisdiction, Mr.

Garner is a Maryland resident.  He purchased Thayer's products in Maryland.  His alleged

injuries occurred in Maryland.  Therefore, Pennsylvania lacks specific personal jurisdiction over

Thayer for Mr. Garner's claims.  Bristol-Myers Squibb Co. v. Superior Court of California, San

Francisco Cty., 137 S. Ct. 1773, 1781 (2017) (personal jurisdiction is lacking where there is no

"'affiliation between the forum and the underlying controversy, principally, [an] activity or an

occurrence that takes place in the forum State.'") (quoting Goodyear Dunlop Tires Operations,

S.A. v. Brown, 564 U.S. 915, 919 (2011)).

Absent personal jurisdiction for Mr. Garner's claims, Mr. Garner argues for the Court to

exercise pendant jurisdiction over said claims.  Robinson v. Penn Cent. Co., 484 F.2d 553 (3d

Cir. 1973) (recognizing the doctrine of pendant personal jurisdiction where defendant was properly before the court on a federal claim).  The essence of this doctrine, as recognized by counsel, is that the district court must have personal jurisdiction over at least one of the plaintiff's claims.  "[O]nce a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction."  United States v. Botefuhr, 309 F.3d 1263, 1272 (10th Cir. 2002) (no pendant personal jurisdiction over defendant with respect to state claims once federal question claim was dismissed).  Mr. Garner's counsel argues for pendant jurisdiction based upon policy reasons, specifically, to promote judicial economy, for convenience, and to avoid piecemeal litigation.  The only remaining claims in this case are state law claims.[1]  Absent any federal claims against Thayer, pendant jurisdiction for Mr. Garner's claims is not appropriate. Accordingly, Thayer's Motion to Dismiss Mr. Garner's claims for lack of personal jurisdiction will be granted, and all claims asserted by Mr. Garner will be dismissed.[2]

### B.  Lack of Standing to Seek Injunctive Relief

Thayer moves for dismissal of Mr. Lisowski's claims, to the extent he seeks injunctive relief, for lack of standing.  To establish Article III standing, a plaintiff must establish three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the

---

[1]  Plaintiffs' Magnusson-Moss Warranty Act claim, the only federal claim asserted in the Amended Complaint, was dismissed upon oral motion of Plaintiffs.  ECF No. 14.

[2]  Because of dismissal of Mr. Garner's claims on jurisdictional grounds, the Court will not address his claims any further in this Opinion.

independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (internal quotations, alterations, and citations omitted).  When injunctive relief is sought, "a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized [and] the threat must be actual and imminent, not conjectural or hypothetical."  Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (emphasis added) (citing Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180–181 (2000).  "When, as in this case, prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct."  McNair v. Synapse Grp., Inc., 672 F.3d 213, 223 (3d Cir. 2012) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)).  "In the class action context, that requirement must be satisfied by at least one named plaintiff."  McNair, 672 F.3d at 223 (citing Warth v. Seldin 422 U.S. 490, 502 (1975)).

Thayer argues that Mr. Lisowski is not under an actual or imminent threat of suffering an injury because he is no longer using or purchasing Thayer products.  Mr. Lisowski admits that he does not intend to purchase Thayer's products, but explains that he "would like to purchase the products in the future, but will be unable to rely on [Thayer's] advertising and labeling unless [Thayer] changes its composition."  Pltfs. Resp. Opp'n, at 6, ECF No. 8 (citing Am. Compl. ¶¶ 63).  As such, Mr. Lisowski requests Thayer be ordered to undergo a "corrective labeling and marketing campaign."  Pltfs. Resp. Opp'n, at 6 (citing Am. Compl. ¶ 165).  In support of Mr. Lisowski's position that he does have standing, Mr. Lisowski cites Davidson v. Kimberly-Clark Corp., 889 F.3d 956 (9th Cir. 2018).  The Davidson Court held that a class action plaintiff, similarly situated to Mr. Lisowski, had properly alleged that she was likely to suffer future

injury.  Id. at 967.  Mr. Lisowski primarily relies upon the Davidson Court's conclusion that, "[i]n some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."  Id. at 969-70.  However, the United States Court of Appeals for the Third Circuit rejected the Davidson holding in McNair.  672 F.3d 213.

The McNair case concerned the question of whether former customers of a magazine subscription company, which had been alleged to have been engaged in deceptive business practices, had standing to seek injunctive relief.  The McNair plaintiffs alleged "that they may, one day, become Synapse customers once more" because the company's offers are compelling. Id. at 224-25.  The Court commented that "[w]hether they accept an offer or not will be their choice, and what that choice may be is a matter of pure speculation at this point."  Id. at 225. The Court concluded that "the wholly conjectural future injury [plaintiffs] rely on does not, and cannot, satisfy the constitutional requirement that a plaintiff seeking injunctive relief must demonstrate a likelihood of future harm."  Id. ("speaking generally, the law accords people the dignity of assuming that they act rationally, in light of the information they possess.")  Thus, the Third Circuit Court held that plaintiffs lacked standing to seek injunctive relief.  Id. at 227.

The McNair holding was reaffirmed in In re Johnson & Johnson Talcum Powder Prods, Mktg., Sales Practices & Liab. Litig., 903 F.3d 278, 292 (3d Cir. 2018).  In Johnson & Johnson, the class action plaintiff sought "injunctive relief in the form of 'corrective advertising'" and [to preclude] Defendants from continuing the unlawful practices' of selling Baby Powder without properly warning consumers of the alleged health risks."  903 F.3d at 292.  "Relying on McNair, the Third Circuit Court held that the plaintiff lacked standing to seek injunctive relief because she was not likely to suffer future injury from the defendants' conduct due to her awareness of

the alleged health risks associated with the Baby Powder." Winkworth v. Spectrum Brands, Inc.,

No. CV 19-1011, 2020 WL 3574687, at *7–8 (W.D. Pa. June 30, 2020) (citing McNair, 903

F.3d. at 292.)  The Johnson & Johnson Court explained that it would not "give cognizance to this

sort of 'stop me before I buy again' claim." McNair, 903 F.3d. at 293.

The circumstances here are directly on point with Third Circuit precedent, and therefore

the same result is reached.  Mr. Lisowski alleges that he will not buy Thayer products because of

the alleged deceptive labeling.  His allegations that he will suffer a future injury, or face a threat

of a future injury, are conjectural and hypothetical.  Therefore, it is not rational to assume Mr.

Lisowski would purchase said products in the future.  McNair, 672 F.3d at 225 ("law accords

people the dignity of assuming that they act rationally, in light of the information they possess.")

Because Mr. Lisowski has not established any reasonable likelihood of future injury, he lacks

standing to seek injunctive relief against Thayer.  Accordingly, Thayer's Motion to Dismiss Mr.

Lisowski's claims, to the extent he seeks injunctive relief, will be granted.

### C. Breach of Express Warranty Claim

In Count III, Mr. Lisowski asserts a claim of breach of express warranty under

Pennsylvania law.  Am. Compl. ¶¶ 120-131.  Pennsylvania's express warranty statute is based on

the Uniform Commercial Code.  Said statute provides, in relevant part, that a seller creates an

express warranty as follows:

> (1) Any affirmation of fact or promise made by the seller to the buyer which
> relates to the goods and becomes part of the basis of the bargain creates an
> express warranty that the goods shall conform to the affirmation or promise.

> (2) Any description of the goods which is made part of the basis of the bargain
> creates an express warranty that the goods shall conform to the description.

13 Pa. Cons. Stat.§ 2313(a)(1) & (a)(2).  Mr. Lisowski's breach of express warranty claim is

supported by the following allegations from the Amended Complaint.  Mr. Lisowski alleges that

the "front label of every one of the THAYERS® Products state prominently in lettering the words 'Natural Remedies.'"  Am. Compl. ¶ 73.  He specifically isolates the front label of the THAYERS® Natural Remedies Dry Mouth Products as stating prominently in lettering, the words, "Natural Remedies."  Id. ¶ 74.  Mr. Lisowski also notes that on THAYERS® Official Website, the Dry Mouth Products are marketed as "preservative-free," and that some of the Dry Mouth Products are falsely labeled as "preservative-free."  Id. ¶ 74.  Mr. Lisowski contends that the "phrase 'Natural Remedies' is a representation to a reasonable consumer that THAYERS® brand Products contain only natural ingredients[, and the] "phrase is misleading to a reasonable consumer because THAYERS® brand Products actually contain synthetic ingredients."  Id. ¶ 8.  Mr. Lisowski alleges that, based upon the language that appears on the front of Thayer's products, he reasonably believed that the Products contained only natural ingredients.  Id. ¶ 77.

Mr. Lisowski's specific express warranty allegations assert that Thayer "expressly warranted and represented that the Products are 'natural,' 'natural remedies,' 'safe for babies and children,' 'Preservative-Free,' 'natural, gentle skin astringent,' create a 'natural glow,' offer 'natural healing powers,' and consist of 'naturally sourced ingredients' and 'naturally occurring ingredients.'"  Id. ¶ 122.  Mr. Lisowski alleges that Thayer provided its customers "with an express warranty in the form of written affirmations of fact promising and representing that the Products are natural."  Id. ¶ 123.  Mr. Lisowski also alleges that Thayer provided him and other customers "with an express warranty in the form of written affirmations of fact promising and representing that the Dry Mouth Products are free of preservatives."  Id. ¶ 124.  Mr. Lisowski alleges that Thayer's products do not conform to Thayer's express warranty because the products contain ingredients that are unnatural and synthetic and because Thayer's Dry Mouth Products contain preservatives and unnatural and synthetic ingredients.  Id. ¶¶ 127, 128.

In response, Thayer argues that the express warranty claim against Thayer's trademark, "THAYERS® Natural Remedies," fails because a trademark does not create a warranty.  Thayer also argues that the express warranty claim must be dismissed entirely, because Plaintiffs failed to provide statutorily required pre-suit Notice to Thayer before instituting suit.

### 1.   Can a Tradename Create an Express Warranty?

Mr. Lisowski's express warranty claim is partially based on labeling containing the phrase "Natural Remedies" as it appears in Thayer's trademark name, "THAYERS® Natural Remedies."  Thayer argues that a trademark cannot create an express warranty, and thus moves for dismissal of the express warranty claim as related to Thayer's trademark.

The minimal case law, addressing the issue of whether a trademark can create an express warranty, uniformly holds that a trademark cannot create an express warranty.  Boyd v. TTI Floorcare N. Am., 230 F. Supp. 3d 1266, 1278-79 (N.D. Ala. 2011) (Trade name is "an affirmation of what the product *is*" and "court cannot find any law supporting their contention that a registered trade name, without more, creates an express warranty as to what that product will *do*") (emphasis in original).  The Boyd Court cited several cases supporting the proposition that a trade name or trademark does not create an express warranty.  Id. at 1278 (citing Szajna v. Gen. Motors Corp., 115 Ill. 2d 294, 319, 503 N.E.2d 760, 771 (1986); McKinnis v. Kellogg USA, No. CV–07–2611, 2007 WL 4766060, *5–6 (C.D. Cal. Sept. 19, 2007); Sugawara v. PepsiCo, Inc., No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115, *4–5 (E.D. Cal. May 21, 2009); also citing Schreib v. Walt Disney Co., No. 1-05-0094, 2006 WL 573008, at *2 (Ill. App. 1 Dist. Feb. 1, 2006);  Hertzog v. WebTV Networks, Inc., No. 48552-1-I, 2002 WL 1609032 at *4–5, 2002 Wash. App. LEXIS 1724 at *16 (Wash. App. 2002) and Miller v. Showcase Homes, Inc., No. 98-C-2009, 1999 WL 199605, at *4 (N.D. Ill. Mar. 31, 1999)).  The Boyd Court held

that the trade names SteamVac® and PowerSteamer® "provide a promise that the product sold is
an authentic SteamVac® or PowerSteamer®. They do not create an affirmation of fact nor do
they describe the cleaning process the product uses." Boyd, 230 F. Supp. 3d at 1278–79. Mr.
Lisowski has not cited a single case where a court held that a trade name or trademark created an
express warranty.

Mr. Lisowski similarly argues that the trademark, "THAYERS® Natural Remedies,"
creates an affirmation of fact that Thayer's products will in fact contain only natural ingredients.
Thayer's trademark communicates that any product bearing said trademark is authentic; that is,
that the product is in fact a legitimate product manufactured by Thayer's. As in Boyd, Thayer's
trademark name does not create an express warranty as to what the product does or contains. Id.
at 1279. Accordingly, Thayer's Motion to Dismiss Mr. Lisowski' breach of express warranty
claim, to the extent the claim is based on Thayer's trademark, will be granted.

**2. Notice Requirement for Breach of Express Warranty Claim**

Thayer also argues that Mr. Lisowski's breach of express warranty claim must be
dismissed in its entirety because Mr. Lisowski did not provide pre-suit notice as required under
Pennsylvania law. Pennsylvania's statute as to the notice requirement, based on the Uniform
Commercial Code, states, in relevant part, that a "buyer must within a reasonable time after he
discovers or should have discovered any breach notify the seller of breach or be barred from any
remedy." 13 Pa. Cons. Stat.§ 2607(c)(1). The requirement of notice is a prerequisite to state a
claim. Crockett v. Luitpold Pharm., Inc., No. CV 19-276, 2020 WL 433367, at *12 (E.D. Pa.
Jan. 28, 2020) (citing Am. Fed'n of State County & Mun. Emps. ("AFSCME") v. Ortho-McNeil-
Janssen Pharms., Inc., 2010 WL 891150, at *6 (E.D. Pa. Mar. 11, 2010)). The "purpose of
notification under Section 2607(c) is to allow the seller an opportunity to resolve the dispute

13

regarding an alleged breach before the buyer initiates a lawsuit." Crockett, 2020 WL 433367, at

*12 (quoting Ortho-McNeil-Janssen Pharms., 2010 WL 891150, at *6).

Mr. Lisowski argues that Thayer received proper notice in two ways.  First, Mr. Lisowski

asserts that Thayer received constructive notice of the alleged breaches "by numerous public

complaints and inquiries concerning its use of synthetic and preservative ingredients in its

products."  Am. Compl. ¶ 129.  Mr. Lisowski also avers that "prior to the filing of this

complaint, Mr. Lisowski timely notified Defendant of these breaches."  Id. ¶ 130.  The notice,

referenced in Paragraph 130 of the Amended Complaint, is a February 20, 2020 "Amended

Notice Letter" from Plaintiffs' counsel to Thayer's counsel.  Ex. 2 to Def. Br., ECF No. 7-2.

Said letter was dated the same day Plaintiffs filed their Amended Complaint.  Thayer argues that

both assertions of pre-suit notice fail, because each Plaintiff is required to provide individual

notice, and because the Amended Notice Letter was not provided prior to institution of suit.

### a.  Constructive Notice

Mr. Lisowski argues that constructive notice in Pennsylvania is sufficient to comply with

the statute.  Pltfs.' Br. Opp. 11-12 (citing Martin v. Ford Motor Co., 765 F. Supp. 2d 673, 683

(E.D. PA. 2011)).  The Martin decision held that unnamed class members' complaints to

defendant satisfied statutory pre-suit notice requirements.  The Martin decision is not persuasive.

A later decision held the opposite, and criticized the Martin decision by noting that, the Martin

case "overlooked the explicit text of § 2607(c)(1)," which requires that the *buyer* himself must

provide notice.  Schmidt v. Ford Motor Co., 972 F. Supp. 2d 712, 719 (E.D. Pa. 2013).  The

Schmidt Court noted that to allow such constructive notice would permit buyers "to thwart the

purpose of § 2607(c) by relying on third-party notice and avoiding any attempt at pre-suit

resolution."  Id.; accord In re 5-Hour ENERGY Mktg. & Sales Practices Litig., No.

MDL132438PSGPLAX, 2015 WL 12734796, at *10 (C.D. Cal. Jan. 22, 2015) (interpreting 13 Pa. Cons. Stat.§ 2607(c)).  The <u>Schmidt</u> Court's reasoning is persuasive.  Constructive notice is insufficient to comply with Pennsylvania's notice requirement.  As such, Mr. Lisowski fails to establish required pre-suit notice by constructive notice.

### b. Letter Notice

This lawsuit was filed on October 18, 2019 by Plaintiff Robert Lisowski only.  ECF No. 1.  In the initial Complaint, the only allegations addressing pre-suit notice concerned constructive notice.  Compl. ¶¶ 108, 120 ("Defendant was provided notice of these issues by numerous public complaints and inquiries concerning its use of synthetic and preservative ingredients in its products").  Prior to any responsive pleading, Plaintiffs filed an Amended Complaint that, among other things, added Plaintiff Robert Garner to the lawsuit and alleged that Plaintiffs provided notice to Thayer by letter.  ECF No. 5.  As noted, the "Amended Notice Letter" is dated February 20, 2020, and thus was not provided to Thayer before the October 18, 2019 Complaint.  ECF No. 7-2.  The February 20, 2020, "Amended Notice Letter" is not sufficient notice under Pennsylvania's statute, because the letter was not provided to Thayer prior to institution of this action.

Because Mr. Lisowski did not comply with the notice requirement, he is not able to maintain his breach of express warranty claim.  Accordingly, Thayer's Motion to Dismiss Count III will be granted, and said claim will be dismissed, with prejudice.

### 3. UTPCPL Claim

Mr. Lisowski alleges that Thayer violated the UTPCPL by representing that its goods and services have characteristics, uses, benefits, and qualities they do not have (73 Pa. Cons. Stat. Ann. § 201–2(4)(v)); by representing that its goods and services are of a particular standard or

15

quality, if they are another (73 Pa. Cons. Stat. Ann. § 201–2(4)(vii)); by advertising its goods and services with intent not to sell them as advertised (73 Pa. Cons. Stat. Ann. § 201–2(4)(ix)); and by engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or of misunderstanding (73 Pa. Cons. Stat. Ann. § 201–2(4)(xxi)).  Am. Compl. ¶ 99.  Thayer moves to dismiss Mr. Lisowski's UTPCPL claim arguing that he fails to allege facts to state a claim. Thayer challenges the claim, asserting three deficiencies.  First, Thayer argues that Mr. Lisowski does not sufficiently plead deceptive conduct.[3]  Second, Thayer argues that Mr. Lisowski fails to allege justifiable reliance.  Third, Thayer argues Mr. Lisowski does not plead an ascertainable loss.  In response, Mr. Lisowski argues that he has alleged deceptive conduct in that Thayer's represents its products are natural or preservative/synthetic free, when they are not.  Mr. Lisowski next argues that he has alleged justifiable reliance, as he relied on Thayer's misrepresentations as a basis to purchase Thayer's products.  Finally, he argues that by relying on the alleged misrepresentations, he has suffered an ascertainable loss because he has lost the money he spent on the products and because he paid a premium over other products.

### *Pennsylvania's UTPCPL*

The UTPCPL "provides a private cause of action to any person who, as a result of conduct that the UTPCPL prohibits, 'suffers any ascertainable loss of money or property, real or personal.'"  Grimes v. Enter. Leasing Co. of Philadelphia, LLC, 105 A.3d 1188, 1190 (2014) (quoting 73 Pa. Cons. Stat. § 201–9.2(a)).  To establish a violation of the UTPCPL, a plaintiff must show that defendant engaged in a deceptive act or practice, that plaintiff justifiably relied

---

[3]  Mr. Lisowski has voluntarily dismissed his Count V and Count VI common law fraud claims, and thus his claim for violations of the UTPCPL are not fraud based.  This was confirmed during oral argument.  Therefore, Thayer's argument that Plaintiffs' allegations do not satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(a) are inapplicable.  Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 469 (E.D. Pa. 2009) ("to the extent plaintiffs allege deceptive conduct, plaintiffs do not need to allege the elements of common law fraud or, as a result, meet Rule 9(b)'s particularity requirement, which applies only to claims of fraud").

on defendant's deceptive conduct, and that plaintiff's justifiable reliance caused plaintiff an ascertainable harm. Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 465, 470 (E.D. Pa. 2009) (citing Hunt v. U.S. Tobacco Co., 538 F.3d 217, 221, 223 n. 14 (3d Cir.2008)). "'An act or a practice is deceptive or unfair if it has the capacity or tendency to deceive[,]' and "[n]either the intention to deceive nor actual deception must be proved; rather, it need only be shown that the acts and practices are capable of being interpreted in a misleading way.'" Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC, 194 A.3d 1010, 1023 (Pa. 2018) (quoting Commonwealth ex rel. Corbett v. Peoples Benefit Servs., Inc., 923 A.2d 1230, 1236 (Pa. Commw. Ct. 2007)).

### a. Failure to Allege a Deceptive Conduct Claim

Mr. Lisowski's allegations focus primarily, but not exclusively, on language on the front of Thayer's products. Am. Compl. ¶¶ 23, 39, 63, 73, 74, 76, and 77. He alleges that Thayer represents its products as natural, which presents a desired quality that permits Thayer to command a premium price. Mr. Lisowski also alleges that in fact, the ingredients of Thayer's products are not natural. Mr. Lisowski alleges that Thayer included misrepresentations on its labels that its products are "natural," "natural remedies," "safe for babies and children," "Preservative-Free," "natural, gentile skin astringent," create a "natural glow," offer "natural healing powers," and consist of "naturally sourced ingredients" and "naturally occurring ingredients" when in fact the products are not "natural," because they are made with synthetic ingredients and contain preservatives. Id. ¶ 100. Mr. Lisowski also alleges that Thayer's "natural" claims are deceptive and misleading to consumers because Thayer failed to disclose the presence of certain synthetic ingredients on the Ingredients Declaration section of Products' labels, which further deceived consumers into purchasing Products that were deceptively labeled

as "natural."  Id. ¶ 101.  Mr. Lisowski argues that he has sufficiently plead a claim because the term "natural" creates a likelihood of confusion or misunderstanding.  Pltfs.' Br. Opp. 16 (citing Dixon v. Northwestern Mut., 146 A.3d 780, 790 (Pa. Super. Ct. 2016).  Mr. Lisowski also points to a study cited in the Amended Complaint that shows that a significant number of people (87%) believe that the term "natural" indicates no artificial flavors, no artificial colors, and no preservatives.  Pltfs.' Br. Opp. 16 (citing Am. Compl. ¶ 21 n 1.)

Thayer argues that Mr. Lisowski cannot state a claim by isolating certain terms or phrases from the label that, when read in context, do not support that Thayer engaged in deceptive or misleading conduct.  Thus, Thayer argues that the term "natural" on Thayer's labels does not in fact constitute any misrepresentation as alleged by Mr. Lisowski.  Thayer contends that a plain reading of the labels demonstrates that Thayer does not represent that all of the products ingredients are "natural," does not represent that the products are "100% natural," and does not represent that the products are "all natural."  Thayer thus asserts that its product labels are not misleading, deceptive, or false.

In response, Mr. Lisowski argues that Thayer is asking the Court to improperly resolve a question of fact based on Thayer's interpretation of its labels rather than upon resolution by a factfinder.  Thayer counters that it is not proposing an "alternative interpretation" of its label; rather, Thayer argues that, when the isolated phrases that Mr. Lisowski relies upon are read in context with the entire label, no actionable misrepresentation claim is stated.  In other words, Thayer contends that there is only one way to read and interpret its labels.  Thayer requests this Court to conclude that, because there is no misrepresentation, its labels are not capable of deceiving a reasonable consumer.

### i.        Thayer's Labels and Website

Both parties reference a representative Facial Mist product label, Exhibit 3 to Thayer's brief.[4]  The trademark, "THAYERS® NATURAL REMEDIES," plus the phrase "SINCE 1847" and an etching of Henry Thayer's profile, followed by the product name "**FACIAL MIST**" appears on the front.  Directly below the product name is the descriptive phrase "WITCH HAZEL," with the phrase "ALOE VERA FORMULA" directly below it.  Appearing at the bottom of the label is the descriptive term "UNSCENTED," with the phrase "ALCOHOL-FREE," just below it.

The top left side of the label repeats, in smaller font size, Thayer's trademark name.  It also provides the product name (**FACIAL MIST** WITCH HAZEL ALOE VERA FORMULA).  The remainder of the left side of the label includes contact information and a barcode, and it reads as follows:

> **Directions**: Apply by misting to cleanse, soften, refresh, and moisturize skin.  Use anytime throughout the day as a softening refresher.
>
> **Ingredients**: Purified Water, Glycerin, Certified Organic Witch Hazel Extract Blend (Hamamelis Virginiana Extract (Witch Hazel*), Aloe Barbadensis Leaf Juice (Filet of Aloe Vera*)), Citrus Grandis (Grapefruit) Seed Extract, Phenoxyethanol, Caprylyl Glycol, Ethylhexylglycerin, Citric Acid, Potassium Hydroxide
>
> *Denotes Certified Organic Ingredients
>
> The carefully selected, naturally sourced ingredients in this product may have undergone limited processing. Variations in color, clarity, etc. can be expected from lot to lot due to our use of naturally occurring ingredients.

---

[4]  Plaintiffs include a photograph of the front of the same Thayer's product, to exemplify Thayer's labeling, in its Amended Complaint.  Am. Compl. ¶ 76.  The label wraps around a bottle; however, for ease of discussion the Court will refer to the "left" and "right" sides of the label as it appears in Exhibit 3.

At the top of the right side of the label is Thayer's trademark name as it appears on the front of the label, except in smaller size, along with the phrase, "UNSCENTED" appearing to its right.  The remainder of the right side of the label (except for the extreme bottom of the label) reads as follows:

> You won't smell it, but you'll surely feel **THAYERS® Unscented Facial Mist**. This gentle mist is derived from a time-honored formula, developed by Thayers to cleanse, tone, moisturize, and balance the pH level of skin. In addition to containing certified organic Aloe Vera, this unique, proprietary blend also contains certified organic, non-distilled Witch Hazel that's grown exclusively for Thayers on a family farm in Fairfield County, Connecticut.  By avoiding distillation of our Witch Hazel, we're able to preserve the naturally-occurring, beneficial tannins, which are known to offer antioxidant and antibacterial benefits, and bring about a natural glow. Thayers elixirs have been a fixture in medicine cabinets for generations – once you use them, you'll know why.

Mr. Lisowski emphasizes that the word "natural" appears seven times on the label, three of which appear in the trademark name.  The left side of the label includes the phrases "naturally sourced" and "naturally occurring," while the right side includes the phrases "naturally-occurring" and "natural glow."  Mr. Lisowski's arguments clearly rely on his reading of the cited words outside of the context in which the label presents them.  Such reliance lends credence to Mr. Lisowski's argument.  However, reading the label in its entirety does not support a finding of deceptive conduct under the UTPCPL.

Mr. Lisowski does not rest his allegations solely on the information contained on the label.  He also alleges that Thayer's promotes and advertises its products as "natural remedies" throughout its website and social media accounts. Am. Compl. ¶ 5.  For example, Mr. Lisowski cites the following statement from Thayer's website: "A legacy brand, Thayers **natural elixirs** have been a fixture in medicine cabinets for generations - for 170 years to be exact. Through a long-standing commitment to creating **pure**, effective, cruelty-free products of the **highest natural quality**, we have built a loyal

consumer base." Id. ¶ 5 (bold in Amended Complaint).  Considering this website language, plus the product labeling language as a whole, the Court concludes that no reasonable consumer would be deceived by language on Thayer's label, because in context the representations are not deceptive.[5]  The Court reviews each alleged deceptive phrase.

First, the phrase "naturally sourced" appears on the left side of the label as follows:

> The carefully selected, **naturally sourced** ingredients in this product may have undergone limited processing. Variations in color, clarity, etc. can be expected from lot to lot due to our use of naturally occurring ingredients.

The above statement refers to ingredients in the product that are "naturally sourced," and cannot be fairly interpreted as referring to all ingredients.  The purpose of this statement is to explain to the consumer why the same "naturally sourced" product produced from different lots may exhibit variations in "color, clarity, etc." either within the product or between similar products.  The statement is not an affirmation that there are no artificial or synthetic ingredients in the product.  Further, there is no representation or fair interpretation to support a conclusion that the product is 100% natural or that all the ingredients in the product are natural.

Next, the phrases "naturally-occurring" and "natural glow" appear on the right side of the label as follows:

> By avoiding distillation of our Witch Hazel, we're able to preserve the **naturally-occurring**, beneficial tannins, which are known to offer antioxidant and antibacterial benefits, and bring about a **natural glow**.

---

[5]  Plaintiffs rely heavily on its allegation that Thayer's deceptive conduct arises from Thayer's prominent use of the phrase, "Natural Remedies," on its labeling and advertising.  That phrase, "Natural Remedies," however, is a part of Thayer's trademark name.  The Court has determined that a trademark is merely an affirmation of authenticity, not an affirmation what the product contains or how it will perform.  Therefore, the trademark cannot be the basis of a misrepresentation claim as it is not a representation about the contents of the product.

This statement refers to only one ingredient, Witch Hazel.  The phrase "naturally-occurring" is even more specific, as it refers only to tannins within the Witch Hazel ingredient.  Thus, this statement concerns only tannins that "naturally occur" in Witch Hazel.  The phrase "natural glow" refers to what the "antioxidant and antibacterial benefits" of the tannin may "bring about."  No reasonable consumer reading the phrases in context, which are plainly limited to one ingredient, would be misled into believing that all of the product's ingredients are natural.  Moreover, the phrase "natural glow" is not a description of an ingredient, it is expression of an intangible, non-measurable benefit more akin to non-actionable puffery.  Golden Gate Nat'l Senior Care, 194 A.3d at 1023 ("Where the impression created by the statement is one of exaggeration or overstatement expressed in broad language, it may be deemed non-actionable puffery.") (citing Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir. 1993)).

Finally, Thayer's website refers to its products as being "natural elixirs," and that Thayer's has a "long-standing commitment to creating pure, . . . . products of the highest natural quality."  As noted by Mr. Lisowski, these phrases are about the company and appear in Thayer's "History" page.  Am. Compl. ¶ 5.  Said communications do not describe the products themselves.  To emphasize the popularity of its products and longevity of the company, Thayer states that its "natural elixirs" have been a fixture in medicine cabinets for 170 years.  This statement also appears on the label in Exhibit 3 as the last sentence on the right side of the label without the term "natural":  "Thayers elixirs have been a fixture in medicine cabinets for generations – once you use them, you'll know why."  Thayer's website also touts its "long-standing *commitment* to creating pure, . . . . products of the highest natural quality."  This statement is an aspirational statement

about what the company strives to do; it is not a description of its products or their

contents.

In addition to the Facial Mist exemplar label, Mr. Lisowski also identifies the following

two additional phrases: a statement referring to a "natural, gentle skin astringent," and a

representation that a product offers "natural healing powers." As with the other "natural"

references on the label, the above two phrases do not suggest that the product is 100% natural or

that all the ingredients are natural. In addition, like the phrase "natural glow," the phrase

"natural healing powers" is an expression of an intangible, non-measurable benefit akin to

puffery; it is not a description of the ingredients.

To the extent Mr. Lisowski alleges that the phrase "safe for babies and children," is

deceptive and misleading, this allegation cannot be maintained for two reasons. First, Mr.

Lisowski does not allege that any product he purchased was actually purchased for use on a baby

or child or alleged that the product as used was in fact "not safe." The phrase also cannot be read

as a description that the product or any ingredient of the product is "natural," as it is a

straightforward claim that the product is safe for babies and children. There is no misleading

representation that, because the ingredients are natural, they are safe, or vice versa. Thus,

allegations concerning labeling as "safe for babies and children" does not support Mr. Lisowski's

claims under the UTPCPL.

Separately, Mr. Lisowski specifically alleges that "for a certain time period," Thayer

failed to disclose that some products in fact contain specific synthetic ingredients that were not

disclosed on the label. Am. Compl. ¶¶ 7, 79 (as an example, Mr. Lisowski identifies the

synthetic ingredient Phenoxyethanol, as an ingredient that was "deceptively omitted" from labels

"for many years in the Class Period"). Mr. Lisowski therefore alleges that "for a period of time,"

Thayer's deceptive conduct is demonstrated by Thayer's failure "to disclose the presence of certain synthetic ingredients on the Ingredients Declaration section" of products' labels, which deceived consumers into purchasing products that were deceptively labeled as "natural." Id. ¶ 101.  Presently, these allegations within the Amended Complaint do not sufficiently state a claim under the UTPCPL due to a lack of specificity to identify the product or the timeframe of labeling deficiencies.  Mr. Lisowski has not alleged sufficient facts to demonstrate that the alleged representations on its labels and websites were misleading or deceptive.

### ii.     Thayer's Dry Mouth Products

Mr. Lisowski also alleges that the misrepresentation that the products are "natural," is compounded for a subset of Dry Mouth products that are labeled as "preservative-free," but they in fact contain preservatives.  Mr. Lisowski separately identifies four "Dry Mouth Products" that fall into this category.  Am. Compl. ¶¶ 3-4, 10, 27 (THAYERS® Natural Remedies Peppermint Dry Mouth Spray; THAYERS® Natural Remedies Citrus Dry Mouth Spray; THAYERS® Natural Remedies Tangerine Slippery Elm Lozenges; and THAYERS® Natural Remedies Sugar-Free Citrus Dry Mouth Lozenges).  Mr. Lisowski alleges that the phrase "preservative-free" is deceptive and misleading as it also suggests that the product is natural.  He further alleges that even if the synthetic ingredients are "identified on the back of the Dry Mouth Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic preservatives,"  because the "reasonable consumer" does not possess the necessary "scientific investigation and knowledge of chemistry" to know "that these ingredients are synthetic preservatives." Id. ¶ 42. Thayer does not specifically respond to Mr. Lisowski's argument that products labeled as "preservative-free" that contain preservative ingredients are capable of misleading a consumer.

24

Instead, Thayer subsumes the phrase "preservative-free" in its general argument that its labels are not capable of misleading a consumer.  At oral argument, Thayer postured that the phrase "preservative-free" could be a basis for a factual dispute as to whether the product is in fact preservative-free.[6]  Conceivably a consumer could expect that a product that claims to be "preservative-free" would not contain preservative ingredients.  A product containing the phrase "preservative-free," when in fact the product contains preservatives, is capable of confusing or misleading the consumer.  Golden Gate Nat'l Senior Care, 194 A.3d at 1023 (deceptiveness present if conduct has the capacity or tendency to deceive and only necessary to show that the conduct is "capable of being interpreted in a misleading way").  As to the two products Mr. Lisowski purchased that contain "preservative-free" designation on the label, to wit THAYERS® Natural Remedies Peppermint Dry Mouth Spray and THAYERS® Natural Remedies Tangerine Slippery Elm Lozenges, Mr. Lisowski has sufficiently plead the necessary element of deceptive and misleading for his UTPCPL claim.

### b.  Failure to Allege Justifiable Reliance

To the extent that Mr. Lisowski has adequately alleged that Thayer's labels are sufficient to state a claim for deceptiveness under the UTPCPL, Mr. Lisowski has plead that he relied on such misrepresentations as a basis for the products he actually purchased.  Mr. Lisowski purchased Thayer Unscented Deodorant, Unscented Facial Mist, Peppermint Dry Mouth Spray, and Tangerine Slippery Elm Lozenges.  Am. Compl. ¶ 63.  As regards products that Mr. Lisowski did not purchase, he failed to allege justifiable reliance.  In addition, Mr. Lisowski fails to allege that he justifiably relied on alleged misrepresentations in purchasing Thayer Unscented Deodorant and Unscented Facial Mist, because these two products' labels were not misleading or

---

[6]  Thayer's comment was made in rebuttal to Mr. Lisowski's argument that he suffered an ascertainable loss.

deceptive.  As such, Thayer's Motion to Dismiss will be granted as to all products except

Peppermint Dry Mouth Spray and Tangerine Slippery Elm Lozenges.

### c.  Failure to Allege an Ascertainable Loss

With regard to ascertainable loss, Mr. Lisowski alleges that he would not have purchased

the products, but for the alleged misrepresentations.  Therefore, he argues that because he did not

receive the product he bargained for, he suffered a loss.  Mr. Lisowski separately alleges a loss

due to having paid a premium price over other products, as a result of relying on Thayer's

misrepresentations.  Thayer argues that Mr. Lisowski's allegation of loss based solely on having

purchased the products fails, because Mr. Lisowski did receive the benefit of the products he

purchased.  Thayer also argues that Mr. Lisowski does not identify any less expensive alternative

products he would have purchased, but for the alleged misrepresentations, and therefore he

cannot demonstrate an ascertainable loss.

"To recover damages under the UTPCPL, a plaintiff must demonstrate an 'ascertainable

loss *as a result of* the defendant's prohibited action.'" Boehm v. Riversource Life Ins. Co., 117

A.3d 308, 328 (Pa. Super. Ct. 2015) (quoting Weinberg v. Sun Co., Inc., 777 A.2d 442, 446 (Pa.

2001) (emphasis in original)).  "The determination of damages is a factual question to be decided

by the fact-finder." Boehm, 117 A.3d at 328 (quoting Penn Elec. Supply Co., Inc. v. Billows

Elec. Supply Co., Inc., 528 A.2d 643, 644 (Pa. Super. Ct. 1987)).  "While the Pennsylvania

Supreme Court has not yet specifically identified what constitutes 'ascertainable loss' under the

UTPCPL, federal courts in this district and lower Pennsylvania state courts require that the loss

asserted be 'an actual, non-speculative, loss of money or property.'" Hall v. Equifax Info. Servs.

LLC, 204 F. Supp. 3d 807, 812 (E.D. Pa. 2016) (quoting Levy-Tatum v. Navient & Sallie Mae

Bank, No. CV 15-3794, 2016 WL 75231, at *9 (E.D. Pa. Jan. 7, 2016)).

Mr. Lisowski first argues that he has lost the money that he used to purchase the items. Pltfs.' Br. Opp. 22.  In Baynes v. George E. Mason Funeral Home, Inc., No. 09–153, 2011 WL 2181469, at *5 (W.D. Pa. June 2, 2011), the Court concluded that plaintiff had proven an ascertainable loss of money by purchasing a casket he thought was solid bronze, but was in fact a defective steel casket.  The Baynes plaintiff would not have purchased the defective steel casket but for the deceptive conduct leading him to believe that the product he was purchasing was a solid bronze casket.  Similarly, Mr. Lisowski purchased Thayer products he believed to be natural and preservative-free based on Thayer's alleged deceptive conduct.  The products were allegedly not natural and preservative-free.  Therefore, because of the deception, he did not receive the product he thought he was buying.  Mr. Lisowski has sufficiently alleged an ascertainable loss, the amount he paid for the product, to survive a motion to dismiss.

Mr. Lisowski's also alleges that he has an ascertainable loss because he paid a premium price over other products.  However, a plaintiff must have an identifiable alternative in order to measure the loss.  Landau v. Viridian Energy PA LLC, 223 F. Supp. 3d 401 (E.D. Pa. 2016). The plaintiff in Landau alleged that, but for the deceptive conduct of the defendant electric utility provider Viridian, he would not have left his local electric utility provider PECO.  The measure of the loss was ascertainable because plaintiff alleged that he would have remained with his former provider PECO and therefore would have paid PECO's known lower rates.  Thus, the Court found that the "loss is the difference between what Landau paid as a Viridian customer and what he would have paid had he *remained* with PECO."  Id. at 419 (emphasis added).  Mr. Lisowski has not identified any less-expensive, comparable alternative products that he would have purchased to allow a determination of the measure of the loss.  Thus, he has not sufficiently plead an ascertainable loss based on having allegedly paid a premium price.

### d.  Conclusion as to UTPCPL Claims

Based on the discussion above, Thayer's Motion to Dismiss for Failure to State Claims under the UTPCPL will be denied only as to the two Dry Mouth Products Mr. Lisowski purchased, Peppermint Dry Mouth Spray and Tangerine Slippery Elm Lozenges.  For both of these products, Mr. Lisowski has sufficiently stated a claim that Thayer engaged in a deceptive act or practice in labeling products that contained preservatives as being "preservative-free," that Mr. Lisowski justifiably relied on said deceptive conduct, and that Mr. Lisowski's justifiable reliance caused him an ascertainable loss.  For all other products and claims under the UTPCPL the Motion to Dismiss will be granted.

Further, as to the allegations concerning products purchased by Mr. Lisowski, that allegedly contained synthetic ingredients which Thayer failed to disclose on such products' labels, Thayer's Motion to Dismiss will be granted.  Mr. Lisowski will be permitted leave to amend said claims to properly allege the timing of Thayer's conduct and to specifically identify each product that he purchased at a time when the product label did not disclose synthetic ingredients contained within the product.

### D.  Unjust Enrichment as an Independent Cause of Action

Lastly, Thayer moves to dismiss Mr. Lisowski's unjust enrichment claim.  The elements necessary to prove unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.  Milby v. Pote, 189 A.3d 1065, 1087 (Pa. Super. Ct. 2018) (citations omitted). In Pennsylvania, an unjust enrichment claim based on a theory of quasi-contract may be pled as an alternative to a breach of contract claim.  Whitaker v. Herr Foods, Inc., 198 F. Supp. 3d 476,

493 (E.D. Pa. 2016) (citing <u>Lugo v. Farmers Pride, Inc.</u>, 967 A.2d 963, 970 n. 5 (2009).

Alternatively, "an unjust enrichment claim may be pled as a companion, not an alternative, to a

claim of unlawful or improper conduct as defined by law—*e.g.*, a tort claim."

<u>Whitaker</u>, 198 F. Supp. 3d at 493.

  Mr. Lisowski's unjust enrichment claim is not based on a theory of quasi-contract.  The

claim is plead as a companion to Mr. Lisowski's deceptive conduct and misrepresentation

UTPCPL claims, as said claims are premised on the same deceptive conduct alleged in his

separate tort claims.  "Where the unjust enrichment claim rests on the same improper conduct as

the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim."

<u>Id.</u>  Mr. Lisowski's UTPCPL claims have survived, in part, and therefore his unjust enrichment

claim also survives.  Thayer argues in the alternative that the unjust enrichment claim fails

because Mr. Lisowski received Thayer's products in exchange for the benefit he conferred upon

Thayer.  As explained above, based on Thayer's alleged deceptive conduct, Mr. Lisowski

believed he was purchasing natural and preservative-free products.  He alleges that said products

were not natural and preservative-free.  Because of the alleged deception, Mr. Lisowski argues

he did not receive the benefit of the bargain; *i.e.*, he did not receive the product he thought he

was buying.  At this stage of the proceedings, and viewing the allegations in favor of Mr.

Lisowski, the Court cannot conclude that he has not stated a claim for unjust enrichment.

Accordingly, Thayer's Motion to Dismiss Mr. Lisowski's unjust enrichment claim will be

denied.

## IV.  Conclusion

For the reasons stated above, Thayer's Motion to Dismiss will be granted in part and denied in part.  The Motion will be granted as to Mr. Garner's claims.  Mr. Garner's claims will be dismissed for lack of personal jurisdiction over Thayer.

The Motion will be granted with respect to Mr. Lisowski's request for injunctive relief.  Mr. Lisowski's request for injunctive relief will be dismissed, with prejudice.  The Motion will be granted with respect to Mr. Lisowski's breach of express warranty claim.  Mr. Lisowski's breach of express warranty claim will be dismissed, with prejudice.  The Court concludes that it would be futile to permit a curative amendment as to Mr. Lisowski's request for injunctive relief and his breach of express warranty claim.

The Motion will be denied with respect to Mr. Lisowski's unjust enrichment claim.

With respect to Mr. Lisowski's UTPCPL claims, the Motion will be denied as to the two Dry Mouth Products Mr. Lisowski purchased.  The Motion will be granted as to all other UTPCPL claims.  Mr. Lisowski will be granted leave to amend his UTPCPL claims as set forth herein.

An appropriate Order will be entered.

BY THE COURT:

Dated: November 17, 2020

Marilyn J. Horan
United States District Court Judge