## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER LISOWSKI, individually
and on behalf of all others similarly
situated,

       Plaintiff,

       v.

HENRY THAYER COMPANY, INC.

       Defendant.

CASE NO.:  2:19-CV-1339-MJH

**CLASS ACTION**

**JURY TRIAL
DEMANDED**

## THIRD AMENDED CLASS ACTION COMPLAINT

# **Table of Contents**

NATURE OF THE ACTION................................................................................................1

FACTUAL BACKGROUND ..............................................................................................3

JURISDICTION AND VENUE.........................................................................................11

PARTIES...........................................................................................................................12

FACTS COMMON TO ALL CAUSES OF ACTION .....................................................13

CLASS DEFINITIONS AND ALLEGATIONS...............................................................17

CAUSES OF ACTION......................................................................................................20

    COUNT I: Violation of the UTPCPL ...................................................................20

    COUNT II: Unjust Enrichment ...........................................................................22

RELIEF DEMANDED ......................................................................................................23

JURY DEMAND...............................................................................................................24

Plaintiff Christopher Lisowski brings this action on behalf of himself and all others similarly situated against Defendant Henry Thayer Company. Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which is based on personal knowledge.

## NATURE OF THE ACTION

1.      In an attempt to capitalize on consumer demand for health-focused and "natural" personal care products, Defendant sells its "THAYERS® Natural Remedies" brand of products through major retailers around the country as well as its own e-commerce store. However, as Defendant knows, it labels and markets certain products as "preservative-free" despite knowledge that the products contain preservatives. These statements are false, misleading, and designed to deceive consumers into paying a price premium and choosing THAYERS® Natural Remedies over a competitor's product.

2.      This action seeks to remedy the deceptive and misleading business practices of Defendant with respect to its marketing and sales of the following THAYERS® Natural Remedies products (hereinafter "Products") throughout the Commonwealth of Pennsylvania and the United States of America:[1]

---

[1] At the class certification stage, Plaintiff intends to represent a class of consumers that purchased all similarly deceptively marketed and labeled products which may include additional products not listed in this paragraph.

- THAYERS® Natural Remedies Peppermint Dry Mouth Spray;
- THAYERS® Natural Remedies Tangerine Slippery Elm Lozenges.

3.     Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign focused on claims that appeal to health-conscious consumers, i.e. that its Products are "preservative-free."

4.     Defendant's representations lead consumers to believe that its Products contain no preservatives. This is simply not true. Defendant's labeling, advertising, and marketing campaign related to these products is false, deceptive, and misleading because its Products contain multiple preservatives.

5.     Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "Preservative-Free" when purchasing the Products.

6.     Contrary to representations on the Products' labeling and marketing, instead of receiving "preservative-free" products, consumers receive products with preservatives.

7.     Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be "preservative-free." Given that Plaintiff and Class Members paid a premium for these products based on Defendant's misrepresentations that they are "preservative-free," Plaintiff and Class Members suffered an injury in the amount paid for the product and the amount of the premium paid.

8.      Defendant's conduct violated and continues to violate the Unfair Trade Practices and Consumer Protection Law for the Commonwealth of Pennsylvania. Defendant has been and continues to be unjustly enriched. Accordingly, Plaintiff brings this action against Defendant individually and on behalf of Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

9.      Consumers have become increasingly concerned about the effects of synthetic ingredients and preservatives in food, cleaning products, bath and beauty products and everyday household products.[2]

10.     For example, one consumer poll found that "no preservatives" is one of the top three claims driving purchasing decisions for consumable goods.[3]

11.     This increased demand for "preservative-free" products drives higher prices for products marketed as such.

---

[2] Julianna M. Butler & Christian A. Vossler, *What is an Unregulated and Potentially Misleading Label Worth? The case of "Natural"-Labelled Groceries*, Environmental & Resource Economics, Springer; European Association of Environmental and Resource Economists, vol. 70(2), pages 545-564 (2017). "Thus, one finding is that most people – 87% of our sample – do appear to attribute meaning to "natural" labelling. The vast majority of respondents stated a belief that "natural" signals no artificial flavors, colors and/or preservatives." *Id.*
[3] L.E.K. Consulting / Executive Insights, Volume XX, Issue 51, *Consumer Health Claims 3.0: The Next Generation of Mindful Food Consumption*, https://www.lek.com/sites/default/files/insights/pdf-attachments/2051-Healthy-Food-Claims.pdf.

12.     This price premium is apparent in a wide range of consumer goods in the marketplace.

13.     For example, the Refresh Relieva Lubricant Eye Drops cost $42.39 per oz. while the Refresh Relieva PF Lubricant Eye Drops labeled "preservative-free" cost $47.03 per oz. In this example, the "preservative-free" version commands a 10.95% price premium over the version containing preservatives.

14.     Reasonable consumers, including Plaintiff and Class Members, value preservative-free products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as preservative-free.[4]

15.     Defendant's representations that the Products are "Preservative-Free" are false, misleading, and deceptive because the Products contain multiple ingredients that are, as set forth and described below, preservatives.

    a. **Potassium Sorbate** is a synthetic preservative.[5] It is created by using potassium hydroxide (KOH) to neutralize sorbic acid ($C_6H_8O_2$). The

---

[4] *See* Zink DL. *The Impact of Consumer Demands and Trends on Food Processing*, Emerg Infect Dis. 1997; 3(4): 467-469 (noting a "consumer aversion to traditional chemical preservatives…").

[5] 21 C.F.R. § 182.3640 *and*  U.S. Dept. of Agriculture, CFNP TAP Review, *Potassium Sorbate*, https://www.ams.usda.gov/sites/default/files/media/P%20Sor%20technical%20advisory%20panel%20report.pdf and *see* FDA Warning Letter to Bagels Forever (dated 7/22/2011) (available at: http://wayback.archive-it.org/7993/20170112193358/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm265756.htm): "Your product is manufactured with infused wild dry blueberries that contain potassium sorbate, which is listed in 21 CFR 182.3640 as a chemical preservative; therefore, your product may not make the claims 'All Natural' and 'No Preservatives.'"

resulting potassium sorbate may be crystallized from aqueous ethanol.

Studies have shown Potassium Sorbate to have genotoxic effects on

humans and other mammals.[6] It causes chromosomal aberrations in

cells, which can trigger the development of cancer.[7]

b. **Sodium Benzoate** is a synthetic preservative.[8] Sodium Benzoate is

produced by the neutralization of benzoic acid with sodium hydroxide,

or by adding benzoic acid to a hot concentrated solution of sodium

carbonate until effervescence ceases. The solution is then evaporated,

cooled and allowed to crystalize or evaporate to dryness, and then

granulated. It does not occur naturally.[9] Sodium Benzoate has been

shown to cause DNA damage and chromosomal aberrations.[10] When

Sodium Benzoate combines with either Ascorbic Acid or Citric Acid (an

ingredient common in many cosmetic and food products), the two

substances can react to produce benzene, which is a highly toxic

carcinogen that causes leukemia.[11]

---

[6] Sevcan Mamur et al., Does Potassium Sorbate Induce Genotoxic or Mutagenic Effects in Lymphocytes?, TOXICOLOGY IN VITRO 790, 793 (2010).
[7] *Id.*
[8] 21 C.F.R. § 582.3733.
[9] 21 C.F.R. § 184.1733.
[10] N. Zengin et al., The Evaluation of the Genotoxicity of Two Food Preservatives: Sodium Benzoate and Potassium Benzoate, FOOD AND CHEMICAL TOXICOLOGY 763, 764-68 (2011).
[11] U.S. Food and Drug Administration, *Questions and Answers on the Occurrence of Benzene in Soft Drinks and Other Beverages*, (2018), https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q4 (last visited Oct. 17, 2019). *See Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1238 (D. Kan. 2007): "[P]roducts from defendants which

    c. **Ascorbic Acid** is a preservative.[12]

16.    Moreover, these ingredients function as preservatives in the Products.

17.    While a preservative on its own may not be inherently dangerous, when present in certain combinations, they "can form extremely unhealthy, dangerous chemicals." For example, "Benzene is obtained through the reaction of sodium benzoate with citric acid and/or ascorbic acid."[13]

18.    The Center for Science in the Public Interest describes this concern: [14]

> Another problem occurs when sodium benzoate is used in beverages that also contain ascorbic acid (vitamin C) or erythorbic acid (also known as d-ascorbic acid). The two substances, in an acidic solution, can react together to form small amounts of benzene, a chemical that causes leukemia and other cancers. Though the amounts of benzene that form are small, leading to only a very small risk of cancer, there is no need for consumers to experience any risk.

---

contained sodium benzoate and ascorbic acid, citric acid or erythoribic acid. The Food and Drug Administration ("FDA") has reported that these ingredients may interact to form benzene, a hazardous substance which the Environmental Protection Agency ("EPA") knows to potentially cause anemia, nervous systems disorders and immunosuppression in persons who are exposed..." *and* Robert Snyder, *Leukemia and Benzene*, International Journal of Environmental Research and Public Health vol. 9,8 (2012): 2875-93 *and* Lakshmi Narayanan Venu & Anoop Austin, *Study and Quantification of Preservative (E211) In Carbonated Soft Drink Samples*, International Organization of Scientific Research Journal of Applied Chemistry vol. 12,4 (2019): 17-23 ("Sodium benzoate reacts with citric acid or ascorbic acid to form benzene.").

[12] 21 C.F.R. § 182.3013.

[13] Venu & Austin, *supra* note 11.

[14] Center for Science in the Public Interest, *Chemical Cuisine*, https://www.cspinet.org/eating-healthy/chemical-cuisine#glossary.

19.     Nevertheless, Defendant's dry mouth spray products contain both Sodium Benzoate and Citric Acid. Therefore, the ingredients present in these products can produce Benzene in their combined state.[15]

20.     Additionally, Defendant's dry mouth lozenge products contain Ascorbic Acid. Therefore, a consumer buying two of Defendant's products that are commonly used in concert, a dry mouth spray product and a dry mouth lozenge product, would create an additional combination of Sodium Benzoate and Ascorbic Acid which can produce Benzene.[16] Exposure to Benzene is a proven cause of leukemia.[17]

21.     Plaintiff's investigation is ongoing and will seek to amend this complaint to specify other preservatives in the future.

22.     Whether Defendant's labeling and marketing of the Products as "Preservative-free" is deceptive is judged by whether it would deceive or mislead a reasonable person.

23.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is preservative-free, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

24.     Discovering that the ingredients are preservatives requires a scientific investigation and knowledge of chemistry beyond that of the average consumer. That is why, even though the ingredients listed above may be identified on the back

---

[15] Venu & Austin, *supra* note 11.
[16] *supra* note 11.
[17] Snyder, *supra* note 11.

of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic preservatives.

25.     Moreover, the reasonable consumer is not expected nor required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent product claims, representations, and warranties that the Products are "preservative-free."

26.     Defendant did not disclose that the above listed ingredients are preservatives anywhere on the product.

27.     A reasonable consumer understands Defendant's "preservative-free" claims to mean that the Products do not contain preservatives.

28.     Plaintiff and members of the Class described below paid a premium for Defendant's Products over comparable products that did not purport to be "preservative-free" products. Contrary to representations on the Products' labeling and Defendant's marketing thereof, instead of receiving preservative-free products, consumers receive products with synthetic preservatives.

29.     Defendant has thus violated Pennsylvania's Unfair Trade Practices by falsely and deceptively representing to Plaintiff that the Products are "preservative free" when in fact they include preservatives.

30.     Consumers rely on label representations and information from manufacturers in making purchasing decisions.

31.     The marketing of the Products as "preservative-free" in a prominent location on the product listings and the labels of certain Products, throughout the Class Period, evidences Defendant's awareness that "preservative-free" claims are material to consumers.

32.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

33.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

34.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiff and the Class Members.

35.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled and marketed as " preservative-free" over comparable products not so labeled or marketed.

36.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured the Plaintiff and the Class Members in that they:

    a.  Paid a sum of money for the Products that were not what Defendant
        represented;

b.  Paid a premium price for the Products that were not what Defendant represented;

c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

37.   Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

38.   Plaintiff and the Class Members paid for Products that were "Preservative-Free" but received products that were not "Preservative-Free." The products Plaintiff and the Class Members received were worth less than the products for which they paid.

39.   Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not marketed as "Preservative-Free."

40.   Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the

Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## **JURISDICTION AND VENUE**

41.     This Court has personal jurisdiction over Defendant. Defendant purposefully avails itself of the Pennsylvania consumer market and distributes the Products to many locations within this county and many retail locations throughout the Commonwealth of Pennsylvania, where the Products are purchased by hundreds of consumers every month.

42.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

43.     Venue is proper in this District under 28 U.S.C. § 1391(a). Plaintiff s purchases of Defendant's Products, substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information

regarding the nature, quality, and/or ingredients of the Products, occurred within this District and the Defendant conducts business in this District.

## PARTIES

44.    Plaintiff Christopher Lisowski is a citizen of Pennsylvania, residing in Allegheny County. Within the past six years, he made several purchases of Defendant's Products from various physical retail stores in Pennsylvania and from e-commerce stores that shipped products to his residence in Pennsylvania. Products purchased by Plaintiff within the relevant time period include, at a minimum, THAYERS® Natural Remedies Peppermint Dry Mouth Spray and THAYERS® Natural Remedies Tangerine Slippery Elm Lozenges.  Prior to purchasing, Plaintiff also saw, read and relied on the representation and warranty that the product was "preservative-free." Plaintiff understood these representations to mean that THAYERS® Natural Remedies Products did not contain preservatives. Plaintiff additionally viewed representations on the www.thayers.com website. Plaintiff purchased THAYERS® Natural Remedies Products at a substantial price premium, most recently in October 2019, and would not have purchased the products had he known that the labeling and marketing he relied on was false, misleading, and deceptive.

45.    Defendant Henry Thayer Company, Inc. is a Delaware corporation with its principal place of business in Easton, Connecticut.

a. Defendant produces, markets and distributes various consumer skin care products in retail stores across the United States including stores physically located in the Commonwealth of Pennsylvania, and specifically this district, as well as e-commerce stores that ship to consumers in this district. Defendant knew that the labeling and marketing of the Products is false and misleading to a reasonable consumer, because the Products contain Potassium Sorbate, Ascorbic Acid, and Sodium Benzoate, which are inconsistent with the Product's labeling and other marketing.

46.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

47.     Whenever reference is made in this Complaint to any representation, act, omission, or transaction of a defendant, that allegation shall mean that the defendant did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## **FACTS COMMON TO ALL CAUSES OF ACTION**

48.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in cosmetic products. As a result, consumers are

willing to pay, and have paid, a premium for products labeled "preservative-free" over ordinary products that contain synthetic preservatives.

49.     On the THAYERS® Official Website, and throughout other retailers on the Internet, it is additionally marketed as "preservative-free."

50.     Additionally, some of the Products are additionally falsely and deceptively labeled as "preservative-free."

51.     Based on the language that appears on Defendant's official website and distributed throughout the internet by Defendant, as well as language present on certain Products' labels, Plaintiff believed that Defendant's Products were free of preservatives.

52.     THAYERS® Products have been marketed and/or labeled as "Preservative-Free" at all times during the last six years at a minimum.[18]

53.     The following image displays an example of Defendant's deceptive "Preservative Free" marketing:[19]

---

[18] Archive of Defendant's Official Website Store from August 19, 2011 *available at* https://web.archive.org/web/20110819185140/http://www.thayers.com/store/index.php?main_page=product_info&cPath=2&products_id=23.
[19] Emphasis added.



54.     Moreover, certain Products are also labeled as preservative-free. For
example, the THAYERS® Natural Remedies Tangerine Slippery Elm Lozenges
prominently features "Preservative-free" on its container:



15

55.     Online retailers that sell and market the THAYERS® Natural Remedies Products also use nearly identical representations emphasizing the purported the "Preservative-Free" qualities of the Products. For example, in the THAYERS® Natural Remedies Peppermint Dry Mouth Spray listing on Amazon.com, the first bullet point prominently states "Preservative-Free" as one of the product's key features.

56.     Defendant knew that consumers will pay more for a product marketed as "Preservative-Free," and intended to deceive Plaintiff and putative Class Members by labeling and marketing its Products as purportedly preservative-free.

57.     In determining the price premium for the dry mouth lozenges, for example, a comparison to a competitor product that does not make "preservative-free" claims can be instructive. For the Tangerine Slippery Elm Lozenges, Plaintiff paid a price of $4.99 to $5.99 for the 42-count container.[20] In comparison, the Smart Mouth Dry Mouth Relief Mints – 45 -count container – sells for $2.99.[21] This competitor product does not make any "preservative-free" claims. With this calculation, the price premium range is 71% to 100%.

58.     In determining the price premium for the dry mouth spray, for example, a comparison to a competitor product that does not make "preservative-free" claims can be instructive. For the Peppermint Dry Mouth Spray, Plaintiff paid a price of $8.95 for the 4oz. bottle.[22] In comparison, the Dead Down Wind Mouth

---

[20] This represents a price of approximately $0.12 to $.14 per unit.
[21] This represents a price of approximately $.07 per unit.
[22] This represents a price of approximately $2.24 per ounce.

Spray – 2oz. bottle – sells for $3.66 through $3.99.[23] This competitor product does not make any "preservative-free" claims. With this calculation, the price premium range is 12% to 22%.

## CLASS DEFINITIONS AND ALLEGATIONS

59.     Plaintiff, pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), brings this action on behalf of the following classes:

a.  Pennsylvania Class: All persons who purchased Defendant's Products within the Commonwealth of Pennsylvania and within the applicable statute of limitations period.

b.  Nationwide Class: All persons who purchased Defendant's Products within the United States and within the applicable statute of limitations period (collectively, the "Class" and "Class Members").

60.     Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Class, the judge to whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

61.     The members of the Class are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, tens of thousands of units of the Products to Class Members.

---

[23] This represents a price range of approximately $1.83 to $2.00 per ounce.

62.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative class that predominate over questions that may affect individual Class Members include, but are not limited to the following:

    a.  whether Defendant misrepresented material facts concerning the Products on the product labels;

    b.  whether Defendant misrepresented material facts concerning the Products in print and digital marketing of every product;

    c.  whether Defendant's conduct was unfair and/or deceptive;

    d.  whether Defendant has been unjustly enriched as a result of the unlawful, deceptive, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiff and the class;

    e.  whether Plaintiff and the class have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

63.     Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the class, purchased Defendant's Products bearing the preservative-free representations and Plaintiff sustained damages from Defendant's wrongful conduct.

64.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Class.

65.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

66.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate equitable relief with respect to the class as a whole.

67.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of

19

conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class Members are not parties to such actions.

## CAUSES OF ACTION

### COUNT I
### Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law,
### 73 Pa. Cons. Stat. §§ 201-2 and 201-3, *et seq.*

68.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.     Plaintiff brings this Count individually and on behalf of the members of the Pennsylvania Class.

70.     Defendant is a "person," as meant by 73 Pa. Cons. Stat. § 201-2(2).

71.     Plaintiff and Pennsylvania Class Members purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

72.     Defendant engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. § 201-3, including the following:

        i.   representing that its goods and services have characteristics, uses, benefits, and qualities they do not have (73 Pa. Cons. Stat. § 201-2(4)(v));

    ii.  representing that its goods and services are of a particular

        standard or quality if they are another (73 Pa. Cons. Stat. § 201-

        2(v)(vii));

   iii.  advertising its goods and services with intent not to sell them as

        advertised (73 Pa. Cons. Stat. § 201-2(4)(ix)); and

   iv.  engaging in any other fraudulent or deceptive conduct which

        creates a likelihood of confusion or of misunderstanding (73 Pa.

        Cons. Stat. § 201-2(v)(xxi)).

73.     As alleged more fully above, Defendant has violated the Unfair Trade
Practices and Consumer Protection Law by falsely and deceptively representing to
Plaintiff and the other members of the Pennsylvania Class that the Products are
"preservative-free" when in fact they contain preservatives.

74.     Defendant's representations and omissions were material because they
were likely to deceive reasonable consumers.

75.     As a direct and proximate result of Defendant's deceptive acts and
practices, Plaintiff and the Pennsylvania Class have suffered and will continue to
suffer injury, ascertainable losses of money or property, and monetary and non-
monetary damages, including from not receiving the benefit of their bargain in
purchasing the Products.

76.     Plaintiff and other members of the Pennsylvania Class lost money or
property as a result of Defendant's violations because: (a) they would not have
purchased the Products on the same terms if they knew that the Products were

made with preservatives, (b) they paid a substantial price premium compared to other oral hygiene products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

77.    Plaintiff and the Pennsylvania Class seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief this Court deems necessary or proper.

## COUNT II
## Unjust Enrichment
## (Originally Count IV in the Amended Complaint)

78.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against the Defendant.

80.    At all times relevant hereto, Defendant deceptively marketed, advertised, and sold merchandise to Plaintiff and the Class.

81.    Plaintiff and members of the Class conferred upon Defendant nongratuitous payments for the Products that they would not have if not for Defendant's deceptive advertising and marketing. Defendant accepted or retained the nongratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Class were not receiving a product of the quality, nature,

fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

82.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because of Defendant's misrepresentations about the Products, which caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts had been known.

83.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for their unjust enrichment, as ordered by the Court.

## **RELIEF DEMANDED**

84.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the members of the Class;

b.    For an order declaring the Defendant's conduct violates the statutes and laws referenced herein;

c.  For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Class for all causes of action;

d.  For prejudgment and postjudgment interest on all amounts awarded;

e.  For an order awarding punitive damages; and

f.  For an order awarding attorneys' fees and expenses and costs of suit.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: April 13, 2021

Respectfully submitted,

/s/ Steffan T. Keeton
Steffan T. Keeton, Esq.
stkeeton@keetonfirm.com
Pa. Id. No. 314635

**The Keeton Firm LLC**
100 S Commons, Ste. 102
Pittsburgh, PA 15212
1-888-412-5291

/s/ Michael A. Mills
Michael A. Mills, Esq.
mickey@millsmediation.com

**The Mills Law Firm**
8811 Gaylord Drive
Suite 200
Houston, TX 77024
Phone: (832) 548-4414
Fax: (832) 327-7443

*Attorneys for Plaintiff and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of April, 2021, a true and correct copy of this motion was filed with the Court via the Electronic Case Filing System, and was served on all counsel of record through the same means.

/s/ *Steffan T. Keeton*
Steffan T. Keeton, Esq.